UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KATHRYN SHIBER,

                              *Plaintiff,*

       -against-

CENTERVIEW PARTNERS LLC,

                            *Defendant.*
-------------------------------------------------------------------X

**Docket No.:**

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

      Plaintiff Kathryn Shiber, as and for her Complaint, respectfully alleges, all upon information and belief, as follows:

## JURISDICTION AND VENUE

      1.    This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1332, in that Plaintiff's claims exceed the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

      2.    Venue is proper under 28 U.S.C. §1391(b) because the events underlying this action occurred while Shiber was employed within the Southern District of New York and because Defendant does business within this District.

## IDENTITY OF THE PARTIES

      3.    At all relevant times mentioned herein, Plaintiff Kathryn Shiber ("Shiber") was and is a resident of the State of New Jersey and was employed by Defendant Centerview Partners LLC ("Centerview Partners") until her unlawful termination on September 15, 2020, because of her disability and need for an accommodation.

      4.    At all relevant times mentioned herein, Centerview Partners is a Delaware corporation that is authorized to and does conduct business in the County, City and State of New

York, where Shiber was employed.

5.      Centerview Partners is an investment banking and advisory firm with offices in New York, London, Paris, San Francisco, Palo Alto and Los Angeles, that provides advice on mergers and acquisitions, financial restructurings, valuation, and capital structure to companies, institutions and governments, and has advised on nearly one trillion dollars worth of transactions since its founding in 2006.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

6.      Shiber commenced her employment with Centerview Partners on or about July 6, 2020.

7.      At that time, Shiber was 21 years old and had recently graduated from Dartmouth College with a degree in Quantitative Social Science and Studio Art.

8.      Shiber had gone through a rigorous interview process for a position in Centerview Partners' prestigious three-year Analyst program, and had received the offer almost a year earlier in September 2019, when she was a Senior in college.

9.      The position at Centerview Partners was a dream opportunity for Shiber and once she received an offer, she withdrew her candidacy for other positions.

10.      As required by Centerview Partners, Shiber also completed more than 50 hours of unpaid courses and six exams through Wall Street Prep in anticipation of commencing her employment in July 2020, all of which Shiber completed successfully.

11.      Shiber's first three weeks following July 6, 2020 consisted of additional training and exams, which Shiber also successfully completed.

12.     Once Shiber's training ended, on or about July 27, 2020, Shiber was placed on projects and began working, receiving encouraging feedback about the assignments she was completing, with the constructive feedback that Shiber received focusing mostly on PowerPoint formatting issues.

13.     Soon after Shiber began working, it became clear that Centerview Partners fostered a work environment where employees were expected, at times, to work 24 hours in a day or across multiple days without rest or stopping.

14.     For example, around the week of August 24, 2020, Shiber worked approximately from 8:00 am to 1:00 am the next morning for two or three days in a row, and Shiber only logged off her computer and went to sleep because she believed her tasks for the evening were complete.

15.     However, on one of those days, Shiber was reprimanded via email for logging off at 1:00 am by the Associate on the project, Tim Ernst, because he felt that Shiber should have asked both him and the second-year Analyst on the project, Matt Gallea, before logging off.

16.     Shiber was very apologetic and made clear that she did not want there to be any question about her commitment to Centerview Partners.

17.     Later that day, Ernst called Shiber and apologized if his email "came across too mean."

18.     The problem was that Shiber, who suffers from a medical, mental or psychological impairment in that she has been diagnosed with "Unspecified Anxiety Disorder" and "Unspecified Mood Disorder," requires consistent sleep to avoid exacerbating the effects of her diagnosis.

19.     Nonetheless, on each occasion when she logged off, she believed she had completed the assignments she had received.

3

20.     On or about that same day, Shiber reached out to Cheryl Robinson ("Robinson") of Centerview Partners' Human Resources Department and requested to speak about how she could manage work-life balance.

21.     Shiber spoke with Robinson later that day and advised Robinson that she had a medical disability that required eight to nine hours of sleep per night, ideally on a somewhat consistent schedule.

22.     Robinson responded that Shiber had done the right thing by contacting Human Resources, that Shiber was not required to disclose the specifics of her medical condition and that she would "see what [she] could do."

23.     Later that same day, Robinson called Shiber and suggested an accommodation of putting up "guard rails," meaning that during a certain period of time each night, Shiber would log off her work computer and not be expected to perform any work tasks.

24.     Robinson stated that Shiber's colleagues would be made aware of this accommodation which would enable Shiber to sleep 8 hours each night.

25.     Shiber immediately responded that she was concerned about her team learning that she required an accommodation, fearing that she would suffer a stigma as a result, and did not want her need for an accommodation to impact her opportunities and experiences at the firm.

26.     Robinson responded that she would speak with Partner Tony Kim ("Kim"), who was a senior partner involved on the deal on which Shiber was working, since he was a "good resource for this type of thing."

27.     Shortly thereafter, Shiber had a phone call with Kim and Robinson, where Shiber reiterated that she did not want her need for an accommodation to limit her professional career.

4

28.     Kim responded that he understood Shiber's concerns and that the firm could tell Shiber's co-workers that she was unavailable at specific hours without creating an issue for her and that there were "plenty of reasons why someone would not be available at a specific time," and Kim gave an example of someone working on two demanding deals at once.

29.     Shiber again reiterated that she did not want her disability to limit her career but felt comforted by Kim's and Robinson's representations that it would not and, therefore, agreed to the proposal that Kim and Robinson presented.

30.     Early the following week, Robinson told Shiber that Kim had informed the team that Shiber had a "hard stop" each night between midnight and 9:00 am, though Shiber had never specifically asked for those times.

31.     At the request of Robinson, Shiber provided Centerview Partners with a letter from her primary medical provider dated September 1, 2020, which stated, "I am writing on behalf of Kathryn Shiber, as I have been her primary care provider for the last 2 years. Because of her underlying medical diagnoses, she requires consistent sleep 8-9 hours. If she is not able to maintain a regular sleep schedule she is at significant risk for exacerbation of her illness."

32.     Robinson advised Shiber that the letter need not specify her medical diagnosis and told Shiber that she had provided sufficient information regarding her medical condition to proceed with the accommodation.

33.     Thereafter, Shiber continued to perform her duties and worked from 9:00 am to midnight each day, seven days a week, including all three days of the 2020 Labor Day weekend.

34.     The feedback Shiber continued to receive from Tim Ernst and Matt Gallea largely regarded PowerPoint formatting issues and was not negative or overly critical.

35.     The external meetings for which Shiber and her colleagues had been preparing, which occurred on September 9 and 10, 2020, went "perfectly," according to Kim, and Shiber was assigned additional duties thereafter.

36.     On Tuesday, September 15, 2020, at approximately 5:50 pm, Shiber received a message from Centerview Partners' Chief Operating Officer Jeanne Vicari ("Vicari") to "kindly join" her and Robinson for a Webex video call at 6:00 pm.

37.     Shiber believed that this call was to check in on how her accommodation was going, so she emailed her team member Matt Gallea to let him know that she had an unexpected call and afterward would return to the research he had requested.

38.     Shiber was terminated on the call with Vicari and Robinson.

39.     Vicari and Robinson made it painfully clear to Shiber that she was being terminated because of her disability, telling her, **"Due to these accommodations you cannot perform the essential functions of the job."**

40.     Vicari and Robinson degradingly told Shiber that she was wrong to even think that she could work at Centerview Partners with a disability or a need for an accommodation, saying, **"You made a mistake in accepting this job knowing you couldn't complete the job."**

41.     Vicari and Robinson blamed Shiber for her termination, which included them telling Shiber she "should have known" she would be unable to do the job, that the position **"will require many 120-hour weeks over the 3 years which you should have known"** and that **"Anyone who interviews for this kind of job knows this, it's not our fault if there were gaps in your knowledge."**

6

42.     Centerview Partners' claim that Shiber "should have known" that the position required consistent 120-hour weeks was not true and, in fact, Shiber's own experience at the firm showed that 120-hour work weeks were not the norm.

43.     Vicari and Robinson actually made it seem as though Shiber had injured Centerview Partners, telling Shiber, **"You took a coveted spot in a program where you agreed to fulfill the requirements for three years and given this accommodation you can't fulfill them, a spot we could have given to someone else which now we can't as they have accepted other jobs."**

44.     Shiber was shocked and humiliated, but desperately wanted to salvage her position, explaining that she was capable of and did work 105 hours per week (out of 168 total hours in a 7-day week) with the accommodation in place and was willing to work 120 hours per week to keep her job.

45.     Shiber said that when the accommodation had been granted, she had explained that she did not want it to affect her career or her relationships with her colleagues and had been assured by Kim and Robinson that she would not be viewed differently, yet now she was being terminated based on the accommodation that Centerview Partners had decided for her.

46.     Shiber sought to engage in a cooperative dialogue about an accommodation and even proposed that she rescind the accommodation entirely, but Vicari and Robinson rejected any discussion or cooperative dialogue that would permit Shiber to continue working at Centerview Partners, telling her, **"Your employment at the firm is terminated and that is irrevocable."**

47.     Vicari and Robinson made it clear that Shiber's termination was based on Centerview Partners' discriminatory perception that Shiber was not desirable as an employee

merely because she has a disability, telling Shiber, **"We can't ignore the evidence you've presented to us that the requirements of this job will have a negative impact on your health."**

48.     When Shiber asked if her termination was about her performance or just her disability, she was told, "It is detailed in the letter, that's all we're comfortable saying," even though the letter did not provide any explanation for Shiber's termination.

49.     Centerview Partners' termination of Shiber had a devastating impact on her, as she had been offered the position nearly a year earlier and would be unable to find a comparable position quickly.

50.     Shiber will also have to explain to potential future employers why she was terminated from Centerview Partners after just two months of employment, and she cannot reasonably explain that she was terminated due to Centerview Partners' discriminatory animus against her because of her disability.

51.     Centerview Partners' statements and conduct toward Shiber sends a message that no person with a disability or need for an accommodation should consider working for the firm, wrongfully precludes anyone who has any type of disability or need for an accommodation from consideration and perpetuates the stigma that individuals with disabilities cannot contribute in the workplace.

52.     There was no legitimate business reason for Centerview Partners' refusal to engage in a cooperative dialogue with Shiber, as she was fulfilling the essential requisites of her position with a reasonable accommodation.

53.     Centerview Partners terminated Shiber even after she proposed that she forgo the accommodation to maintain her employment, confirming that the real reason for Shiber's

termination was Centerview Partners' discriminatory animus against Shiber for having a disability and requesting an accommodation.

54.     As a result of Centerview Partners' discriminatory conduct, Shiber has suffered the adverse effects of disability discrimination, which includes damages to the quality of her life, her self-esteem, self-respect and financial and emotional well-being because she was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Shiber into the future.

55.     Here, Centerview Partners' conduct towards Shiber shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Shiber's rights under the New York City Human Rights Law, or that its unlawful actions against Shiber were so reckless as to amount to a disregard of Shiber's rights, so that in addition to all the damages inflicted upon Shiber and in addition to all the measures of relief to which Shiber may properly be entitled herein, Centerview Partners should also be required to pay punitive damages as punishment for its discriminatory conduct in order to deter it and others similarly situated from engaging in such conduct in the future.

**AS FOR A FIRST CAUSE OF ACTION ON BEHALF OF SHIBER
AGAINST CENTERVIEW PARTNERS FOR DISABILITY
DISCRIMINATION IN VIOLATION OF §8-107(1)(a)
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

56.     Shiber repeats, re-alleges and incorporates in full paragraphs 1 through 55 of this Complaint as though fully set forth at length herein.

57.     At the time Shiber was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her disability,

or because Centerview Partners perceived her as having a disability.

58.    Shiber had, and Centerview Partners perceived that she had, a disability within the meaning of §8-102 of the New York City Human Rights Law because she has a "[p]hysical, medical, mental or psychological impairment."

59.    Throughout the time of her employment with Centerview Partners, Shiber was fully qualified for her position and was in a position to continue working in that capacity.

60.    Centerview Partners treated Shiber less well because of her disability and took adverse employment action against her by terminating her after she requested a reasonable accommodation.

61.    The circumstances surrounding Centerview Partners' termination of Shiber, including blatantly telling her that her employment was being terminated because of her accommodation, as well as the remarkably close temporal proximity between Centerview Partners learning of Shiber's need for an accommodation and her termination, gives rise to a very real inference that the actual basis for Centerview Partners' actions against Shiber were motivated by disability discrimination.

62.    The aforementioned acts of Centerview Partners constitute unlawful discrimination against Shiber in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) (referred to herein as "the New York City Human Rights Law"), which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . .[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . disability . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

63.     As a result of Centerview Partners' violation of the New York City Human Rights Law §8-107(1)(a), Centerview Partners is liable to Shiber pursuant to §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

64.     Shiber has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Centerview Partners' outrageous conduct in violation of Shiber's human rights, all of which has impacted her well-being and the quality of her life.

65.     As a direct and proximate result of Centerview Partners' discriminatory conduct complained of herein, Shiber has suffered damages, injuries and losses, both actual and prospective, which include damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer, all of which Shiber alleges to be in the amount of Two Million Dollars ($2,000,000).

66.     Here, Centerview Partners' conduct towards Shiber shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Shiber's rights under the New York City Human Rights Law, or that its unlawful actions against Shiber were so reckless as to amount to a disregard of Shiber's rights, so that in addition to all the damages inflicted upon Shiber and in addition to all the measures of relief to which Shiber may properly be entitled herein, Centerview Partners should additionally be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of Three Million Dollars ($3,000,000), in order to deter it and others similarly situated from engaging in such conduct in the future.

67.     Shiber, therefore, seeks judgment against Centerview Partners on this First Cause of Action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total claim of Five Million Dollars ($5,000,000).

**AS FOR A SECOND CAUSE OF ACTION ON BEHALF OF SHIBER AGAINST CENTERVIEW PARTNERS FOR REFUSING TO ENGAGE IN THE COOPERATIVE DIALOGUE IN VIOLATION OF §8-107(28) OF THE NEW YORK CITY HUMAN RIGHTS LAW**

68.     Shiber repeats, re-alleges and incorporates in full paragraphs 1 through 55 of this Complaint as though fully set forth at length herein.

69.     Centerview Partners was obligated to engage in a cooperative dialogue with Shiber related to her disability under the New York City Human Rights Law.

70.     While Centerview Parties initially suggested and implemented an accommodation for Shiber, it terminated her shortly thereafter by telling Shiber that very same accommodation would not suffice, but without engaging in any dialogue with her about finding an accommodation that would work for both Shiber and Centerview Partners.

71.     Even when Shiber offered to rescind the accommodation that Centerview Partners had imposed, Centerview Partners refused to engage in a cooperative dialogue with her, choosing instead to summarily terminate her employment in violation of the New York City Human Rights Law.

72.     The aforementioned acts of Centerview Partners constitute a violation of §8-107(28)(a)(2) of the New York City Human Rights Law, which specifically applies to "disability"

and provides, *inter alia* that:

> It shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation.

73.     Section 8-107(28)(d) required Centerview Partners, "[u]pon reaching a final determination at the conclusion of a cooperative dialogue," to provide Shiber with "a written final determination identifying any accommodation granted or denied," yet Centerview Partners failed to do so.

74.     As a result of Centerview Partners' violations of the New York City Human Rights Law §8-107(28), Centerview Partners is liable to Shiber pursuant to §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

75.     Shiber has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, both actual and prospective, and has been humiliated, demeaned and otherwise degraded because of Centerview Partners' outrageous conduct in violation of Shiber's human rights, all of which has impacted her well-being and the quality of her life, and which Shiber alleges to be in the amount of Two Million Dollars ($2,000,000).

76.     Here, Centerview Partners' conduct towards Shiber shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Shiber's rights under the New York City Human Rights Law, or that its unlawful actions against Shiber were so reckless as to amount to a disregard of Shiber's rights, so that in addition to all the damages inflicted upon Shiber

and in addition to all the measures of relief to which Shiber may properly be entitled herein, Centerview Partners should additionally be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of Three Million Dollars ($3,000,000), in order to deter it and others similarly situated from engaging in such conduct in the future.

77.     Shiber, therefore, seeks judgment against Centerview Partners on this Second Cause of Action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total claim of Five Million Dollars ($5,000,000).

**AS FOR A THIRD CAUSE OF ACTION ON BEHALF OF SHIBER**
**AGAINST CENTERVIEW PARTNERS FOR DISABILITY**
**DISCRIMINATION IN VIOLATION OF §8-107(15)(a)**
**OF THE NEW YORK CITY HUMAN RIGHTS LAW**

78.     Shiber repeats, re-alleges and incorporates in full paragraphs 1 through 55 of this Complaint as though fully set forth at length herein.

79.     Centerview Partners' failure to provide Shiber with a reasonable accommodation and termination of Shiber because she requested a reasonable accommodation violated §8-107(15)(a) of the New York City Human Rights Law, which provides:

> [I]t is an unlawful discriminatory practice for any person prohibited by the provisions of this section from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity.

80.     As a result of Centerview Partners' violations of the New York City Human Rights Law §8-107 (15)(a), Centerview Partners is liable to Shiber pursuant to §8-502(a) of said statute

14

for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

81.     Shiber has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, both actual and prospective, and has been humiliated, demeaned and otherwise degraded because of Centerview Partners' outrageous conduct in violation of Shiber's human rights, all of which has impacted her well-being and the quality of her life, and which Shiber alleges to be in the amount of Two Million Dollars ($2,000,000).

82.     Here, Centerview Partners' conduct towards Shiber shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Shiber's rights under the New York City Human Rights Law, or that its unlawful actions against Shiber were so reckless as to amount to a disregard of Shiber's rights, so that in addition to all the damages inflicted upon Shiber and in addition to all the measures of relief to which Shiber may properly be entitled herein, Centerview Partners should additionally be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of Three Million Dollars ($3,000,000), in order to deter it and others similarly situated from engaging in such conduct in the future.

83.     Shiber, therefore, seeks judgment against Centerview Partners on this Third Cause of Action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total claim of Five Million Dollars ($5,000,000).

**AS FOR A FOURTH CAUSE OF ACTION ON BEHALF**
**OF SHIBER AGAINST CENTERVIEW PARTNERS**
**FOR RETALIATION IN VIOLATION OF §8-107(7)**
**OF THE NEW YORK CITY HUMAN RIGHTS LAW**

84.     Shiber repeats, re-alleges and incorporates in full paragraphs 1 through 55 of this

Complaint as though fully set forth at length herein.

85.     Centerview Partners' termination of Shiber because she requested a reasonable

accommodation violated §8-107(7) of the New York City Human Rights Law, which provides,

inter alia, that:

> It shall be an unlawful discriminatory practice for any person
> engaged in any activity to which this chapter applies to retaliate or
> discriminate in any manner against any person because such person
> has . . . (v) requested a reasonable accommodation under this chapter
> . . .

86.     As a result of Centerview Partners' violations of the New York City Human Rights

Law §8-107(7), Centerview Partners is liable to Shiber pursuant to §8-502(a) of said statute for

"damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and

reasonable attorney's fees," as provided for under the law.

87.     Shiber has been caused to suffer injuries resulting in financial loss, emotional

anguish and suffering, both actual and prospective, and has been humiliated, demeaned and

otherwise degraded because of Centerview Partners' outrageous conduct in violation of Shiber's

human rights, all of which has impacted her well-being and the quality of her life, and which Shiber

alleges to be in the amount of Two Million Dollars ($2,000,000).

88.     Here, Centerview Partners' conduct towards Shiber shows that it acted with willful

or wanton negligence, or recklessness, or a conscious disregard of Shiber's rights under the New

York City Human Rights Law, or that its unlawful actions against Shiber were so reckless as to amount to a disregard of Shiber's rights, so that in addition to all the damages inflicted upon Shiber and in addition to all the measures of relief to which Shiber may properly be entitled herein, Centerview Partners should additionally be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of Three Million Dollars ($3,000,000), in order to deter it and others similarly situated from engaging in such conduct in the future.

89.     Shiber, therefore, seeks judgment against Centerview Partners on this Fourth Cause of Action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total claim of Five Million Dollars ($5,000,000).

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff Kathryn Shiber demands judgment against Defendant Centerview Partners LLC on the First Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the additional and further sum of Three Million Dollars ($3,000,000) in punitive damages for a total of Five Million Dollars ($5,000,000);on the Second Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the additional and further sum of Three Million Dollars ($3,000,000) in punitive damages for a total of Five Million Dollars ($5,000,000); on the Third Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the additional and further sum of Three Million Dollars ($3,000,000) in punitive damages for a total of Five Million Dollars ($5,000,000); on the

17

Fourth Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages

and the additional and further sum of Three Million Dollars ($3,000,000) in punitive damages for

a total of Five Million Dollars ($5,000,000); for a total of Twenty Million Dollars ($20,000,000);

plus, for all Causes of Action, pre-judgment interest, the costs of this action and reasonable

attorney's fees, and for such other relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By:_____
     BRIAN HELLER
     DAVIDA S. PERRY
     3 Park Avenue, Suite 2700
     New York, NY 10016
     (212) 889-6565

**CLAYMAN & ROSENBERG LLP**
*Attorneys for Plaintiff*

By:_____
     JAMES F. VALENTINO
     305 Madison Avenue, Suite 650
     New York, NY 10165
     (212) 922-1080