SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------X

PARINAZ PAKNIAT,

Plaintiff,

-against-

GIANNI MOOR and MAGEBA INTERNATIONAL, LLC,

Defendants.

------------------------------------------------------------------X

Index No.:
Date Filed:

**SUMMONS**

Plaintiff designates New York County as the place of trial

Venue is based upon contract and CPLR §501

To the above named Defendants:

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with the Summons, to serve a Notice of Appearance, on the Plaintiffs' attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
October 14, 2019

David Godosky, Esq.
GODOSKY & GENTILE, P.C.
Attorneys for Plaintiff
Parinaz Pakniat
100 Wall Street, Suite 1702
New York, New York 10005
(212) 742-9700

**<u>Defendants' Addresses</u>:**
Gianni Moor
333 East 91st Street, Apt. 18C
New York, New York 10128

MAGEBA INTERNATIONAL, LLC
c/o Pavia & Harcourt LLP
Attn: John R. Firestone, Esq.
230 Park Avenue, Suite 2401
New York, New York 10169

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------------X
PARINAZ PAKNIAT,

Plaintiff,

Index No.:

**VERIFIED COMPLAINT**

-against-

GIANNI MOOR and MAGEBA INTERNATIONAL, LLC,

Defendants.
---------------------------------------------------------------------X

Plaintiff, **PARINAZ PAKNIAT**, by her attorney, **GODOSKY & GENTILE, P.C.**, complaining of the defendants, respectfully show to this Court and allege:

1. This case asserts claims under the New York State Human Rights Law ("NYSHRL") N.Y. Exec. L. 290 and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code 8-101 et seq, and for defamation. Defendants subjected plaintiff to sexual harassment, gender discrimination and retaliation and unlawfully terminated her employment.

2. At all times herein mentioned, plaintiff **PARINAZ PAKNIAT ("PAKNIAT"** or "Plaintiff") was and still is a resident of the City of Montreal, Province of Quebec, Country of Canada.

3. At all times herein mentioned, defendant **GIANNI MOOR ("GIANNI")** was and still is a resident of County, City and State of New York.

4. At all times herein mentioned, defendant **MAGEBA INTERNATIONAL, LLC ("MAGEBA")** was and still is a foreign business corporation duly authorized to do business under and by virtue of the laws of the State of New York.

5. At all times herein mentioned, **MAGEBA** maintained principal places of business located at 575 Lexington Avenue, in the County, City and State of New York.

6. At all times herein mentioned, defendant **MAGEBA,** its agents, servants and/or employees operated the aforesaid locations.

7. At all times herein mentioned, defendant **GIANNI MOOR** was Chief Executive Officer and an employee of **MAGEBA**.

8. Plaintiff was the Area Manager of the Canadian Market at **MAGEBA** located in Montreal, Canada.

9. Between January 22, 2018, and October 23, 2018 plaintiff **PAKNIAT** was an "employee" of **MAGEBA** under all applicable statutes.

10. At all times herein mentioned plaintiff **PAKNIAT** was considered a "contractor" by defendant **MAGEBA**, the protections of NYSHRL apply to her as well (N.Y. Exec. Law §296-d).

**STATEMENT OF FACTS AS TO**
**PLAINTIFF PARINAZ PAKNIAT**

11. On or about December 21, 2017 plaintiff **PAKNIAT** entered into a Consulting Agreement with **MAGEBA**, a civil engineering service provider and manufacturer of bridge bearings, expansion joints, seismic protection and structural monitoring devices for the construction industry, commencing on January 22, 2018.

12. The Consulting Agreement specifies "any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled exclusively in the courts of New York, New York." (Attached hereto as Exhibit "A")

13. During the aforesaid period, plaintiff **PAKNIAT** was employed by **MAGEBA** as the Area Manager of the Canadian Market. Pursuant to the Consulting Agreement, she reported directly to the CEO, defendant **GIANNI MOOR**.

14. On or about September 24th, 2018, plaintiff **PAKNIAT** received a confrontational phone call from **GIANNI's** wife, Victoria Moor, who falsely accused her of having an affair with **GIANNI**, using profane and threatening language.

15. Upon information and belief, Victoria Moor had on past occasions falsely accused other female employees of **MAGEBA** of having sexual relations with **GIANNI**.

16. After unsuccessfully attempting to clear up any misunderstanding, explaining that she had never had an affair with **GIANNI**, plaintiff **PAKNIAT** ultimately requested Victoria Moor not contact her any further.

17. On that same date, plaintiff **PAKNIAT** received further text messaging from Victoria Moor that appeared to be intended for someone else. The message stated, in part, "I need to get her out as soon as possible."

18. On or about September 25, 2018, plaintiff received a phone call from defendant **GIANNI** apologizing for his wife's behavior. On that same day, Victoria Moor continued to harass plaintiff **PAKNIAT** through text messaging, accusing her of adulterous conduct.

19. Shortly thereafter it became known to plaintiff that other employees of **MAGEBA** knew of Victoria Moor's false accusations and attack on plaintiff, including the general manager of Mageba Mexico and the Deputy General Manager at Mageba International.

20. In addition, in June, 2018, Victoria Moor called the former CFO of Mageba USA, Paul Deonarine and told him that **PAKNIAT** was sleeping with **GIANNI**. On September 24, 2018, Victoria Moor called Borja Bailles, Deputy General Manager of Mageba International and stated that plaintiff **PAKNIAT** and **GIANNI** were "together." Victoria Moor made these statements while located in New York State and New York County.

21. On or about September 27, 2018, plaintiff **PAKNIAT** was informed by defendant **GIANNI** that, in order to appease his wife (a non-employee of **MAGEBA**), plaintiff **PAKNIAT** would no longer be reporting to him, the CEO of the company, directly, as stated in their Contract. She would, instead, be reporting to the VP of Sales of Mageba USA. Plaintiff **PAKNIAT** was further told that she was not to communicate with defendant **GIANNI** by any manner under any circumstances, regardless of what was stated in the Contract. This change in her employment conditions was unwarranted, diminished her standing at the firm and was instituted solely based upon the false and defamatory statements of Victoria Moor and effectuated by **GIANNI**.

22. On or about September 28, 2018, plaintiff **PAKNIAT** emailed defendant **GIANNI** her concerns about her future at the company, including her employment generally, and, specifically, her future title and participation in the profit-sharing plans. Defendant **GIANNI** reassured her that she had nothing to worry about. Plaintiff **PAKNIAT** addressed those same concerns with her now-direct-supervisor, Joe Bilotti about her change in position and her future in the company; he assured her that this situation was only temporary.

23. On or about September 30, 2018, defendant **GIANNI** asked plaintiff **PAKNIAT** to provide him with a copy of her marriage certificate in order to show it to his wife despite the fact that the request was highly improper. Plaintiff **PAKNIAT** provided said marriage certificate.

24. On or about October 18, 2018 plaintiff **PAKNIAT** received a call from defendant **GIANNI** requesting plaintiff **PAKNIAT** apologize to his wife for the way she reacted to the false accusations. Plaintiff **PAKNIAT** declined to do so.

25. On October 23, 2018, plaintiff received a phone call from defendant **GIANNI** that he was terminating her contract. Plaintiff's termination was effectuated by defendants **GIANNI** and **MAGEBA** for unlawful gender-related reasons and was done at the urging of Victoria Moor.

26. At all times during the course of her employment with defendants, plaintiff **PAKNIAT** performed her work in a professional and competent manner and was routinely praised for her work.

27. At all times mentioned herein, **GIANNI** was acting on behalf of **MAGEBA** and in his capacity as CEO. All of the activity and discriminatory conduct complained of herein by **GIANNI**, on behalf on **MAGEBA**, took place in the County and State of New York.

**AS AND FOR A FIRST CAUSE OF ACTION FOR SEXUAL HARASSMENT IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW ARTICLE 15 OF THE NEW YORK STATE EXECUTIVE LAW AS AGAINST DEFENDANTS MAGEBA AND GIANNI**

28. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "27" inclusive with the same force and effect as if the same were more fully set forth at length herein.

29. Defendants are employers within the meaning of the NYSHRL.

30. Plaintiff is a member of a protected class. The harassment, abuse, and firing were sexual in nature and directed against plaintiff because she is a woman.

31. In violation of the NYCHRL, defendant **GIANNI** and **MAGEBA** discriminated against plaintiff on the basis of her sex by demoting plaintiff or creating a diminution in duties.

32. In violation of the NYSHRL, defendants **GIANNI** and **MAGEBA** intentionally discriminated against plaintiff on the basis of her sex by retaliating against plaintiff and in terminating plaintiff's employment for unlawful gender-related reasons.

33. That the defendants failed and/or refused to protect plaintiff from the aforesaid sexual harassment/discrimination and/or abate the aforesaid sexual harassment/discrimination.

34. That the defendants failed to maintain a work environment free from sexual harassment/discrimination.

35. That defendant **MAGEBA** failed to implement prompt and effective remedial actions in response to the sexual harassment/discrimination, to ensure that the work environment was professional and respectful.

36. That because of **GIANNI's** high-level position at the company, the harassing/discriminatory behavior by him is imputed to defendant **MAGEBA.**

37. The foregoing acts and/or omissions by defendants violated the New York State Executive Law which prohibits sexual discrimination in employment.

38. As a result of the foregoing actions by defendants, plaintiff has been damaged in her person, property, employment, and caused emotional distress.

**AS AND FOR A SECOND CAUSE OF ACTION FOR SEXUAL HARASSMENT IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW TITLE 8 OF THE NEW YORK CITY ADMINISTRATIVE CODE AS AGAINST DEFENDANTS MAGEBA AND GIANNI**

39. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "38" inclusive with the same force and effect as if the same were more fully set forth at length herein.

40. In violation of the NYCHRL, defendant **GIANNI** and **MAGEBA** discriminated against plaintiff on the basis of her sex by demoting plaintiff or creating a diminution in duties.

41. In violation of the NYCHRL, defendant **GIANNI** and **MAGEBA** discriminated against plaintiff on the basis of her sex by retaliating against plaintiff and in terminating plaintiff's employment for unlawful gender-related reasons.

42. The inappropriate, offensive, improper discrimination, because of plaintiff's sex, created and countenanced by defendants, their agents, servants, members and/or employees, during

plaintiff's employment at **MAGEBA** was sexual in nature and violated plaintiff's rights as secured by New York City Human Rights Law, NYC Administrative Code §8-107.

43. As a consequence of defendants' sexual harassment/discrimination and their agents, servants and/or employees, plaintiff sustained conscious pain and suffering, great mental distress, shock, humiliation, and incurred monetary loss, including lost wages, benefits, past and future losses and is entitled to compensatory and exemplary damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**FOR VICARIOUS LIABILITY AS AGAINST DEFENDANT MAGEBA**

44. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "43" inclusive with the same force and effect as if the same were more fully set forth at length herein.

45. Defendant **MAGEBA** knew or should have known of **GIANNI**'s discriminatory conduct toward the plaintiff in that it was open and obvious.

46. Defendant **MAGEBA** took no steps to prevent **GIANNI**'s conduct from taking place.

47. That defendant **MAGEBA** failed to maintain a work environment free from sexual harassment/discrimination.

48. That defendant **MAGEBA** knew of should have known of **GIANNI**'s harassment/discrimination of **PAKNIAT** and failed to implement prompt and effective remedial actions in response to the sexual harassment/discrimination.

49. That defendant **MAGEBA** was on notice of **GIANNI**'s harassing/discriminatory behavior and failed to monitor the work environment and act to prevent the unlawful demotion and termination of plaintiff for unlawful gender-related reasons.

50. **GIANNI** holds a position of ownership and/or of upper-level management in **MAGEBA.**

51. Defendant **MAGEBA** directly violated its own written Policy Against Workplace Harassment.

52. The foregoing actions by defendant **MAGEBA**, its agents and/or employees caused plaintiff grave injury and damage to her person, property, and employment and emotional distress.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**FOR RETALIATION AS AGAINST DEFENDANTS MAGEBA AND GIANNI**

53. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "52" inclusive with the same force and effect as if the same were more fully set forth at length herein.

54. Plaintiff **PAKNIAT** worked at **MAGEBA** for close to one year. During that time period, she excelled at her formal job duties, received positive work evaluations, and maintained professional relationships with her colleagues.

55. In or around that time plaintiff **PAKNIAT** complained to **GIANNI** and other **MAGEBA** senior management of the following: of GIANNI's wife harassing behavior and statements; about her removal from the direct line of reporting to **GIANNI** because of his wife's false statements; about the defamatory and harassing communications by **GIANNI's** wife to **GIANNI**, her boss, and other senior members at **MAGEBA**; and, when she declined to apologize to **GIANNI's** wife, after plaintiff **PAKNIAT** was falsely and maliciously accused of having an extramarital affair with **GIANNI**, she was retaliated against, including changing established employment practice, demotion, diminution of title, and termination for unlawful gender-related reasons.

56. These complaints by plaintiff regarding the harassing and defamatory statements, discriminatory conduct and adverse employment actions/changes, constituted "protected activity." The adverse employment actions and termination were retaliatory in nature.

57. Victoria Moor stated on September 24th, 2018, that she "needed to get her (plaintiff) out as soon as possible" and this was communicated to a third-party as well as **GIANNI**.

58. Such retaliatory actions violate New York State Human Rights Law Section 296(1)(e) and New York City Human Rights Law, NYC Administrative Code §8-107(7) and caused plaintiff's grave injury to her person, property and employment and emotional distress.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR BREACH OF CONTRACT ON BEHALF OF PLAINTIFF PAKNIAT AS AGAINST DEFENDANTS MAGEBA AND GIANNI**

59. Plaintiff **PAKNIAT** incorporates by reference the allegations set forth in paragraphs "1" through "58" above.

60. The "Consulting Agreement" attached hereto as ***Exhibit "A"*** was and is a valid and enforceable contract.

61. The "Consulting Agreement" set forth the rights, duties and obligations of the parties who executed the agreement.

62. Plaintiff **PAKNIAT** performed all of the duties and obligations required of her under the agreement.

63. The agreement necessarily requires that the parties act in good faith and that no party shall breach the agreement for an unlawful or discriminatory or pretextual reason.

64. The defendants **GIANNI** and **MAGEBA** unlawfully and improperly and for discriminatory reasons, breached the agreement.

65. Plaintiff **PAKNIAT** has been damaged economically by the unlawful and improper breach of the agreement which was done in bad faith.

66. Plaintiff **PAKNIAT** has been improperly denied the benefits of the agreement and bargain after substantially performing pursuant to the agreement and as a result of defendants **GIANNI** and **MAGEBA's** improper breach thereof.

67. Defendants **GIANNNI** and **MAGEBA** have been unjustly enriched by accepting plaintiff **PAKNIAT's** labors under the agreement and then unilaterally and unlawfully breaching upon their contractual obligations.

**WHEREFORE**, plaintiff demands judgment against defendants on their causes of action in an amount which exceeds the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction herein, in an amount to be determined upon the trial of this action, as well as punitive damages based on the wanton, willful, and gross misconduct of defendants to be determined by the jury in an amount sufficient to deter similar conduct, attorneys fees, together with the costs and disbursements of this action and interest from the date of the within occurrence.

Dated: New York, New York
October 14, 2019

David Godosky, Esq.
GODOSKY & GENTILE, P.C.
Attorneys for Plaintiff
100 Wall Street, Suite 1702
New York, New York 10005
(212) 742-9700

## ATTORNEY'S VERIFICATION

**DAVID GODOSKY**, an attorney at law duly admitted to practice in the Courts of the State of New York, affirms the following under penalty of perjury:

I am associated with the law firm of Godosky & Gentile, P.C., attorneys for plaintiff in the within action. I have read the foregoing Verified Complaint and know the contents thereof. The same are true to my own knowledge, except as those matters therein stated to be alleged on information and belief and, as to those matters, I believe them to be true.

The reason this verification is made by me and not by plaintiff is that plaintiff resides in a county other than the one in which I maintain my office.

The source of my information and the grounds of my belief are communications with my clients and others, and papers, reports, and investigation contained in the file.

Dated: New York, New York
October 14, 2019

DAVID GODOSKY, ESQ.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------------X

*Index No.: 160019/2019*

PARINAZ PAKNIAT,

Plaintiff,

-against-

GIANNI MOOR and MAGEBA INTERNATIONAL, LLC

Defendants.
---------------------------------------------------------------------X

**AFFIRMATION IN OPPOSITION**

**DAVID GODOSKY, ESQ.**, an attorney admitted to practice law before the Courts of the State of New York, affirms under the penalties of perjury pursuant to CPLR §2106 as follows:

1. I am associated with the firm of GODOSKY & GENTILE, P.C., attorneys for the plaintiff PARINAZ PAKNIAT, and as such I am fully familiar with the facts and circumstances set forth below and submit this affirmation in opposition to defendants' motion to dismiss the complaint.

2. Plaintiff seeks recovery for her claims of violations of the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") due to the discriminatory treatment by defendants and her retaliatory firing. As is more fully explained below, defendants' motion should be denied in its entirety.

## PROCEDURAL HISTORY

3. Plaintiff commenced suit in this action by serving a Summons and Complaint on defendants on or about October 15, 2020. (Annexed to movant's papers as ***Exhibit "A"***) In lieu of an Answer, defendants served the within motion to dismiss on the plaintiff on or about December 18, 2019.

## ARGUMENT IN OPPOSITION

**Preliminary Statement**

4. In December 2018, plaintiff, a professional engineer, entered into a contract with Mageba International to work with its New York office to expand Mageba's operations in Canada. Within a short time of working at the company, however, Ms. Pakniat (a married mother) was confronted by the wife of Mageba's CEO, Mrs. Victoria Moor, who lived in New York, falsely accusing her of having an affair with the CEO. Ms. Pakniat likely drew the attention of the CEO's wife due to being a woman in a field and company predominated by men. The wife communicated that she was intent on getting Ms. Pakniat "out as soon as possible." Due to the wife's unjustified jealousy, she attacked Ms. Pakniat's character and reputation, telling her new colleagues that she was sleeping with the CEO of Mageba. Soon after, Ms. Pakniat was reassigned from reporting directly to the CEO, against her protestations, and was no longer required to attend monthly meetings in New York. Wwhen Ms. Pakniat was subjected to humiliating requests by the CEO to provide proof of her marriage to his wife, and further, to apologize to his wife. Ms. Pakniat refused an apology and communicated to the CEO directly, and reported to her supervisor in New York, that she was concerned that her complaints about the harassment and refusal to apologize would impact on her future at the company. Despite assurances that she had nothing to worry about, defendant, who seemed to be no stranger to his wife's fits of jealousy, even though he obviously was aware of their falsity, felt he had no choice but appease her, and fired Ms. Pakniat.

5. According to defendants, the discrimination faced by Ms. Pakniat is not actionable under New York law. Defendants argue that even though the discrimination was perpetrated in New York by New York actors against Ms. Pakniat, it did not have any *impact* in New

York. As is stated in more detail below, this standard is at odds with the recent amendments to the New York State Human Rights Law, which was specifically amended to deter "discriminatory conduct."

6. Plaintiff also makes a claim for retaliation under NYCHRL and NYSHRL. Plaintiff alleges that she was terminated within months after she complained about the harassment by defendant's wife and her resulting demotion and change in her duties. As stated in more detail below, defendants fail to meet their heavy burden under CPLR 3211 that plaintiff's complaint should be dismissed, and their motion must be denied in its entirety.

**Relevant Facts**

7. In or around November of 2017, plaintiff entered into negotiations with Mageba for her position to work directly with the New York office to expand their operations into Canada. (Plaintiff's Affirmation, annexed hereto as ***Exhibit "A"***) It was discussed with Ms. Pakniat the possibility of her moving to New York so that she could work directly in the New York office as her predecessor had (Exh. "A") It was agreed that plaintiff would set up a branch office with no immediate plans to establish a Canadian office of Mageba. (Exh. "A") It was also agreed that Ms. Pakniat would report directly to the defendant, the CEO in New York. (Complaint ⁋21) On or about December 21, 2017 plaintiff entered into a Consulting Agreement with Mageba, commencing on January 22, 2018 (Complaint ⁋11) The Consulting Agreement specifies "any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled exclusively in the courts of New York, New York." (Complaint ⁋12) Pursuant to the Consulting Agreement, she reported directly to the CEO, in New York, defendant Moor. (Complaint ⁋21)

8. On or about September 24th, 2018, plaintiff received a confrontational phone call from defendant's wife, Victoria Moor, who falsely accused her of having an affair with

defendant, using profane and threatening language. (Complaint ⁋14) After unsuccessfully attempting to clear up any misunderstanding, explaining that she had never had an affair with defendant, plaintiff ultimately requested defendant's wife not contact her any further. (Complaint ⁋ 16)

9. Ms. Pakniat learned from co-workers that she was not the first female employee of Mageba to be falsely accused by Victoria Moor of having sexual relations with defendant. (Complaint ⁋15)

10. On that same date, plaintiff received a further text messaging from Victoria Moor that appeared to be intended for someone else. The message stated, in part, "I need to get her out as soon as possible." (Complaint ⁋17)

11. The next day, plaintiff received a phone call from defendant apologizing for his wife's behavior. Nonetheless, on that same day, Victoria Moor continued to harass plaintiff through text message, accusing her of adulterous conduct. (Complaint ⁋18)

12. Shortly thereafter plaintiff learned that other employees of Mageba knew of Victoria Moor's accusations and attacks on plaintiff's reputation, including the general manager of Mageba Mexico and the Deputy General Manager at Mageba International. (Complaint ⁋19) Plaintiff learned that three months earlier, in June, 2018, Victoria Moor had called the former CFO of Mageba USA, Paul Deonarine and told him that plaintiff was sleeping with Mr. Moor. On September 24, 2018, Victoria Moor called Borja Bailles, Deputy General Manager of Mageba and told him that plaintiff and her husband were "together." (Complaint ⁋20)

13. On or about September 27, 2018, defendant Moor told plaintiff that, in order to appease his wife, plaintiff would no longer be reporting directly to him, as was negotiated and formalized in the Contract. Instead, she would be reporting to the VP of Sales of Mageba

USA. Defendant further told plaintiff that she was not to communicate with him by any manner under any circumstances, at the behest of his wife. (Complaint ¶21)

14. On or about September 28, 2018, plaintiff emailed defendant that she was concerned about the recent changes and if they were indicative of her future at the company. (Complaint ¶22 ) Plaintiff also complained to her now-direct-supervisor, Joe Bilotti about her change in position based on the directives of the CEO's wife, and her future in the company; he assured her that this situation was only temporary. (Complaint ¶22)

15. On or about September 30, 2018, defendant contacted plaintiff at home on a Sunday, requesting a copy of her marriage certificate so that he could show it to his wife to prove that plaintiff was married. Plaintiff responded to this unusual and improper request and provided the marriage certificate, hoping that defendant's wife would stop harassing her and accusing her of the affair. (Complaint ¶23 )

16. Shortly thereafter, defendant called plaintiff and asked her to apologize to his wife for the way she reacted to her false accusations. Plaintiff told defendant that she did not believe she had anything to apologize for, and refused to apologize to his wife. (Complaint ¶24)

17. On October 23, 2018, defendant called plaintiff and informed her that he was terminating her contract. Plaintiff's termination was effectuated by the New York defendants and any lead-up to that decision took place in New York. (Complaint ¶25)

**The Human Rights Laws of New York State & New York City are Applicable to Plaintiff's Claims**

18. Defendants argue that the Human Rights Law of New York State does not apply to plaintiff's claims of discrimination because she is a Canadian resident who did not feel any "impact" of the discrimination perpetrated against her in New York by New York actors. Defendants cite to Hoffman v. Parade Publ'n, 15 N.Y.3d 285 (2010) in support of their

position. In Hoffman, the plaintiff, a resident of Georgia, brought claims under the NYCHRL and NYSHRL against his New York City employer, alleging they terminated him because of his age. In Hoffman, plaintiff maintained the company's Atlanta office – staffed by himself and an assistant – in performing his duties of developing and maintaining accounts. He also maintained communications with the New York City office, including personal visits to management in New York City. His supervisor and the president and publisher were based in the New York City office. Additionally, the decision to discharge him was made and communicated to him from the New York City office. The majority held that even though the discriminatory *conduct* occurred in New York, the plaintiff felt its *impact* out of state and was thus not afforded the protections of the Human Rights Law.

19. Importantly, Hoffman is a 2010 Court of Appeals decision with a vote of 4 to 3, with a strong dissent that would have affirmed the holding of the Appellate Division that the NYSHRL and NYCHRL is meant to address discriminatory *conduct* in New York, and not its *impact*. Based on the recent amendments to the NYSHR, the holding of Hoffman should not be controlling here.

20. As the dissent in Hoffman points out, the majority's holding was not based on anything in the legislative record to support its view that "[t]he obvious intent" of the Law is to protect "inhabitants" and persons "within" the state. Post-Hoffman, we now have the benefit of the clear intent of the Legislature based on its recent amendments to the NYSHRL. For our purposes here, the recent addition to Section 300 of the Executive Law clearly states that the law is meant to address "discriminatory conduct" and is notably silent on its concern over the impact of that discriminatory conduct. The Law states as follows:

§ 300. Construction

> The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed. Exceptions to and exemptions from the provisions of this article shall be construed narrowly ***in order to maximize deterrence of discriminatory conduct.***

21. Much has changed since 2010, and Hoffman's holding simply does not make sense in today's world and business environment. The Hoffman approach is out of touch with the modern work place and the cultural shift towards a "zero tolerance" view against sexual harassment and gender discrimination in the workplace. This was the view of the legislature and the motivation for the recent overhaul of the Human Rights Law to implement those much-needed changes.

22. Moreover, there has been significant technological advancements allowing for an increase in remote access and telecommuting by employees since Hoffman was decided in 2010, and the decision obviously is not reflective of those advancements. It is no longer a necessity for employees to physically go into "the office" anymore. And more so today than in 2010, these types of workers are not an anomaly. The US Census data released in 2018 reported 5.2% of U.S. workers are based entirely at home.[1] The cultural attitude toward telecommuting is moving in the direction of more acceptance rather than less, and its prevalence in New York is no different, so much that even the New York real estate market has taken notice.[2] If the holding in Hoffman (now almost a decade old) were to stand, the rule would create a work-around of the protections afforded by the Human Rights Law for New York employers, leaving a class of workers contributing to the economy of New York without protection against discrimination. Employers simply would need to

---

[1] https://hbr.org/2019/08/is-it-time-to-let-employees-work-from-anywhere

[2] See e.g., https://www.nytimes.com/2019/09/20/realestate/how-telecommuting-has-changed-real-estate.html

allow for telecommuting or to hire off-site workers – as many of today's employers do – and discriminate against their employees or in other ways violate the New York State Human Rights Law with impunity, even if their discriminatory conduct actually occurs in New York, so long as its impact (always a vague and amorphous standard) is felt by the employees outside the state. Such a rule is beyond absurd.[3]

23. Accordingly, the holding in Hoffman should not be controlling as to to plaintiff's claims of gender discrimination here where defendants' discriminatory conduct occurred solely within New York as did defendants' discriminatory firing of plaintiff. Whether the plaintiff felt the impact in or outside the State of New York of defendants' discrimination is irrelevant under the dictates of the current and recently amended New York State Human Rights Law that clearly states is intended to deter discriminatory conduct within the state. To rule otherwise is in flagrant disregard of the intent of the legislature and in violation of the plain language of the statute and would strip the courts from its ability to rightfully limit discriminatory practices within the State of New York.

**Even under Hoffman, Defendants Fail to Meet Their Burden for Dismissal of Plaintiff's Complaint**

24. Even if this Court ignores the clear dictates of the New York State Legislature that amended the NYSHRL to deter discriminatory conduct in the state, rather than its impact, defendants failed to meet their burden that plaintiff's complaint should be dismissed.

25. The standard of review on a motion to dismiss pursuant to CPLR §3211(a)(7) is well established. The court must assume the truth of the allegations in the pleading and "resolve all inferences which reasonably flow therefrom in favor of the pleading" (Sanders v.

[3] If defendants' interpretation of the recently amended statute was adopted, in cases such as this, where the parties have entered into a contract with a New York choice of law clause, plaintiff would have no protection in any jurisdiction because the choice of law clause requires the application of New York law yet (under defendant's analysis) excludes plaintiff from its protections as an out-of-state employee.

Winship, 57 N.Y.2d 391, 394 (1982)) and accord the plaintiff the benefit of every favorable inference (Sokoloff v. Harriman Estates Dev. Corp., 96 N.Y.2d 409, 414 (2001). In assessing the complaint, the court must "determine simply whether the facts alleged fit within any cognizable legal theory" (Morone v. Morone, 50 N.Y.2d. 481, 484 (1980)) and "if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law, a motion for dismissal will fail" (Guggenheimer v. Ginzburg, 43 N.Y.2d 268, 275 (1977)). In addition, the First Department assesses employment discrimination claims under a relaxed "notice pleading" standard. Under notice pleading, plaintiff need not plead specific facts, but need only give defendant "fair notice: of the nature and grounds of her claim. Petit v. Dept. of Educ. of City of New York, 177 A.D.3d 402 (1st Dept 2019) citing Vig v. New York Hairspray Co., L.P., 67 A.D.3d 140, 145 (1st Dept. 2009) (court reinstated discrimination claims dismissed on a motion to dismiss for failure to state a cause of action because "employment discrimination cases are ... generally reviewed under notice pleading standards"). Under CPLR 3211(a)(7), "a court may freely consider affidavits submitted by the plaintiff…and the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one." Leon v. Martinez, 84 N.Y.2d 83, 88 (1994).

26. Defendants argue that Hoffman's holding requires a showing that there was impact in New York of defendants' discriminatory conduct, and that plaintiff is unable to do so. The cases cited by defendant in further support either involved motions for summary judgment (Benham v. eCommission Solutions, LLC; Shav v. Wilco Systems, Inc.; Fried v. LVI Services, Inc.) or does not actually support defendants' position (Wexelberg v Project Brokers LLC, 13 CIV. 7904 LAK MHD, 2014 WL 2624761, at *10 (SDNY Apr. 28,

2014)[4], and therefore are not controlling on this 3211 motion. Moreover, the burden defendants must meet on a motion to dismiss is a high one. To succeed on a motion to dismiss, the defendant must show "that there is no possibility that there was an [discriminatory] impact in New York." Chin v. CH2M Hill Companies, Ltd., No. 12 Civ. 4010, 2012 WL 4473293, at *3 (S.D.N.Y. Sept. 28, 2012).

27. Here, plaintiff worked in a Mageba branch office in Canada, working closely with the New York office, working directly with the CEO and the New York staff, and despite defendant's claim that she "dealt exclusively with the Canadian market" her position at Mageba historically required work performed exclusively out of the New York office. (See Exhibit "A")

28. As such, the impact of defendants' discriminatory conduct toward plaintiff has been sufficiently pled by the plaintiff. See e.g., Downey v Adloox Inc., 238 F Supp 3d 514, 524-25 (SDNY 2017) (holding that claims based on treatment of plaintiff who worked part-time out of the employer's New York office, preparing for an exhibition was sufficiently plead for the court to deny defendants' motion to dismiss); Regan v. Benchmark Co. LLC, 11 CIV. 4511 CM, 2012 WL 692056, at *14 (SDNY 2012) ("although [plaintiff] was physically working out of Jersey City, all other aspects of her employment connected her to [defendant's] New York City office. As a result, the alleged discriminatory conduct both occurred in New York City and had an impact in New York City.")

29. Moreover, as plaintiff's affidavit states, the parameters of her job were altered precisely because of the discrimination. She was hired to work closely in the New York branch office, directly with the CEO, with the intention to travel frequently to New York. Once

---

[4]Wexelberg highlighted that Hoffman fell short in its intent to make the statute "simple for courts to apply and litigants to follow, leading to predictable results" (id. at 291) as it is a very fact-specific analysis and "there are circumstances that may be classified as falling in a grey area."

the CEO's wife began speaking with Mageba employees about the "new girl" her job duties changed and she was demoted, no longer reporting directly to the CEO, and travel to New York was eliminated. The defendants seek to bolster their arguments premised upon their discriminatory acts – the very acts that prevented her further contacts with New York.

30. Under Chau v. Donovan, 357 F Supp 3d 276, 283-84 (SDNY 2019), the plaintiff alleged that it was because of a discriminatory reason that she was never hired by the employers in New York. Under these facts, the court understood that even though plaintiff was unable to show any "impact" in New York it was because she was "prevented from fully realizing the discriminatory impact in New York" and was therefore still able to assert her claim for discrimination under the NYSHRL. The court held that the plaintiff alleges she would have taken a position in New York City had she not been discriminated against, and that "satisfied the requirement that the alleged discriminatory act had an impact within the boundaries of New York City, regardless of whether the conduct occurred in California or New York City." Similarly in Anderson v. HotelsAB, LLC, 15CV712-LTS-JLC, 2015 WL 5008771, at *4 (SDNY Aug. 24, 2015) the plaintiff interviewed for, and was denied, a position that included duties in a New York City workplace. The court held that the "rejection from the position denied her the opportunity to work in New York City, thus providing the necessary New York City workplace nexus for her claim of a NYCHRL-covered injury. The Court thus finds Plaintiff's allegations sufficient to satisfy the impact requirement of the NYCHRL and that she has successfully stated a claim under the statute."

31. Here, plaintiff's work arrangement was altered as a consequence of the discrimination she faced due to defendant's wife's gender-based jealousy. It was understood that defendant would be travelling frequently to work directly with the New York office, but that quickly changed due to the urgings of defendant's wife. This discriminatory conduct forced

plaintiff to remain out of New York, to her professional detriment, and now is being used as a basis to dismiss the Complaint. Under Chau and Anderson, this must fail.

**The Choice of Law Provision in the Contract is Controlling**

32. Defendants argue that even though there is a New York choice-of-law provision in the Consulting Agreement and the parties agreed to be bound by New York law, nevertheless plaintiff is not entitled to the protections afforded by the New York State Human Rights Law. Defendants cite to Rice v Scudder Kemper Investments, Inc., 01 CIV. 7078 (RLC), 2003 WL 21961010, at *4 (SDNY Aug. 14, 2003) for support, which is distinguishable from this case. In Rice, the language of the choice-of-law provision in the contract was much narrower that the one between the parties here. The Rice Agreement stated, "[t]he validity, interpretation, construction, and performance of this Agreement shall be governed by the law of the state of New York," whereas the Agreement here states "any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled exclusively in the courts of New York, New York." Rice states that it is settled New York law that the language in the subject Agreement only covers New York common law contractual claims but not statutory ones. (citations omitted). The court went on to say, for the parties to be bound by New York law with regard to non-contractual causes of action, the choice-of-law provision would have had to include much broader language, indicating that any controversy "arising out of or relating to" the agreement would be governed by the laws of New York, (citing Turtur v. Rothschild Registry Int'l, Inc., 26 F.3d 304, 309-10 (2d Cir.1994), or providing an exclusive forum selection clause purporting to cover all disputes arising out of the agreement (citing Internet Law Library v. Southridge, 223 F.Supp.2d 474, 489 (S.D.N.Y.2002)), Id., as the language of the Contract here.

33. Furthermore, the choice of law with a residency requirement would leave the plaintiff with no protections at all – neither under federal or Canadian law. It would incentivize corporations to hire non-residents with a choice of law provision to allow unfettered discrimination without retribution

**The Jealous Spouse Doctrine is Not Applicable to Plaintiff's Claims of Discrimination**

34. Under facts similar to the instant matter, the Appellate Division rejected the applicability of the so-called jealous spouse doctrine in Edwards v Nicolai, 153 AD3d 440, 441 (1st Dept 2017). In that case, defendant hired plaintiff to work for his chiropractic practice as a yoga and massage therapist. Plaintiff and defendant maintained a professional relationship and defendant praised plaintiff's job performance. Eventually, defendant told plaintiff that his wife may be jealous because of her attractiveness. Four months later, plaintiff was terminated. The trial court granted defendant's motion to dismiss plaintiff's claims for gender discrimination in violation of the NYSHRL and the NYCHRL. The Appellate Division reversed, holding that the complaint asserted a cause of action for gender discrimination in violation of the NYSHRL and NYCHRL, stating that it was well established that adverse employment actions motivated by sexual attraction are gender-based and, therefore, constitute unlawful gender discrimination. In this case, while plaintiff did not allege that she was ever subjected to sexual harassment, she alleged that defendant was motivated to fire her in order to appease his wife's unjustified jealousy, thus, the court concluded, the motivation to terminate plaintiff's employment was sexual in nature. The court rejected defendant's argument that they were motivated by "spousal jealousy" rather than gender. The court noted that defendant's reliance on certain cases in the "spousal jealousy" context was misplaced because those cases involved admitted consensual sexual affairs between the employer and the employee. In those spousal jealousy cases, it was the

employee's behavior—not merely the employer's attraction to the employee or the perception of such an attraction by the employer's spouse—that prompted the employee's firing. In Edwards, and in this case as well, the plaintiff maintained a professional relationship with the defendant and was fired for no reason other than the wife's belief that her husband, the defendant, was sexually attracted to plaintiff, an unlawful, gender-related reason.

**Plaintiff Stated a Claim for Retaliation Based on Her Complaints Regarding Discrimination Based on Her Gender**

35. Defendants argue that plaintiff's retaliation allegations are insufficient as a matter of law because, her underlying statutory claims lack subject matter jurisdiction, and she fails to allege that she engaged in any "protected activity." As is argued more fully above, plaintiff's underlying statutory claims do not lack subject matter jurisdiction. See also, Chen-Oster v Goldman, Sachs & Co., 251 F Supp 3d 579, 594-95 (SDNY 2017) ("Because it is plausible that De Luis felt Goldman Sachs' alleged retaliation, at least in part, in New York, her NYCHRL retaliation claim is not futile.")

36. Moreover, plaintiff has adequately pled that she engaged in protected activity. Protected activity refers to "action taken to protest or oppose statutorily prohibited discrimination." Mira v. Argus Media, 2017 WL 1184302 (SDNY 2017). Protected activity includes, among other things, "informal protests of discriminatory employment practices." Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir.1990).

37. Here, plaintiff complained directly to the CEO of Mageba about the discriminatory conduct she was facing as a result of his wife's jealousy. Her complaints were met with a directive that plaintiff apologize to the CEO's wife. When plaintiff complained of the harassment and discrimination in or around September, 2018 to her supervisor in New York, and

shortly thereafter she was told that she would no longer be reporting directly to the CEO. And then, less than one month after complaining about the harassment and the demotion, Ms. Pakniat was terminated.

38. Defendants' argument that plaintiff did not make any complaints to anyone at Mageba is disingenuous when she made those complaints directly to the CEO, in addition to her supervisor in New York.

39. Defendants' further argument that plaintiff's allegations do not constitute gender discrimination is contradicted by the holding in Edwards, supra, where the first department held on facts almost identical to the ones here that adverse employment actions motivated by sexual attraction, or perceived sexual attraction, are gender-based and, therefore, constitute unlawful gender discrimination

40. Defendants' argument that she failed to allege that the complaints of discrimination were the basis of her termination fail to acknowledge that it is sufficient to permit the inference of causal connection to plead temporal proximity between a protected activity and an adverse employment action. See Harrington v. City of New York, 157 AD3d 582, 586 (1st Dept 2018). See also, Manoharan v. Columbia Univ. Coll. Of Physicians & Surgeons, 842 F. 2d 590, 593 (2nd Cir. 1988) ("Proof of the causal connection [in a retaliation claim] can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.")

**Plaintiff's Vicarious Liability Claims are Proper**

41. For the foregoing reasons, plaintiff's claims that the Company is liable for the acts of others shall remain viable. Moreover, "[a] corporate employer may be held directly liable for acts of discrimination perpetrated by a high-level managerial employee." Father Belle

Community Ctr. v New York State Div. of Human Rights on Complaint of King, 221 AD2d 44, 54 (4th Dept 1996).

**Conclusion**

42. For the foregoing reasons, plaintiff respectfully requests the Court deny defendants' Motion to Dismiss the Complaint in its entirety. If the Court is inclined to grant some or all of defendants' Motion, plaintiff respectfully requests the opportunity to amend her Complaint to cure any defects and/or re-plead her respective causes of action.

**WHEREFORE**, it is respectfully requested that this Court deny defendant's motion in its entirety with such additional and further relief that this Court deems just and proper.

Dated: New York, New York
February 14, 2020

Respectfully submitted,

**GODOSKY & GENTILE, P.C.**

By: ______________________

David Godosky, Esq.
Attorneys for Plaintiff
PARINAZ PAKNIAT
100 Wall Street, Suite 1702
New York, New York 10005
(212) 742-9700