UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
KATHRYN SHIBER,

                                                                **1:21-cv-03649-ER**

                     *Plaintiff*,

    -against-

CENTERVIEW PARTNERS LLC,

                    *Defendant*.
--------------------------------------------------------------------X

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

---

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*
**3 Park Avenue, Suite 2700**
**New York, NY 10016**
**(212) 889-6565**

**CLAYMAN ROSENBERG KIRSHNER & LINDER LLP**
*Attorneys for Plaintiff*
**305 Madison Avenue, Suite 650**
**New York, NY 10165**
**(212) 922-1080**

## TABLE OF CONTENTS

**SUBJECT**                                                                              **PAGE**

TABLE OF AUTHORITIES                                                                      ii

PRELIMINARY STATEMENT                                                                     1

STATEMENT OF FACTS                                                                        2

ARGUMENT

POINT I       THERE IS SUBJECT MATTER JURISDICTION
              UNDER THE NEW YORK STATE AND CITY
              HUMAN RIGHTS LAWS BECAUSE SHIBER
              WAS A NEW YORK CITY EMPLOYEE                                                6

      A.      Shiber Was Denied Employment Within New York City                           7

      B.      Centerview Directing Shiber To Temporarily
              Work Remotely Does Not Negate Her Status
              As An Employee In Its New York City Offices                                 8

      C.      This Case Must Be Distinguished From Hoffman                                9

      D.      The Impact Of The Covid-19 Pandemic Must
              Be Considered                                                               12

POINT II      ADDITIONAL DISCOVERY IS NEEDED TO RESOLVE
              QUESTIONS OF SUBJECT MATTER JURISDICTION                                    13

CONCLUSION                                                                                15

## **TABLE OF AUTHORITIES**

**CASE**                                                                          **PAGE**

Anderson v. HotelsAB, LLC,
    2015 U.S. Dist. LEXIS 111820 (S.D.N.Y. Aug. 24, 2015)                7-8

Benham v. eCommission Solutions, LLC,
    118 A.D.3d 605 (1st Dept. 2014)                                           11, 13

Chau v. Donovan,
    357 F. Supp. 3d 276 (S.D.N.Y. 2019)                                       8

Fried v. LVI Servs.,
    500 Fed. Appx. 39 (2d Cir. 2012)                                          10, 13

Hardwick v. Auriemma,
    116 A.D.3d 465 (1st Dept. 2014)                                           10

Hoffman v. Parade Publications,
    15 N.Y.3d 285 (2010)                                                      1, 6-7, 9

Pakniat v. Moor,
    192 A.D.3d 596 (1st Dept. 2021)                                           12-13

Pedroza v. Ralph Lauren Corp.,
    2020 U.S. Dist. LEXIS 131504 (S.D.N.Y. July 24, 2020)                     10

Regan v. Benchmark Co. LLC,
    2012 U.S. Dist. LEXIS 28722 (S.D.N.Y. Mar. 1, 2012)                       9-10

Vangas v. Montefiore Med. Ctr.,
    823 F.3d 174 (2d Cir. 2016)                                               10, 13

Ware v. L-3 Vertex Aerospace, LLC,
    833 Fed. Appx. 357 (2d Cir. 2020)                                         10, 13

Wexelberg v. Project Brokers LLC,
    2014 U.S. Dist. LEXIS 84400 (S.D.N.Y. Apr. 28, 2014)                      11-12, 14

Wolf v. Imus,
    170 A.D.3d 563 (1st Dept. 2009)                                           10

ii

## PRELIMINARY STATEMENT

Defendant Centerview Partners LLC ("Centerview") hired recent college graduate Plaintiff Kathryn Shiber ("Shiber") to work in its New York City offices, as a New York City employee, starting on July 6, 2020. Centerview directed Shiber to temporarily work remotely from her home in New Jersey due to the Covid-19 pandemic. On September 15, 2020, just 11 weeks after she commenced her employment, Centerview fired Shiber because of her disability and because she asked for a reasonable accommodation for her disability. Centerview degradingly told Shiber that she "made a mistake" accepting the position and that she "should have known" she could not perform the job because of her disability. Centerview, on its motion, now seeks to evade liability under the New York State and City Human Rights Laws by incorrectly claiming that there is no subject matter jurisdiction under those statutes.

The test for establishing subject matter jurisdiction over Shiber's New York State and City Human Rights Laws claims is whether "the alleged discriminatory conduct had an 'impact' within the City and State. Hoffman v. Parade Publications, 15 N.Y.3d 285, 290 (2010). As set forth herein, it is settled law that an employee suffers an "impact" in New York City when that employee is either denied an opportunity for employment in the City, or is treated as a New York City employee notwithstanding a temporary remote work arrangement. In this case, Centerview's discriminatory conduct had an impact in New York City and State because Shiber was denied employment that would have soon been in New York City, notwithstanding her temporarily working remotely. Centerview, in anticipation of Shiber ultimately working in its New York City offices, treated her as a New York City employee, even though she was not yet able to physically work out of that office due to the pandemic.

Centerview ignores settled law and cites cases that are factually distinguishable, including Hoffman. In Hoffman, as in each of the cases Centerview cites, the plaintiff-employees worked outside of New York City with no expectation that they would ever work full-time in New York. This case presents an entirely different fact pattern. Centerview also inappropriately ignores the incredible impact that the Covid-19 pandemic has had on employees who are temporarily required to work remotely.

Accordingly, Centerview's Federal Rule of Civil Procedure 12(b)(1) motion to dismiss Causes of Action I–VI of the Second Amended Complaint under the New York State and City Human Rights Law for lack of subject matter jurisdiction should be denied.

## STATEMENT OF FACTS

In September 2019, Shiber received an offer to join Centerview Partners' prestigious three-year Analyst program, starting in July 2020 and working out of its New York City offices. (¶8, 9).[1] At the time of that offer, Shiber was a Senior at Dartmouth College, studying Quantitative Social Science and Studio Art. (¶8). Shiber had interviewed with Centerview at its New York City offices almost a year earlier. (¶8, 9). The offer at Centerview was a dream opportunity for Shiber which she accepted, withdrawing her candidacy for other positions. (¶11). Centerview's offer to Shiber was memorialized in a letter dated September 20, 2019, which described her compensation, including a bonus intended to "assist [Shiber] in [her] relocation," which Centerview knew was to New York City, where Shiber was expected to work. (Ex. B).

Starting on or about March 11, 2020, the COVID-19 pandemic shut down much of New York City and many individuals began working from home. (¶13). On March 20, 2020, Shiber

---

[1] All citations to "¶" refer to paragraphs in the Second Amended Complaint ("SAC"), attached to the accompanying Declaration of Brian Heller, Esq., as Exhibit A.

received an email from Centerview Partner Richard Case ("Case") (a copy of which is part of the email thread attached as Ex. C) stating that while "virtually all" of Centerview's employees were working remotely in response to the pandemic, the company expected to be "back to our usual routines, including travel between cities and countries" by July 2020, when Shiber would begin her employment. (¶14). On May 22, 2020, Case informed Shiber over email (Ex. C) that the summer class would start remotely and that the firm was "monitoring government protocols, and peer firms" in determining when to return to the office full time.

Centerview ultimately directed Shiber and other new hires to work from home. On June 14, 2020, Shiber received an email from Case (Ex. D) telling her that Centerview believed "it makes the most sense for you (and your class) to start remotely," and that the company would "continue to keep you updated on our intentions and our policies and procedures as we get closer to our office re-openings." (¶15).

Shiber began her employment with Centerview on July 6, 2020, working remotely from her childhood home in New Jersey. (¶16). Shiber and Centerview knew that Shiber's working remotely was only temporary, and that she and the other Analysts who started with her would be expected to work in-person from Centerview's New York City offices once they reopened. (¶16).

Despite the fact that she was temporarily working from home, Centerview considered Shiber to be a New York City employee and deducted New York State taxes from her paycheck. (¶17). In fact, when Shiber asked Cheryl Robinson ("Robinson") of Centerview's Human Resources Department that her tax status be changed from New York to New Jersey since she was

temporarily working from home, Robinson responded that Centerview was a New York company and would continue to take out New York taxes. (¶18).[2]

After an initial three weeks of training that ended on July 27, 2020, Shiber began working on projects, receiving encouraging and constructive feedback about her work, focusing mostly on PowerPoint formatting issues. (¶19, 20).

Soon after Shiber began working, it became clear that Centerview fostered a work environment where employees were expected, at times, to work 24 hours in a day or across multiple days without rest or stopping. (¶21). For example, around the week of August 24, 2020, Shiber worked approximately from 8:00 am to 1:00 am the next morning for two or three days in a row, and Shiber only logged off her computer and went to sleep because she believed her tasks for the evening were complete. (¶22). However, on one of those days, Shiber was reprimanded via email for logging off at 1:00 am by the Associate on the project, Tim Ernst, because he felt that Shiber should have asked both him and the second-year Analyst on the project, Matt Gallea, before logging off. (¶23). Shiber was apologetic and made it clear that she did not want there to be any question about her commitment to Centerview. (¶24).

Shiber, who suffers from a medical, mental or psychological impairment in that she has been diagnosed with "Unspecified Anxiety Disorder" and "Unspecified Mood Disorder," requires consistent sleep to avoid exacerbating the effects of her diagnosis. (¶26).

Shiber, therefore, reached out to Robinson of Human Resources. (¶28). When they spoke that day, Shiber advised Robinson that she had a medical disability that required eight to nine hours of sleep per night, ideally on a somewhat consistent schedule. (¶29). Robinson responded that

---

[2] Centerview only submits Shiber's email asking that she be treated as New Jersey employee, omitting Robinson's definitive "no" in response, even though Shiber pled this fact in the SAC. Shiber does not have access to that email, as it was on her work email account to which she lost access after she was terminated.

Shiber had done the right thing by contacting Human Resources, that Shiber was not required to disclose the specifics of her medical condition and that she would "see what [she] could do." (¶30). Shiber told Robinson that she did not want her need for an accommodation to impact her opportunities and experiences at the firm. (¶33).

After further discussions with Robinson (¶31-34), Shiber ultimately spoke with Robinson and Partner Tony Kim ("Kim"), where Shiber reiterated that she did not want her need for an accommodation to limit her professional career. (¶35). Kim proposed that the firm could tell Shiber's co-workers that she was unavailable at specific hours. (¶36). Early the following week, Robinson told Shiber that Kim had informed the team that Shiber had a "hard stop" each night between midnight and 9:00 am. (¶38).

Thereafter, Shiber continued to perform her duties and worked from 9:00 am to midnight each day, seven days a week, including all three days of the 2020 Labor Day weekend. (¶41). The feedback Shiber continued to receive largely regarded PowerPoint formatting issues and was not negative or overly critical. (¶42). The external meetings for which Shiber and her colleagues had been preparing, which occurred on September 9 and 10, 2020, went "perfectly," according to Kim, and Shiber was assigned additional duties thereafter. (¶43).

Shiber was terminated on Tuesday, September 15, 2020, by Centerview's Chief Operating Officer Jeanne Vicari ("Vicari") and Robinson. (¶44, 46). Vicari and Robinson made it painfully clear to Shiber that she was being terminated because of her disability, telling her, "Due to these accommodations you cannot perform the essential functions of the job." (¶47). Vicari and Robinson degradingly told Shiber that she was wrong to even think that she could work at Centerview with a disability or a need for an accommodation, saying, "You made a mistake in accepting this job knowing you couldn't complete the job" and that Shiber "should have known"

she would be unable to do the job. (¶48, 49). Vicari and Robinson actually made it seem as though Shiber had injured Centerview, telling Shiber, "You took a coveted spot in a program where you agreed to fulfill the requirements for three years and given this accommodation you can't fulfill them, a spot we could have given to someone else which now we can't as they have accepted other jobs." (¶51).

Shiber sought to engage in a cooperative dialogue about an accommodation and even proposed that she rescind the accommodation entirely, but Vicari and Robinson rejected any discussion or cooperative dialogue that would permit Shiber to continue working at Centerview, telling her, "Your employment at the firm is terminated and that is irrevocable" and, "We can't ignore the evidence you've presented to us that the requirements of this job will have a negative impact on your health." (¶¶54, 55).

Shiber commenced this lawsuit on April 23, 2021, asserting claims under the New York City Human Rights Law, the New York State Human Rights Law, the Americans with Disabilities Act, and, in the alternative, the New Jersey Law Against Discrimination. Shiber's Second Amended Complaint is attached as Exhibit A.

<u>**ARGUMENT**</u>

<u>**POINT I**</u>

**THERE IS SUBJECT MATTER JURISDICTION UNDER THE
NEW YORK STATE AND CITY HUMAN RIGHTS LAWS
<u>BECAUSE SHIBER WAS A NEW YORK CITY EMPLOYEE</u>**

To establish subject matter jurisdiction over her New York State and City Human Rights Laws claims, Shiber must show that "the alleged discriminatory conduct had an 'impact' within the City" and State. <u>Hoffman v. Parade Publications</u>, 15 N.Y.3d 285, 290 (2010). Centerview's conduct had an impact on Shiber's employment in New York City, as her unlawful termination

denied her a position that would have been in New York City. Additionally, this case is distinguishable from <u>Hoffman</u> and the other cases that Centerview cites in support of its motion, as the plaintiffs in those cases did not work in New York City, did not have any expectation of ever working in New York City and only had minimal contacts with New York City during the course of their employment. Shiber, on the other hand, was hired to work in New York City and would have eventually been required to work there once the temporary remote work necessitated by the pandemic ended.

A.    <u>**Shiber Was Denied Employment Within New York City**</u>

Courts have recognized that an individual who was discriminatorily denied a position within New York City can assert claims under the New York State and City Human Rights Laws, even if that individual never had the opportunity to work in New York City. In <u>Anderson v. HotelsAB, LLC</u>, 2015 U.S. Dist. LEXIS 111820, at *4 (S.D.N.Y. Aug. 24, 2015), for example, the defendants refused to hire the plaintiff for a position in Suffolk County because of her relationship with her disabled adult son. Although the plaintiff never stepped foot in New York City as an employee, Judge Swain denied the defendant's motion to dismiss her New York City Human Rights Law claims, since the plaintiff's termination precluded the possibility that she could have eventually worked in New York City. Specifically, the court held:

> Although the alleged discriminatory conduct here (Defendant Balazs' decision not to hire Plaintiff) occurred outside the geographical bounds of New York City, Plaintiff's Complaint sufficiently alleges that Defendants' conduct had an impact with respect to her prospective employment responsibilities in New York City. Plaintiff has alleged that she would have worked in New York for a period of seven months and that the requirements of the controller position would have required her to do so each year. Reading this allegation together with allegations regarding the corporate headquarters of the Company, the Court can reasonably infer that Plaintiff's employment responsibilities would have brought her within the boundaries of New York City. <u>Id</u>. at *10-11.

Because the position the plaintiff sought would have required her to work in New York City, the Anderson court denied the defendant's motion to dismiss.

The court similarly denied a 12(b)(1) motion to dismiss in Chau v. Donovan, 357 F. Supp. 3d 276, 283 (S.D.N.Y. 2019), where the plaintiff, who at all times lived in California, was denied a position in New York City because of her refusal to engage in sexual relations with the defendant's principal. Judge Castel held:

> Because Chau alleges she would have taken a position in New York City had she not been discriminated against, she has satisfied the requirement that the alleged discriminatory act had an impact within the boundaries of New York City, regardless of whether the conduct occurred in California or New York City. Id. at 284.

Centerview's unlawful termination of Shiber on September 15, 2020, deprived her of the opportunity to work in New York City in the role for which she was hired, once the pandemic-related restrictions subsided.  Therefore, as in Anderson and Chau, Centerview's discriminatory conduct against Shiber had an impact within New York City, so that the Court has subject matter jurisdiction over Shiber's claims under the New York City and State Human Rights Laws.

**B.      Centerview Directing Shiber To Temporarily
Work Remotely Does Not Negate Her Status
As An Employee In Its New York City Offices**

The fact that Centerview directed Shiber to temporarily work from home (SAC ¶13-15) does not nullify the fact that she was an employee in the New York City office, and therefore suffered an impact in New York City. Even though Shiber's employment had already commenced and she was temporarily working from home in New Jersey, Centerview expected her to commence working from New York City as soon as practicable and permissible under government mandates, which Centerview was admittedly closely monitoring. As Case wrote in his email to Shiber on June 14, 2020, just weeks before she started, Centerview was "actively monitoring the

8

timelines of various countries and states for their respective return to working in the office" and that the firm would update employees on "policies and procedures as we get closer to our office re-openings." (Ex. D).[3]  Shiber's expectation that she would work in Centerview's New York City offices was not aspirational or speculative, but a very real part of her employment.

This case is like Regan v. Benchmark Co. LLC, 2012 U.S. Dist. LEXIS 28722, at *38 (S.D.N.Y. Mar. 1, 2012), in which the court denied a motion to dismiss for lack of subject matter jurisdiction over the plaintiff's City Law claim where the plaintiff was working remotely from her home in New Jersey when she was fired. The court noted that even though the plaintiff was no longer working in New York City, she had been directed to work in New Jersey and "she remained affiliated with the New York City office to the extent possible." Id. The court held that the plaintiff sufficiently pled that New York law applied, since "although [plaintiff] was physically working out of Jersey City, all other aspects of her employment connected her to [defendant's] New York City office." Id. In this case, as in Regan, all aspects of Shiber's employment connected her to Centerview's offices in New York City and she only worked remotely because Centerview so directed her.

## C.     **This Case Must Be Distinguished From *Hoffman***

Centerview relies almost exclusively on Hoffman, 15 N.Y.3d at 290, to support its argument that subject matter jurisdiction does not lie with respect to Shiber's New York City and State discrimination claims. Centerview's reliance is misplaced. This case is completely distinguishable from the facts of Hoffman and other cases involving employees working outside of New York City with no expectation that they would ever work full-time in New York. In Hoffman, for example, the plaintiff lived in Georgia and worked at the defendants' offices in

---

[3] Discovery will confirm when Centerview's employees returned to the New York City offices.

Atlanta, and did not have any responsibilities in New York. In <u>Pedroza v. Ralph Lauren Corp.</u>, 2020 U.S. Dist. LEXIS 131504, at *9-10 (S.D.N.Y. July 24, 2020), similarly, the plaintiff's staff and supervisor were in New Jersey and she had only "occasional travel" to New York City, with no responsibilities there. The other cases upon which Centerview rely are distinguishable on the same basis. <u>See, e.g.</u> <u>Ware v. L-3 Vertex Aerospace, LLC</u>, 833 Fed. Appx. 357, at *3 (2d Cir. 2020) (plaintiff was a resident of Jacksonville, Florida and worked for the defendant in Afghanistan); <u>Fried v. LVI Servs.</u>, 500 Fed. Appx. 39, at *6 (2d Cir. 2012) (plaintiff "lived and worked" in Connecticut and had only communications and occasional meetings with the New York City office); <u>Hardwick v. Auriemma</u>, 116 A.D.3d 465, 467 (1st Dept. 2014) (plaintiff experienced a "reduction in her duties at the London Olympics," with no allegation that the alleged discrimination "had an impact within the boundaries of this state"); <u>Wolf v. Imus</u>, 170 A.D.3d 563, 564 (1st Dept. 2009) (plaintiff "lived and worked" in Florida).

The Second Circuit's decision in <u>Vangas v. Montefiore Med. Ctr.</u>, 823 F.3d 174 (2d Cir. 2016), which affirmed this Court's ruling at trial that there was no subject matter jurisdiction under the City Law, highlights how Shiber's case differs from the fact pattern typically addressed under <u>Hoffman</u>. In <u>Vangas</u>, the plaintiff lived in Orange County and worked in Yonkers, speaking with patients over the telephone to perform assessments. <u>Id</u>. at 177-78. The plaintiff never went to New York City for work. <u>Id</u>. at 183. The plaintiff's only basis for asserting a claim under the New York City Human Rights Law was that some of the patients she spoke to were in New York City and that *those patients* were impacted when she was terminated. <u>Id</u>. at 182. The Second Circuit held that "[t]hese meager interactions with NYC residents" and "tangential" contacts with New York City were insufficient to demonstrate an "impact" within New York City. <u>Id</u>. at 182-83.

In this case, unlike in <u>Vangas</u> and the other cases that Centerview cites, Shiber was not hired to work at an office outside of New York City, or even to work from her home in New Jersey, but rather to work at Centerview's offices in New York City. The facts of this case present a scenario that was unthinkable at the time <u>Hoffman</u> was decided, involving employees who would normally have worked in New York City being forced to temporarily work remotely, with the expectation that they will return to their employers' New York City offices once the pandemic abated. Shiber's claims, therefore, present a vastly different fact pattern than <u>Hoffman</u>.

One case has already acknowledged that <u>Hoffman</u>'s impact test does not automatically prohibit employees who temporarily work outside of New York from relying on New York law. In <u>Wexelberg v. Project Brokers LLC</u>, 2014 U.S. Dist. LEXIS 84400, at *31-32 (S.D.N.Y. Apr. 28, 2014) (adopted June 3, 2015 by Judge Kaplan), the defendant "directed [plaintiff] to work remotely from his home in New Jersey" and that the defendants "consistently treated him as an employee in their New York office, as they withheld a portion of his pay to account for New York State income taxes." <u>Id</u>. at *32.[4] The court, denying a motion dismiss for lack of subject matter jurisdiction, acknowledged <u>Hoffman</u> but noted that "there are circumstances that may be classified as falling in a grey area. This is one of them." <u>Id</u>. at *31-32. The court held:

> Furthermore, during the five weeks when plaintiff was not physically located in the New York office, he was working remotely from his home for the New York office rather than working at an out-of-state office of the defendants or at a client site. Depending on the details as to what such remote work entailed, this arrangement may present quite a different scenario from the caselaw that addresses a claim by an employee stationed at an out-of-state office. <u>Id</u>. at *34-35.

---

[4] This case is not like <u>Benham v. eCommission Solutions, LLC</u>, 118 A.D.3d 605, 606 (1st Dept. 2014), which Centerview cites, where the plaintiff's only argument to defeat summary judgment was that she plaintiff "filed New York State nonresident income tax returns and paid income taxes here." In this case, unlike in <u>Benham</u>, the facts overwhelmingly confirm that Shiber was a New York City employee, beyond just that she paid New York taxes.

The court also noted that looking only at where the plaintiff was stationed at his termination "could create a major loophole in the statute protection that the Court of Appeals envisaged for employees residing out-of-state but working in New York." Id. at *35.

In this case, as in Wexelberg, Shiber was consistently treated like a New York employee, even though she was temporarily working from home like the rest of Centerview employees. Accordingly, Centerview's motion should similarly be denied.

D.    **The Impact Of The Covid-19 Pandemic Must Be Considered**

It is improper for Centerview to ignore that the remote work arrangements necessitated by the Covid-19 pandemic have upended the traditional work-from-the-office assumption upon which Hoffman was based. Centerview cites the First Department's decision in Pakniat v. Moor, 192 A.D.3d 596, 596-97 (1st Dept. 2021), but ignores that Pakniat is factually distinguishable from this case and actually better supports Shiber. The First Department recognized the impact of the Covid-19 pandemic, noting, "The Covid 19 pandemic has only expanded the diaspora of remote workers, many of them laboring in other states for New York firms," and that "plaintiff is correct that the State and City Human Rights laws are meant to deter discriminatory behavior by New York employers, as well as to compensate the employees impacted by that behavior." Id. at 596-97. The court ruled that "While these arguments have force," the facts of the case before it, nonetheless, did not differ from the fact pattern set forth in Hoffman. The plaintiff in Pakniat lived in Montreal, Canada, was hired as the Area Manager of the Canadian market, and lived and worked in Montreal, Canada. Id. at 596-97. [5]

---

[5] A copy of the Complaint in Pakniat, as well as an Affirmation submitted in opposition to the motion to dismiss for lack of subject matter jurisdiction, is attached as Exhibit E, to underscore how different the facts of that case are from the one before the Court.

In this case, unlike in <u>Pakniat</u>, Shiber was hired to work in New York City for a New York City employer and was directed to work from home temporarily until the pandemic subsided at which point, she was expected to work in New York City.  Shiber's arguments as to why she should receive protection under New York's discrimination laws are exactly in line with those that the First Department held "have force" in <u>Pakniat</u>. Permitting Centerview to evade responsibility for its actions under New York law runs counter to the City and State's goal of deterring discrimination by New York employers. Particularly under the unique fact pattern of this case, Shiber demonstrates an impact in New York City.

Centerview reads too much into the fact that neither the State nor City Human Rights Laws have been amended during the pandemic. Centerview speculates that the legislature sought no need to "override" <u>Hoffman</u> during the pandemic (Centerview's Brief pg. 8), but it is just as likely that the legislature reasonably assumed that Shiber – like other employees who were hired to work in New York City but only worked remotely due to the pandemic – were already covered by the Human Rights Laws. In any event, Shiber still establishes an impact in New York City because she was denied employment there, so that no amendment to the law was necessary.

## POINT II

### ADDITIONAL DISCOVERY IS NEEDED TO RESOLVE QUESTIONS OF SUBJECT MATTER JURISDICTION

Factual questions preclude resolution at this early stage. Other courts have analyzed subject matter jurisdiction questions after the parties have engaged in discovery. Centerview omits that the decisions in <u>Ware</u>, 833 Fed. Appx. 357, <u>Fried</u>, 500 Fed. Appx. 39, and <u>Benham</u>, 118 A.D.3d 605, were all decided on summary judgment, after discovery. In <u>Vangas</u>, 2015 U.S. Dist. LEXIS 44300, at *2 n.2, this Court dismissed the plaintiff's City Law claim for lack of subject matter jurisdiction *during trial*, after the plaintiff was afforded the benefit of discovery.

In this case, any analysis must delve into additional facts, including (a) whether or not other similarly situated Analysts have actually returned to working out of Centerview's offices and when that occurred, (b) internal communications at Centerview as to the expectation that Shiber would work in their New York City offices and (c) other indicia that Shiber was considered a New York employee by Centerview. See Wexelberg, 2014 U.S. Dist. LEXIS 84400, at *33 (recognizing that dismissal was premature, as the question surrounding New York law's application in the case "may turn on factual matters not yet explored by either side in discovery or in their motion papers.").

There is simply not enough factual material before the Court on this case to arrive at the sweeping decision Centerview seeks. At most, the Court should defer the determination in this case until there is a more complete factual record.

## CONCLUSION

For the foregoing reasons, Shiber respectfully requests that Centerview's motion to dismiss her claims under the New York State and City Human Rights Laws for lack of subject matter jurisdiction be denied in its entirety, that this case be permitted to continue with discovery, and for such further relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By: _____
      BRIAN HELLER
      3 Park Avenue, Suite 2700
      New York, NY 10016
      (212) 889-6565
      bheller@sphlegal.com

**CLAYMAN ROSENBERG KIRSHNER & LINDER LLP**
*Attorneys for Plaintiff*

By: _____
      JAMES F. VALENTINO
      305 Madison Avenue, Suite 650
      New York, NY 10165
      (212) 922-1080
      valentino@clayro.com