**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KATHRYN SHIBER,

Plaintiff,

v.

CENTERVIEW PARTNERS LLC,

Defendant.

Case No. 1:21-cv-03649

**CENTERVIEW PARTNERS LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

Jennifer J. Barrett
Hope D. Skibitsky
Ty Adams
QUINN EMANUEL
URQUHART & SULLIVAN LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
Tel: 212-849-7000
Fax: 212-849-7100
jenniferbarrett@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
tyadams@quinnemanuel.com

*Attorneys for Centerview Partners LLC*

# TABLE OF CONTENTS

**Page**

ARGUMENT ..... 1

I. PLAINTIFF HAS FAILED TO DEMONSTRATE ANY "IMPACT" IN NEW YORK TO SUPPORT SUBJECT MATTER JURISDICTION UNDER *HOFFMAN* AND ITS PROGENY ..... 1

A. Plaintiff's Reliance On Failure-To-Hire Cases Is Misplaced ..... 1

B. Plaintiff Did Not Suffer An "Impact" In New York ..... 2

C. Plaintiff Cannot Avoid *Hoffman*'s Impact Requirement ..... 3

D. The Impact Requirement Remains In Full Force During The Covid-19 Pandemic ..... 7

II. THIS COURT SHOULD DENY PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY ..... 8

CONCLUSION ..... 9

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anderson v. HotelsAB, LLC*,
No. 15CV712-LTS-JLC, 2015 WL 5008771 (S.D.N.Y. Aug. 24, 2015) .......................... 2

*Chau v. Donovan*,
357 F. Supp. 3d 276 (S.D.N.Y. 2019) ................................................................... 2

*Freeman v. United States*,
556 F.3d 326 (5th Cir. 2009) ................................................................................ 8

*Hoffman v. Parade Publications*,
15 N.Y.3d 285 (2010) ................................................................................ passim

*Holmes v. Apple Inc.*,
No. 17 CIV. 4557(ER), 2018 WL 3542856 (S.D.N.Y. July 23, 2018),
*aff'd*, 797 F. App'x 557 (2d Cir. 2019) ................................................................ 8

*Kraiem v. JonesTrading Institutional Servs. LLC.*,
492 F. Supp. 3d 184 (S.D.N.Y. 2020) ................................................................... 2

*Molchatsky v. United States*,
778 F. Supp. 2d 421 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013), 713
F.3d 159 (2d Cir. 2013) ........................................................................................ 8

*Pakniat v. Moore*,
193 A.D.3d 596 (N.Y. Ap. Div. 1st Dept. 2021) .................................................. 7

*Regan v. Benchmark Co., LLC*,
11 CIV. 4511 CM, 2012 WL 692056 (S.D.N.Y. Mar. 1, 2012) ........................... 3

*Ware v. L-3 Vertex Aerospace, LLC*,
833 F. App'x 357 (2d Cir. 2020) .......................................................................... 1

*Wexelberg v. Project Brokers LLC*,
No. 13 CIV. 7904(LAK) MHD, 2014 WL 2624761 (S.D.N.Y. Apr. 28, 2014) ................ 6

## Statutory Authorities

N.Y. Civ. Rights Law ............................................................................................ 3, 7

N.Y. Exec. Law § 290[2] ........................................................................................ 5

N.Y. Exec. Law § 290[3] ........................................................................................ 5

**N.Y.C. Charter and Administrative Code**

N.Y.C. Admin. Code § 8-101 ........................................................................................... 5

**Additional Authorities**

May Wong, *Stanford Research Provides a Snapshot of a New Working-from-Home Economy, Stanford News*, available at https://news.stanford.edu/2020/06/29/snapshot-new-working-home-economy/ (June 29, 2020)........................................................................................................ 6

Defendant Centerview Partners LLC ("Centerview") respectfully submits this reply memorandum of law in further support of its motion to dismiss Causes of Action I–VI of Plaintiff's Second Amended Complaint (ECF. 23, "Complaint") for lack of subject-matter jurisdiction and in response to Plaintiff's opposition thereto (ECF No. 28 ("Op.")).

## ARGUMENT

As Centerview noted in its opening brief, it is black-letter law that a nonresident of New York alleging discriminatory conduct who did not work in New York cannot assert a claim under the New York City Human Rights Law ("NYCHRL") or New York State Human Rights Law ("NYSHRL" and with the NYCHRL, the "HRLs"), and "[e]very case to address this issue forecloses such a conclusion." ECF No. 26 at 2 (citing *Ware v. L-3 Vertex Aerospace, LLC*, 833 F. App'x 357, 359 (2d Cir. 2020)). In response, Plaintiff fails to cite even a single case in which a plaintiff's claims for discriminatory termination under the HRLs survived where the plaintiff neither lived nor worked within the geographical bounds of those statutes. Instead, Plaintiff cites factually-inapposite failure-to-hire cases (*see* Op. at 7-8) and cases where plaintiffs (unlike the Plaintiff here) in fact worked in New York for the majority of their employment (*see id.* at 9, 11). Recognizing that her claims fail under the law, Plaintiff urges this Court to re-write the HRLs, despite the fact that the legislative bodies who enacted those laws have declined to do so.

### I. PLAINTIFF HAS FAILED TO DEMONSTRATE ANY "IMPACT" IN NEW YORK TO SUPPORT SUBJECT MATTER JURISDICTION UNDER *HOFFMAN* AND ITS PROGENY

#### A. Plaintiff's Reliance On Failure-To-Hire Cases Is Misplaced

Plaintiff admits that she never lived or worked in New York during her employment with Centerview (Op. at 3), yet insists that the alleged discrimination "had an impact within New York City" because she was deprived of the opportunity to work in New York City. Op. at 6-8. Plaintiff points to two factually-distinguishable cases where courts found that HRL claims could proceed

where the plaintiffs alleged that the defendants' failure to hire them for a position in New York was itself the alleged discriminatory act. *Id.* (citing *Anderson v. HotelsAB, LLC*, No. 15CV712-LTS-JLC, 2015 WL 5008771 (S.D.N.Y. Aug. 24, 2015) and *Chau v. Donovan*, 357 F. Supp. 3d 276 (S.D.N.Y. 2019)). But as the Southern District of New York has recognized in a published opinion, "[b]oth [*Anderson and Chau*] are failure to hire cases, where the impact of the plaintiff was specifically tied to their being deprived a job in New York on discriminatory grounds." *Kraiem v. JonesTrading Institutional Servs. LLC*., 492 F. Supp. 3d 184, 199 (S.D.N.Y. 2020). Thus, in *Kraiem*, the court rejected plaintiff's argument that she felt an impact within New York City or State based upon both "harassing conduct by people located in New York City while she was in London or elsewhere, and … negative effects on her future career prospects in New York," and only permitted claims based upon conduct that occurred in New York while plaintiff was physically present in New York to proceed. *Id.* at 199-200.

Unlike the plaintiffs in *Anderson* and *Chau,* Plaintiff has not alleged (and, of course, cannot allege) a discriminatory failure-to-hire claim. *See generally* Compl. (alleging that Centerview hired Plaintiff). Instead, Plaintiff's HRL claims are grounded in alleged discrimination in connection with her *termination*. Accordingly, this case falls squarely within the realm of *Hoffman v. Parade Publications*, 15 N.Y.3d 285 (2010) and its progeny, which make clear that the HRLs protect "'inhabitants' and persons 'within' the state," of which Plaintiff is neither. *Hoffman*, 15 N.Y.3d at 291.

### B. Plaintiff Did Not Suffer An "Impact" In New York

Plaintiff argues that she suffered an impact in New York City because "she was an employee in [Centerview's] New York City office." Op. at 8. Yet Plaintiff does not cite to a single case that stands for the proposition that a plaintiff can meet the HRLs' jurisdictional requirement by merely being hired by an employer with an office in New York. Instead, Plaintiff

relies on the single, factually inapposite case of *Regan v. Benchmark Co., LLC*, where the Court noted that while the plaintiff was not working in New York when she was fired, "she remained affiliated with the New York City office to the extent possible." No. 11 CIV. 4511 CM, 2012 WL 692056, at *14 (S.D.N.Y. Mar. 1, 2012). Plaintiff cites to that language to support jurisdiction here. Yet, Plaintiff neglects to note that, in *Regan*, the plaintiff worked in defendants' New York City office for approximately four years of her five-year employment, until she was involuntarily transferred to an ad hoc and unofficial New Jersey office out of retaliation for reporting the years of sexual harassment she endured in New York City. *See id.* at *1-5. In light of these facts, the court characterized defendants' argument that plaintiff failed to plead an impact in New York City as "disingenuous." *Id.* at *14. This case is nothing like *Regan* because Plaintiff has not alleged that she suffered any discriminatory impact in New York City, nor was she transferred to a jurisdiction outside of the HRLs' reach out of retaliation.

**C. Plaintiff Cannot Avoid *Hoffman*'s Impact Requirement**

Understanding that her HRL claims cannot survive *Hoffman's* impact requirement, Plaintiff attempts to circumvent that requirement by arguing that *Hoffman* and its progeny do not apply because the facts here are "distinguishable." Op. at 9-12. In particular, Plaintiff claims that the plaintiffs in *Hoffman* and the other cases Centerview cites in its motion had no "expectation" of working full-time in New York and, thus, *Hoffman's* impact requirement is inapplicable. *Id.* This argument strains credulity.

*First*, in *Hoffman*, New York State's highest court squarely and clearly established the impact test for determining standing under the HRLs. *Hoffman* 15 N.Y.3d at 290 ("We hold that the impact requirement is appropriate where a nonresident plaintiff invokes the protection of the City Human Rights Law."); *id.* at 291 ("[W]e conclude that a nonresident must plead and prove that the alleged discriminatory conduct had an impact in New York."). *Hoffman* made no

exception where a plaintiff is not impacted in New York but believes she might one day work in New York. Thus, this Court cannot disregard *Hoffman*.

In any event, Plaintiff's attempt to distinguish *Hoffman* from the case at bar falls flat, as Plaintiff disregards the Court of Appeals' rationale behind the impact requirement—which rationale remains even more sound in the context of increases in remote working. *See* ECF No. 26 at 7-10. Specifically, in *Hoffman*, the Court of Appeals analyzed the text and purpose of the HRLs. With regard to the NYCHRL, *Hoffman* stated "it is clear from the statute's language that its protections are afforded only to those who inhabit or are 'persons in' in the City of New York." *Hoffman*, 15 N.Y.3d at 289. Similarly, the Court of Appeals found that "[t]he obvious intent of the [NYSHRL] is to protect 'inhabitants' and persons 'within' the state, meaning that those who work in New York fall within the class of persons who may bring discrimination claims in New York." *Id.* at 291. Thus, the Court of Appeals adopted the impact requirement because it is appropriately tethered to the HRLs' legislative aims—that is, the impact requirement "does not exclude all nonresidents from its protection; rather, it expands those protections to nonresidents who work in the city, while concomitantly narrowing the class of nonresident plaintiffs who may invoke its protection." *Id.* at 290 (speaking to the NYCHRL) and 291 ("Application of the 'impact' requirement to [the NYSHRL] achieves the same ends as is the case with its City counterpart, because it permits those who work in the state to invoke its protections."). Plaintiff has not explained how a ruling in her favor would square with the HRLs' text and the respective legislatures' intent.

*Second*, and, relatedly even if *Hoffman's* impact requirement could somehow be found inapplicable here, Plaintiff would nevertheless still be subject to the text of the HRLs. That is, putting aside *Hoffman*, the HRLs themselves make clear that they apply to individuals *within* the

City and State's geographical boundaries. The NYCHRL begins as follows: "*In the city of New York*, … there is no greater danger to the health, morals, safety and welfare of the city *and its inhabitants*" than prejudices. N.Y.C. Admin. Code § 8-101 (emphasis added). Similarly, the NYSHRL was enacted pursuant to "the police power of [New York State] for the protection of the public welfare, health and peace *of the people of this state*." N.Y. Exec. Law § 290[2] (emphasis added). The NYSHRL recognizes that the State "has the responsibility to act to assure that every individual *within* [New York State] is afforded an equal opportunity to enjoy a full and productive life," and further recognizes that the failure to provide equal opportunities "threatens the peace, order, health, safety and general welfare of the state and *its inhabitants*." N.Y. Exec. Law § 290[3]. Thus, even in the absence of any impact requirement, Plaintiff—as a non-resident who did not work in New York—must establish the necessary jurisdictional nexus to her HRL claims, which she cannot do.

*Third*, although Plaintiff argues that *Hoffman* is either inapplicable to her specifically or inapplicable generally in light of the COVID-19 pandemic, she does not offer this Court any viable alternative test to ensure that her (or any future plaintiff's claims) fit within the geographical scope of the HRLs. To the extent Plaintiff is suggesting that one's "expectations" about where they might work should dictate whether claims fall within the jurisdictional bounds of the HRLs, such a consideration is untenable. An expectations-based test would be "[difficult] for courts to apply and litigants to follow, lead[] to [un]predictable results, and [would expand] the protections of the [HRLs] [beyond] those who are meant to be protected." *Hoffman*, 15 N.Y.3d at 291. This is particularly the case during the global pandemic where many workers have taken jobs with

significant uncertainty over whether and when they might return to a physical office location.[1] Accordingly, this Court should decline to adopt any expectations-based test for the HRLs' jurisdictional reach.

Finally, Plaintiff's reliance on *Wexelberg v. Project Brokers LLC*, No. 13 CIV. 7904 (LAK) MHD, 2014 WL 2624761 (S.D.N.Y. Apr. 28, 2014), *report & recommendation adopted* June 3, 2014 (ECF No. 25) is likewise misplaced. Op. at 11-12. There, the plaintiff "state[d] under penalty of perjury that he in fact worked at [defendant employer's] New York City office for six out of the eleven weeks during which he was employed by defendants," only working from his home for the balance of his employment. *Id.* at *4. Given that plaintiff was working from home at the time of his termination, the court in *Wexelberg* stated that, as far as the *Hoffman* impact requirement goes, this case "may be classified as falling in a grey area." *Id.* at *10. The court noted that "[i]t is not clear from *Hoffman* or its progeny" whether a plaintiff who works out of a New York office "*for the majority of the relevant time*" he was employed by defendant "may not be deemed to have been working in the City for purposes of all of his claims." *Id.* at *11 (emphasis added). The court then suggested (but did not opine) that a plaintiff who works remotely from his home for a New York office may be differently situated vis-à-vis the HRLs than a plaintiff who works in an out-of-state office. *Id.* Notably, the *Wexelberg* court expressed concern with issuing a ruling that would permit employers to side-step the HRLs by simply directing an employee to work from home before discriminatorily firing that employee. *Id.* That concern, of course, is not present here, particularly where Plaintiff was never working in Centerview's New York City office to begin with.

---

[1] *See, e.g.*, May Wong, *Stanford Research Provides a Snapshot of a New Working-from-Home Economy*, STANFORD NEWS (June 29, 2020), *available at* https://news.stanford.edu/2020/06/29/snapshot-new-working-home-economy/ (noting that "'[t]he new 'working-from-home economy' … is likely to continue long past the coronavirus pandemic").

For the above reasons, this Court should apply the *Hoffman* impact requirement to the present case and find that Plaintiff has not suffered an impact in New York and thus cannot state claims under the HRLs.

**D. The Impact Requirement Remains In Full Force During The Covid-19 Pandemic**

Plaintiff argues that "[i]t is improper for Centerview to ignore that the remote work arrangements necessitated by the Covid-19 pandemic have upended the traditional work-from-the-office assumption upon which *Hoffman* was based." Op. at 12. Plaintiff then attempts to distinguish this case from the facts of *Pakniat v. Moore*, 193 A.D.3d 596 (N.Y. Ap. Div. 1st Dept. 2021), where the Court noted that while Plaintiff's COVID-19 arguments "have force, the clear directive of *Hoffman* bars this Court from expanding the jurisdictional breadth of either statute to encompass behavior such as that alleged in the complaint." *Pankiat*, 193 A.D3d at 597. Likewise, a ruling by this Court that employees working out-of-state during a health crisis are exempted from *Hoffman's* impact requirement would certainly expand the jurisdictional breadth of the HRLs.

As discussed at length in Centerview's opening brief (ECF No. 26 at 7-10), it is the City council and State legislators, not the courts, who are charged with writing and, to the extent they deem appropriate, amending statutes. Plaintiff speculates that these legislative bodies may not have amended the HRLs because they "reasonably assumed that [Plaintiff] – like other employees who were hired to work in New York City but only worked remotely due to the pandemic – were already covered by the Human Rights Laws." Op. at 13. This argument is pure speculation and disserves basic separation of powers principles, particularly as the Legislature is "presumed [to have] knowledge of the *Hoffman* decision" *Pakniat*, 192 A.D.3d at 597, and has the clear authority and ability to revise the HRLs where they deem appropriate.

## II. THIS COURT SHOULD DENY PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY

Plaintiff urges the Court to allow for jurisdictional discovery to "delve into additional facts, including (a) whether or not other similarly situated Analysts have actually returned to working out of Centerview's offices and when that occurred, (b) internal communications at Centerview as to the expectation that Shiber would work in their New York City offices, and (c) other indicia that Shiber was considered a New York employee by Centerview." Op. at 13-14. However, "a plaintiff is not … entitled to jurisdictional discovery if it cannot show that the requested discovery is 'likely to produce the facts needed to withstand a Rule 12(b)(1) motion.'" *Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013), *and aff'd*, 713 F.3d 159 (2d Cir. 2013) (quoting *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009)). None of the factual inquiries Plaintiff raises have any bearing on the question of whether Plaintiff suffered an impact in New York City. That is, regardless of Centerview's current COVID-19 policies, Centerview's beliefs as to whether Plaintiff might have one day worked from the New York City office, or whether Centerview considered Plaintiff to be employed out of New York, the fact remains that Plaintiff never suffered any impact from the alleged discriminatory conduct in New York. Accordingly, this Court should deny Plaintiff's request for jurisdictional discovery. *See, e.g.*, *Holmes v. Apple Inc.*, No. 17 CIV. 4557 (ER), 2018 WL 3542856, at *6 (S.D.N.Y. July 23, 2018) (Ramos, J.), *aff'd*, 797 F. App'x 557 (2d Cir. 2019) (denying request for jurisdictional discovery where "[e]ven if those business contacts exist, they would be insufficient for purposes of general personal jurisdiction").

## CONCLUSION

For the foregoing reasons, Centerview respectfully requests that the Court dismiss Plaintiff's NYCHRL and NYSHRL claims (Causes of Action I–VI) with prejudice and deny Plaintiff's request for jurisdictional discovery.

DATED: October 25, 2021

Respectfully submitted,

By *<u>/s/ Jennifer J. Barrett</u>*

Jennifer J. Barrett
Hope D. Skibitsky
Ty Adams
QUINN EMANUEL
URQUHART & SULLIVAN LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
Tel: 212-849-7000
Fax: 212-849-7100
jenniferbarrett@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
tyadams@quinnemanuel.com

*Attorneys for Centerview Partners LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of October, 2021, I electronically filed the foregoing Memorandum of Law with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

SCHWARTZ PERRY & HELLER LLP
David S. Perry
Brian Adam Heller

CLAYMAN & ROSENBERG LLP
James Francis Valentino

/s/ Hope D. Skibitsky
Hope D. Skibitsky