UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN SHIBER,

        Plaintiff,

        v.

CENTERVIEW PARTNERS LLC,

        Defendant.

**OPINION AND ORDER**

21 Civ. 3649 (ER)

Ramos, D.J.:

Kathryn Shiber brings this action against Centerview Partners LLC, asserting violations of the Americans with Disabilities Act ("ADA"), the New York City Human Rights Law ("NYCHRL"), the New York State Human Rights Law ("NYSHRL"), and the New Jersey Law Against Discrimination ("NJLAD"). Doc. 23 ("Second Amended Complaint" or "SAC"). Before the Court is Centerview's motion to dismiss Shiber's claims under the NYSHRL and the NYCHRL pursuant to 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. For the reasons set forth below, Centerview's motion is GRANTED.

I.    **BACKGROUND**

In September 2019, Centerview—an investment bank and advisory firm with offices in New York City—offered Shiber, a New Jersey resident, a position in its three-year analyst program. Doc. 23 ¶¶ 3, 5, 9. Shiber started at Centerview on July 6, 2020, after completing several weeks of training and exams. *Id.* ¶¶ 7, 12. Because of the Covid-19 pandemic, Shiber worked remotely from her home in New Jersey from the outset of her employment. *Id.* ¶ 16. Shiber alleges that when Centerview partner Richard Case emailed the incoming analyst class ahead of their start date, he noted that while it made sense for the analysts to start remotely, he

would continue to provide updates as Centerview got "closer to . . . office re-openings." *Id.* ¶¶ 14, 15. At the time, Shiber understood her remote work to be temporary and expected to work in person from Centerview's New York City offices once those offices reopened. *Id.* at 16. Shiber alleges that although she was working from her home in New Jersey, Centerview deducted New York State taxes from her paycheck. *Id.* ¶¶ 17, 18.

Shiber alleges that soon after she began working, it became clear to her that Centerview expected its employees at times to work 24 hours a day or across several days. *Id.* ¶ 21. But Shiber alleges she has been diagnosed with Unspecified Anxiety Disorder and Unspecified Mood Disorder and that, because of these and to avoid exacerbating her symptoms, she requires consistent sleep. *Id.* ¶ 26.

Shiber explains that in the week of August 24, 2020, she worked from 8:00 a.m. to 1:00 a.m. for two or three days in a row and only logged off from her computer because she believed her tasks for the day were complete. *Id.* ¶ 22. On one of those days, Shiber alleges she was reprimanded via email for logging off at 1:00 a.m. and was told she should have asked the associate and second-year analyst on the project before logging off. *Id.* ¶ 23. According to Shiber, that week, she reached out to Cheryl Robinson, of Centerview's Human Resources Department, and requested to speak with her about how she could manage work-life balance. *Id.* ¶¶ 18, 28.

Shiber spoke with Robinson later that day, informing her that she had a disability and that, as a result, she required eight to nine hours of sleep each night. *Id.* ¶ 29. Shiber alleges Robinson told her she was not required to disclose the specifics of her disability and that she would "see what [she] could do." *Id.* ¶ 30.

2

According to Shiber, Robinson called her later that day and suggested she put up "guard rails." *Id.* ¶ 31. In other words, at a certain time each night, Shiber would log off from her work computer and would not be expected to perform any work tasks. *Id.* Robinson explained that Shiber's colleagues would be made aware of this accommodation and that, with the accommodation, she would be able to sleep eight hours each night. *Id.* ¶ 32. In response, Shiber told Robinson she was concerned about her team learning that she required an accommodation and did not want her need for an accommodation to impact her opportunities at Centerview. *Id.* ¶ 33. Shiber alleges Robinson told her she would speak with Centerview senior partner Tony Kim, who Robinson assured her would be a "good resource for this type of thing." *Id.* ¶ 34.

Shiber alleges she had a call with Robinson and Kim shortly thereafter and that, on the call, she reiterated that she did not want her need for an accommodation to impact her career. *Id.* ¶ 35. In response, Kim told her he understood and that he would simply tell her co-workers that she would be unavailable at certain hours of the night, noting there are a number of reasons why someone might not be available at those hours. *Id.* ¶ 36. Shiber agreed to the "guard rails" proposal, having been comforted by Kim's and Robinson's assurances. *Id.* ¶ 37. The following week, Robinson told Shiber that Kim had told the team Shiber had a "hard stop" each night between midnight and 9:00 a.m. *Id.* at 38. Shiber notes she did not request those times. *Id.*

Shiber alleges she continued to perform her tasks and worked each day from 9:00 a.m. to midnight. *Id.* ¶ 41. Shiber alleges the only negative feedback she thereafter received related to PowerPoint formatting issues and was not overly critical. *Id.* ¶ 42.

On September 15, 2020, Shiber received a video call invitation from Centerview's Chief Operating Officer Jeanne Vicari; at the time, Shiber assumed Vicari scheduled the call to check in on Shiber's accommodation. *Id.* ¶¶ 44, 45. Instead, Shiber was terminated on the call. *Id.* ¶ 46.

Shiber alleges that Vicari and Robinson, who was also on the call, made clear she was being terminated because of her disability, telling her that she could not perform the "essential functions" of her job with her accommodation in place, that she had made a mistake in accepting the job, and that she should have known that the position would require many 120-hour weeks and that, in light of her disability, she would be unable to do the job. *Id.* ¶¶ 47–50.

Shiber was shocked and humiliated, but wanted to salvage her position: she alleges she explained to Vicari and Robinson that she was able to work—and had worked—105 hours a week with her accommodation in place and was willing to work 120 hours a week in order to keep her job. *Id.* ¶ 52. Still, Vicari and Robinson made clear her termination was final and not negotiable. *Id.* ¶ 54. Though Centerview gave Shiber a termination letter, the letter did not provide any explanation for her termination. *Id.* ¶ 56.

In the two-and-a-half months Shiber worked for Centerview, she never stepped foot inside Centerview's New York City office and instead worked exclusively from her home in New Jersey. Doc. 26 at 1.

On April 23, 2021, Shiber brought this action against Centerview, asserting claims only under the NYCHRL. *See* Doc. 1. Centerview moved to dismiss the complaint on July 9, 2021. *See* Doc. 16. Shiber amended her complaint on July 23, 2021, adding claims under the NYSHRL and the NJLAD. *See* Doc. 18 ("First Amended Complaint" or "FAC"). Shiber again amended her complaint on August 23, 2021, this time adding claims under the ADA. *See* Doc. 23. Centerview now moves for partial dismissal of the SAC, arguing that this Court lacks subject matter jurisdiction over Shiber's NYSHRL and NYCHRL claims. *See* Doc. 24.

II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings[.]" *Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not draw inferences from the complaint favorable to the plaintiff. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir 2004).

### III.   DISCUSSION

#### a.   NYCHRL and NYSHRL Claims

The NYCHRL covers only those who inhabit or are persons within New York City, including those who work in the city. *Hoffman v. Parade Publ'ns*, 933 N.E.2d 744, 746–47 (N.Y. 2010). In other words, the NYCHRL does not necessarily restrict non-residents from stating a claim, but rather expands protections to non-residents who work in New York City. *Id.* To state a claim under the NYCHRL, a non-resident plaintiff—like Shiber—must allege that the discriminatory conduct had an impact in New York City. *Id.*

The purpose of the impact requirement is to make the NYCHRL "simple for courts to apply and litigants to follow, lead[ing] to predictable results," and not necessarily to engage in a fact intensive analysis of all the plaintiff's ties to New York City. *Fried v. LVI Servs., Inc.*, 500

5

F. App'x 39, 42 (2d Cir. 2012) (quoting *Hoffman*, 933 N.E.2d at 747). Courts look to where the impact occurs, not the place of its origination, to determine the location of the discriminatory acts, and the impact needs to be felt by the plaintiff in New York City. *See Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016); *Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 221 (E.D.N.Y. 2018) (quoting *Int'l Healthcare Sch. v. Global Healthcare Exch., LLC*, 470 F. Supp. 3d 345, 362 (S.D.N.Y. 2007)).

Courts have repeatedly held that a non-resident plaintiff's occasional meetings in or travel to the city are tangential and do not satisfy the impact requirement. *See Hoffman*, 933 N.E.2d at 748 (dismissing non-resident plaintiff's NYCHRL claims where plaintiff attended quarterly meetings in the city and where the decision to terminate him was made in the city); *see also Fried*, 500 F. App'x at 42.

The Second Circuit has also rejected arguments that impact can be established by interactions with people in New York while the plaintiff is elsewhere, as "the impact of the employment action must be felt *by the plaintiff* in [the city]." *Vangas*, 823 F.3d at 182–83. "To hold otherwise, such that the NYCHRL would cover employees who work at call centers outside the city and whose only contacts with [the city] are phone conversations with persons in the city, would broaden the statute impermissibly beyond those 'who work in the city.'" *Id.*

The impact requirement—as applied under the NYCHRL—also applies under the NYSHRL, as the intent of that statute is to protect those who live or work within New York State. *See E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013); *see also Hoffman*, 933 N.E.2d at 747. To state a claim under the NYSHRL, a non-resident plaintiff must allege that she felt an impact in New York State. *Hoffman*, 933 N.E.2d at 747.

6

Because Shiber at all relevant times worked from her home in New Jersey and because she cannot demonstrate an impact in New York City or New York State, her NYCHRL and NYSHRL claims must be dismissed.

Shiber argues she meets the impact requirement because she expected that at some point she *would* work in New York City.  Doc. 28 at 6–7.  Shiber explains she was hired to work in New York City and, had she not been fired, she eventually would have been required to work there, once the offices reopened and Centerview employees no longer had to work remotely.  *Id.*  Here, Shiber analogizes to two failure-to-hire cases, *Anderson v. HotelsAB, LLC* and *Chau v. Donovan*, and argues that she, like the plaintiffs in those cases, was deprived of the opportunity to work in New York.  But, as Centerview points out, *Anderson* and *Chau* are inapposite.

In both cases, the plaintiffs asserted discriminatory failure-to-hire claims, alleging they felt an impact in New York when they were denied employment—on discriminatory grounds—in New York.  *See Anderson v. HotelsAB, LLC*, 2015 WL 5008771, at *3, 10–11 (S.D.N.Y. Aug. 24, 2015) ("Plaintiff's Complaint sufficiently alleges that Defendants' conduct had an impact with respect to her prospective employment responsibilities in New York City" because "Plaintiff [ ] alleged that she would have worked in New York for a period of seven months and that the requirements of the controller position would have required her to do so each year"); *see also Chau v. Donovan*, 357 F. Supp. 3d 276, 283 (S.D.N.Y. 2019) ("Although Chau never worked in New York City for Granger or Donovan, the job for which she alleges she was not hired in violation of the NYCHRL and NYSHRL would have offered her employment within New York City.").

But, here, Shiber has not alleged—and cannot allege—a discriminatory failure-to-hire claim.  Instead, Shiber alleges that, had she not been fired, she at some point might have been

7

able to work in New York City. This is not enough. As another court in this district made plain, pleading impact in New York City by "unspecified future career prospects would . . . represent a[n] . . . impermissible broadening of the scope of [the NYCHRL and NYSHRL]." *Kraiem v. JonesTrading Inst. Servs. LLC.*, 492 F. Supp. 3d 184, 199 (S.D.N.Y. 2020). In other words, if "impact can be shown by a mere hope to work in New York down the line, the flood gates would be open." *Id.* Here, Shiber points to no facts showing—with any specificity—that she one day would have been able to work in Centerview's New York City offices or that she relied on some promise of eventual in-person work. Shiber's allegations that Centerview had plans to re-open its offices—at some point—are insufficient to prove that she would have been required to work in person and, in any event, do not show that Shiber suffered an impact in New York City or New York State.

Shiber also analogizes to *Wexelberg v. Project Brokers*. In that case, the court denied a motion to dismiss for lack of subject matter jurisdiction where a plaintiff's employers directed him to work from his home in New Jersey but "consistently treated him as an employee in their New York office[.]" As Shiber points out, the *Wexelberg* court noted that while the plaintiff was not "physically located in the New York office, he was working remotely from his home *for* the New York office[.]" *Wexelberg v. Project Brokers LLC*, No. 13 Civ. 7904 (LAK) (MHD), 2014 WL 2624761, at *4 (S.D.N.Y. Apr. 28, 2014) (emphasis added).

But Shiber ignores the fact that the plaintiff in *Wexelberg* worked at the New York City office for six of the eleven weeks during which he was employed by defendants and only worked from home—at defendants' direction—for the balance of that period. *Id.* at *4. Because he was working remotely when he was terminated, the *Wexelberg* court classified his circumstances as "falling in a grey area" for purposes of the impact requirement. *Id.* at *10. In other words, even

8

though the plaintiff was fired while he was working from home—not in the New York office—the court nonetheless found he was covered by the NYCHRL and the NYSHRL as he initially worked at defendants' New York office and, indeed, worked from there for the majority of his employment. *Id.* at *10–11. Shiber, on the other hand, worked remotely for the entirety of her employment. The circumstances of her employment do not fall within the "grey area" described in *Wexelberg*.[1]

Last, Shiber urges the Court to consider the impact of the Covid-19 pandemic and, specifically, the fact that "remote work arrangements . . . have upended the traditional work-from-the-office assumption upon which *Hoffman* was based." Doc. 28 at 12. But Shiber does not point to any law showing that the NYCHRL or NYSHRL requirements have changed in light of the pandemic. As Centerview points out, at no point during the pandemic did the New York City Council or the New York State Legislature amend the human rights laws to render the impact requirement inapplicable or to make an exception for out-of-state plaintiffs working remotely because of the pandemic.

In *Pakniat v. Moor*, the Appellate Division, First Department considered the NYCHRL and NYSHRL impact requirement in light of Covid-19. *See Pakniat v. Moor*, 145 N.Y.S.3d 30,

---

[1] Shiber also cites to *Wexelberg* to support her argument that she was treated as a New York employee because Centerview withheld New York State taxes from her pay. Doc. 28 at 11. In *Wexelberg*, the court noted that the defendants withheld a portion of plaintiff's pay to account for New York State income taxes and that this fact is one of a "set of circumstances lend[ing] itself to several plausible arguments for statutory coverage." 2014 WL 2624761 at *11. But, as stated above, the *Wexelberg* court made clear that the most significant circumstance—for purposes of meeting the impact requirement—was the plaintiff's in-person work in the New York office for the majority of his employment. *Id.* Shiber does not point to any law—and the Court knows of none—showing that payment of New York State taxes *alone*—while not living and working in New York—does not overcome a failure to otherwise meet the impact requirement. Indeed, the Appellate Department, First Department specifically addressed this issue when it dismissed a non-resident plaintiff's NYSHRL and NYCHRL claims where her only argument that she met the impact requirement was that she filed New York State income taxes. *See Benham v. eCommission Solutions, LLC*, 989 N.Y.S.2d 20 (N.Y. App. Div. 2014).

31 (N.Y. App. Div. 2021). Pakniat, a Montreal resident, sued her employer under the NYSHRL and the NYCHRL for sexual harassment and retaliation. *Id.* at 30–31. The Supreme Court, New York County dismissed Pakniat's claims for lack of subject matter jurisdiction, noting Pakniat lived and worked in Montreal for the entirety of her employment, and rejecting Pakniat's arguments that she met the impact requirement because the alleged discriminatory acts—including the decision to terminate her employment—occurred in New York. *Id.* The Supreme Court also rejected Pakniat's contention that the *Hoffman* standard should no longer apply, given the increase in remote working arrangements during the Covid-19 pandemic. *Id.* at 31.

In affirming the dismissal, the Appellate Division explained that while the Covid-19 pandemic "has only expanded the diaspora of remote workers, many of them laboring in other states for New York firms," the "clear directive of *Hoffman* bars this Court from expanding the jurisdictional breadth of either statute to encompass behavior such as that alleged in the complaint." *Id.* at 31. Shiber attempts to distinguish herself from the plaintiff in *Pakniat*, noting she was hired to work in New York City for a New York City employer. But, as discussed, that Shiber worked for a New York company is not enough to allow her to come within the protections of the New York human rights laws.

In any event, the court in *Pakniat* made clear that, even in light of the Covid-19 pandemic, a plaintiff asserting claims under the NYCHRL and NYSHRL "must still satisfy the jurisdictional requirement that the impact of the discrimination was felt in New York City and State," and the fact that an allegedly unlawful decision terminating a plaintiff's employment occurred in New York is insufficient to plead impact in New York. *Id.* at 30–31. That is no less true here.

Shiber argues that allowing Centerview to "evade responsibility for its actions under New York law" is counter to the statutes' aim of deterring discrimination by New York employers. Doc. 28 at 13.  But Shiber does not offer a workable alternative to the impact requirement for remote employees, and her suggestion that an employee's expectation of future work in New York might allow that employee to gain the protection of New York's human rights laws is, as Centerview makes clear, untenable.

An expectations-based test would be "impractical [and] would lead to inconsistent and arbitrary results." *Hoffman*, 933 N.E.2d at 747.  And, "the permutations of such a rule are endless." *Id*.  It also would extend the protections of the human rights laws far beyond those the laws are meant to protect.  In other words, such an expansion would flout the clear purposes of the *Hoffman* impact requirement:  that it be "simple for courts to apply and litigants to follow, lead[] to predictable results, and confine[] the protections of the [statutes] to those who are meant to be protected—those who work in the city[.]"  *Id.*

      b. **Request for Discovery**

At the close of her argument, Shiber asks that the Court allow for jurisdictional discovery to "delve into additional facts, including (a) whether or not other similarly situated Analysts have actually returned to working out of Centerview's offices and when that occurred, (b) internal communications at Centerview as to the expectation that Shiber would work in their New York City offices and (c) other indicia that Shiber was considered a New York employee by Centerview."  Doc. 28 at 14.  But, a plaintiff is not entitled to jurisdictional discovery if it cannot show that the requested discovery is "likely to produce the facts needed to withstand a Rule 12(b)(1) motion."  *Molchatsky v. United States*, 778 F. Supp. 2d 431, 438 (S.D.N.Y. 2011) (internal citations and quotation marks omitted), *aff'd*, 713 F.3d 159 (2d Cir. 2013).

Here, it is beside the point whether Centerview currently requires its employees to work in person, whether Shiber one day might have worked out of Centerview's New York office, or whether Centerview considered Shiber to be a New York employee. The fact remains that she did not live or work in New York at the time she was fired and she cannot point to any impact she felt in New York as a result of that firing. In other words, Shiber cannot overcome the reality that she fails the impact test. As such, Shiber's request for jurisdictional discovery is denied.

IV.   **CONCLUSION**

For the reasons set forth above, Centerview's motion to dismiss Shiber's NYSHRL and NYCHRL claims is GRANTED. The parties are directed to appear for a status conference on May 13, 2022 at 11:00 AM. The parties are instructed to call (877) 411 9748 and enter access code 3029857# when prompted.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 24.

It is SO ORDERED.

Dated:   April 20, 2022
         New York, New York

_____
Edgardo Ramos, U.S.D.J.