UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN SHIBER,

                      Plaintiff,

– against –

CENTERVIEW PARTNERS LLC,

                      Defendant.

**OPINION & ORDER**

21-cv-3649 (ER)

RAMOS, D.J.:

       Kathryn Shiber, a former analyst of defendant investment bank Centerview Partners LLC ("Centerview"), brought this action on April 23, 2021, following her termination. Doc. 1. In short, Shiber argues that she was improperly terminated due to her disability. *See generally* Doc. 23.

       Before the Court is Shiber's motion to compel the deposition testimony of Robert A. Pruzan, Centerview's Chief Executive Officer. For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

### A. Factual Background

      The facts set forth in the complaint are discussed in detail in the Court's April 20, 2022 Opinion and Order. Doc. 30; *Shiber v. Centerview Partners LLC*, No. 21 Civ. 3649 (ER), 2022 WL 1173433 (S.D.N.Y. Apr. 20, 2022). The Court reproduces the relevant background here in light of Shiber's pending motion.

      In September 2019, Centerview—an investment bank and advisory firm with offices in New York City—offered Shiber a position in its three-year analyst program. Doc. 23 ¶¶ 3, 5, 9. Shiber started at Centerview on July 6, 2020, after completing several weeks of training and exams. *Id.* ¶¶ 7, 12. Because of the Covid-19 pandemic, Shiber

worked remotely from her home in New Jersey from the outset of her employment. *Id.* ¶ 16.

Shiber alleges that soon after she began working, it became clear to her that Centerview expected its employees at times to work 24 hours a day and across several days "without rest or stopping." *Id.* ¶ 21. Due to Shiber's Unspecified Anxiety Disorder and Unspecified Mood Disorder, she informed Centerview that she required eight to nine hours of sleep each night. *Id.* ¶¶ 26, 29. She was given an accommodation in order to do so. *Id.* ¶¶ 30–37.

On September 15, 2020, Shiber received a video call invitation from Centerview's Chief Operating Officer Jeanne Vicari; at the time, Shiber assumed Vicari scheduled the call to check in on Shiber's accommodation. *Id.* ¶¶ 44, 45. Instead, Shiber was terminated on the call. *Id.* ¶ 46. Shiber alleges that Vicari and Human Resources Manager Cheryl Robinson, who was also on the call, made clear she was being terminated because of her disability, telling her that she could not perform the "essential functions" of her job with her accommodation in place, that she had made a mistake in accepting the job, and that she should have known that the position would require many 120-hour weeks and that, in light of her disability, she would be unable to do the job. *Id.* ¶¶ 47–50.

Shiber was shocked and humiliated, but wanted to salvage her position: she alleges she explained to Vicari and Robinson that she was able to work—and had indeed worked—105 hours a week with her accommodation in place and was willing to work 120 hours a week in order to keep her job. *Id.* ¶ 52. Still, Vicari and Robinson made clear her termination was final and not negotiable. *Id.* ¶ 54. Though Centerview gave Shiber a termination letter, the letter did not provide any explanation for her termination. *Id.* ¶ 56.

2

### B. Procedural History

Shiber brought this action against Centerview based on diversity jurisdiction, asserting claims only under the NYCHRL. *See* Doc. 1. Centerview moved to dismiss the complaint on July 9, 2021. *See* Doc. 16. Shiber amended her complaint on July 23, 2021, adding claims under the NYSHRL and the NJLAD. *See* Doc. 18 ("First Amended Complaint" or "FAC"). Shiber again amended her complaint on August 23, 2021, this time adding claims under the ADA. *See* Doc. 23.

Centerview moved for partial dismissal of the SAC, arguing that this Court lacked subject matter jurisdiction over Shiber's NYSHRL and NYCHRL claims. *See* Doc. 24. The Court granted the motion on April 20, 2022. Doc. 30. Centerview subsequently answered the amended complaint on May 10, 2022, Doc. 36, and the parties proceeded to discovery.

On February 16, 2023, Shiber requested a pre-motion conference in anticipation of a motion to compel the deposition of Pruzan, Centerview's CEO. Doc. 48. Shiber's letter indicated that during a February 7, 2023, deposition, Robinson testified that Pruzan was one of the individuals involved in the decision to terminate Shiber. *Id.* at 1. Accordingly, "[g]iven his involvement in Plaintiff's termination, as well the fact that he is the Co-Founder and Partner at Centerview, plaintiff sought his deposition." *Id.* But Centerview refused to produce Pruzan. *Id.* Plaintiff thus sought to compel his deposition. *Id.* at 1–2.

In response, Centerview argued that Shiber's request was untimely and precluded by the apex doctrine, which provides a layer of protection for senior corporate executives subject to depositions.[1] Doc. 49 at 1–2. Along with its opposition, Centerview filed a declaration from Pruzan. Doc. 71-1. As relevant here, the declaration indicated that

---

[1] The record shows that Shiber identified Pruzan as an individual likely to have discoverable information in initial disclosures that were served on July 1, 2022. Doc. 71-3 at 5 (listing Pruzan as an individual likely to have information about Shiber's duties and responsibilities, performance, disability request and accommodation, and termination).

3

Pruzan is a co-founder, principal, and the current Chief Executive Officer of Centerview. *Id.* ¶ 1. Pruzan stated that he had no specific or general recollection of his interview with Shiber; he never spoke with Shiber while she was employed at Centerview, nor did he review her work product during that time; and, while he was informed about Vicari's decision to terminate Shiber, Vicari made the decision and did not need Pruzan's authority to do so. *Id.* ¶¶ 4–7. Pruzan further stated that he was not involved in the decision to provide Shiber with an accommodation. *Id.* ¶ 5. Finally, Pruzan indicated that he was not available to attend a deposition during the days requested by Shiber in February 2023 due to other previously-scheduled meetings and depositions. *Id.* ¶ 8.

The Court granted Shiber leave to file the instant motion on February 28, 2023. *See* Min. Entry dated February 28, 2023. Briefing was completed on April 7, 2023. Doc. 74.

## II.  DISCUSSION

### A.  Rule 26 and the Apex Doctrine

Under Rule 26, parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, Rule 26 limits discovery where requests are unreasonably cumulative or duplicative; the discovery can be obtained from a more convenient, less burdensome, or less expensive source; or the burden or expense of the proposed discovery outweighs the benefit. Fed. R. Civ. P. 26(b)(2)(C).

Though the burden of demonstrating relevance is on the party seeking discovery, *see, e.g.*, *Mandell v. Maxon Co.*, No. 06 Civ. 460 (RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007), if a party objects to discovery requests, that party bears the burden of showing why discovery should be denied, *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 31 F.R.D. 85, 87–88 (S.D.N.Y. 2016). Federal district courts have broad discretion in deciding motions to compel. *See Grand Cent. P'ship. Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999).

4

As relevant here, under the apex doctrine, executives are "safeguarded" from depositions unless they have "unique evidence, personal knowledge of the claims at issue, and other witnesses are incapable of providing testimony about the conduct alleged." *Harapeti v. CBS Television Stations Inc.*, No. 21 Misc. 680 (PAE), 2021 WL 3932424, at *2 (S.D.N.Y. Sept. 2, 2021) (citing *Iowa Pub. Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 17 Civ. 6221 (KPF), 2020 WL 6273396, at *1 (S.D.N.Y. Aug. 28, 2020)).

### B. Shiber's Motion

Shiber argues that she should be permitted to depose Pruzan due to his "personal involvement in the decision to terminate her employment." Doc. 65 at 10. She contends that the apex witness doctrine does not apply to Pruzan, *id.* at 10–11, and he has unique knowledge that cannot be obtained from other sources, *id.* at 11–15. Finally, Shiber asserts that her request is timely and there is no basis for Centerview's failure to produce Pruzan for deposition. *Id.* at 16.

In response, Centerview counters that Pruzan is indeed subject to protection pursuant to the apex doctrine, Doc. 70 at 5–7, and he otherwise lacks any unique knowledge relevant to this case, *id.* at 7–10. Finally, Centerview underscores its position that Shiber's request is untimely. *Id.* at 10–11.

The Court denies Shiber's motion. First, the record makes clear that the apex doctrine does indeed apply to Pruzan. Notwithstanding Shiber's assertions that Centerview is "a pure partnership" and therefore "does not have any individuals that serve as its 'apex,'" Doc. 65 at 10, the record shows that Pruzan is a co-founder and the current CEO of Centerview, Doc. 71-1 at 3. That Centerview fosters a collaborative and non-hierarchical culture does not mean that it is "inappropriate" to consider Pruzan "as the 'apex' of Centerview." Doc. 65 at 11. Nor does "Centerview's size preclude[] the finding of an 'apex' witness" here. *Id.* Indeed, as Centerview points out, it is an international investment firm "with over 400 employees in offices in New York, London,

Paris, Menlo Park, and San Francisco." Doc. 70 at 6. Critically, Shiber cited no case for the proposition that the apex doctrine does not apply to the leader of a relatively small investment banking firm.

Second, the record shows that Pruzan does not have "personal and *unique* knowledge of the relevant facts." *Tiger Cap., LLC v. PHL Variable Ins. Co.*, No. 12 Civ. 2939 (JCF), 2013 WL 4517267, at *3 (S.D.N.Y. Aug. 26, 2014) (emphasis added). Vicari, who was previously deposed, ultimately made the decision to terminate Shiber. Doc. 71-1 ¶ 7; Doc. 59-3 at 4:19. And Robinson, who was also previously deposed, was the other main point person in the discussions between Centerview and Shiber regarding her accommodation and subsequent termination. *See* Doc. 23 ¶¶ 46–53. Critically, Pruzan "never spoke with Ms. Shiber while she was employed by Centerview," does not recall "ever overseeing a project which Ms. Shiber was assigned to," and "was not involved in the decision" to implement an accommodation for her. Doc. 71-1 ¶¶ 4, 5. Accordingly, to the extent that Pruzan has knowledge about Shiber's termination, it is cumulative. Fed. R. Civ. P. 26(b)(2)(C). It is clear that the information that could be obtained from Pruzan "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Harapeti*, 2021 WL 3932424, at *2.

Because the Court denies Shiber's motion pursuant to Rule 26(b)(2)(C) and the apex doctrine, it will not consider Centerview's timeliness argument. Doc. 70 at 10–11. The Court, however, notes that Pruzan was identified as an individual likely to have relevant and discoverable information as of July 1, 2022. Doc. 71-3 at 5.

### III.   CONCLUSION

For all the reasons stated herein, Shiber's motion to compel the deposition of Pruzan is DENIED.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 55.

It is SO ORDERED.

Dated:	April 25, 2023
	New York, New York

_____
EDGARDO RAMOS, U.S.D.J.