UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KATHRYN SHIBER,**<br><br>      **Plaintiff,**<br><br>  v.<br><br>**CENTERVIEW PARTNERS LLC,**<br><br>      **Defendant.** | **Case No: 1:21-cv-03649-ER**<br>**ECF Case**<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**Table of Contents**

Page

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 1

I.      Shiber Cannot Establish Disability Discrimination ................................................... 1

        A.      Shiber Cannot Show A *Prima Facie* Case Of Disability Discrimination ................ 1

            1.      The Ability To Work Unpredictable Hours Is An Essential Function Of Centerview's Analyst Position ..................................................... 1

            2.      Shiber Cannot Perform Essential Function Of Her Position With Or Without Any Reasonable Accommodation ............................................. 4

                (a)      Centerview's Determination That Shiber Could Not Perform The Essential Function Of The Analyst Role Was Based On Undisputed, Objective Facts .............................................. 4

                (b)      Shiber's Requested Accommodation Imposed An Undue Burden ........................................................................................................ 5

        B.      Centerview Has Presented A Non-Pretextual Reason For Shiber's Termination ................................................................................................................ 7

II.      Centerview Engaged in an Interactive Process ........................................................ 9

CONCLUSION ........................................................................................................................ 10

## Table of Authorities

**Page**

### Cases

*Bogner v. Wackenhunt Corporation*,
  2008 WL 84590 (W.D.N.Y Jan. 7, 2008) ................................................................................ 1

*Clark v. Coa-Cola Beverages Northeast, Inc.*,
  2022 WL 92060 (2d Cir. 2022) ......................................................................................... 3, 6

*E.E.O.C. v. Greystar Mgmt. Servs. L.P.*,
  2013 WL 6731885 (D. Md. Dec. 18, 2013) ........................................................................... 8

*Flieger v. E. Suffolk Boces*,
  2016 WL 3527519 (E.D.N.Y. June 23, 2016), *aff'd*, 693 F. App'x 14 (2d Cir. 2017) .................................................................................................................................. 6

*Fox v. Amtrak*,
  2006 WL 395269 (N.D.N.Y. Feb. 16, 2006), *aff'd,* 241 F. App'x 771 (2d Cir. 2007) .................................................................................................................................. 8

*Grande v. Saint Clare's Health Sys.*,
  230 N.J. 1 (2017) ................................................................................................................... 4

*Hernandez v. Int'l Shoppes, LLC*,
  100 F. Supp. 3d 232 (E.D.N.Y. 2015) .................................................................................... 1

*Idlisan v. Mount Sinai Med. Ctr.*,
  2015 WL 136012 (S.D.N.Y. Jan. 9, 2015) ............................................................................. 8

*McMillan v. City of New York*,
  711 F.3d 120 (2d Cir. 2023) ................................................................................................... 7

*Melton v. Resorts Intern. Hotel, Inc.*,
  2014 WL 5341929 (D.N.J. Oct. 20, 2014) ............................................................................. 3

*Noecker v. Reading Hosp.*,
  2010 WL 363840 (E.D. Pa. Jan. 27, 2010) ............................................................................ 9

*Paluh v. HSBC Bank USA*,
  409 F. Supp. 2d 178 (W.D.N.Y. 2006) ................................................................................... 7

*Raspa v. Office of Sheriff of Cty. Of Cloucester*,
  924 A.2d 435 (N.J. 2007) ....................................................................................................... 6

*Shannon v. New York City Transit Auth.*,
  332 F.3d 95 (2d Cir. 2003) ..................................................................................................... 5

*Snowden v. Trustees of Columbia Univ.*,
    612 F. App'x 7 (2d Cir. 2015) ............................................................................................... 6

*Stone v. City of Mount Vernon*,
    118 F.3d 92 (2d Cir. 1997) ..................................................................................................... 2

*Tardie v. Rehabilitation Hosp. of Rhode Island*,
    168 F.3d 538 (1st Cir. 1999) ............................................................................................. 1, 2

*Young v. United Parcel Service, Inc.*,
    2011 WL 3510997 (D. Md. Aug. 9, 2011) ............................................................................ 9

# INTRODUCTION

Centerview Partners LLC ("Centerview") respectfully submits this reply in further support of its motion for summary judgment on Plaintiff Kathryn Shiber's ("Shiber") claims.

# ARGUMENT

## I. SHIBER CANNOT ESTABLISH DISABILITY DISCRIMINATION

### A. Shiber Cannot Show A *Prima Facie* Case Of Disability Discrimination

As set forth in Centerview's opening brief ("Br." at 9–16), because Shiber cannot show that she was qualified to perform an essential function of Centerview's investment banking analyst position, with or without reasonable accommodation, she cannot make the *prima facie* showing of discrimination to prove her New Jersey Law Against Discrimination ("NJLAD") or Americans with Disabilities Act ("ADA") claims.

#### 1. The Ability To Work Unpredictable Hours Is An Essential Function Of Centerview's Analyst Position

The undisputed evidence shows that Centerview properly determined that the ability to work very late and/or unpredictable hours is an essential function of the Centerview analyst role. Br. at 10–13; *see, e.g.*, SOF ¶¶ 3–7, 20. Courts "give considerable deference to an employer's determination as to what functions are essential" to a position. *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 261 (E.D.N.Y. 2015).

Shiber's opposition ("Opp.") offers no evidence contradicting this essential function—nor does Shiber address Centerview's cited cases demonstrating that the ability to work unpredictable, indeterminate hours can be an essential function. *See* Br. at 12–13 (citing *Bogner v. Wackenhunt Corporation*, 2008 WL 84590, at *6 (W.D.N.Y Jan. 7, 2008) (plaintiff could not perform "essential function" of role that required every employee "to be called at any time […] [and] to be able to respond to an emergency or to fill required staffing"); *Tardie v. Rehabilitation Hosp. of Rhode*

*Island*, 168 F.3d 538, 544 (1st Cir. 1999) (working more than 40 hours per week was an essential function of director of human resources)).

Rather than disputing that the ability to work long and unpredictable hours is an essential function, Shiber creates a straw man by contorting Centerview's position to be that "the ability for Analysts to stay awake for days at a time" or "work without sleep for days on end" is an essential function. Opp. at 9, 10. That is not Centerview's position. Thus, testimony to the effect that Centerview analysts do in fact sleep and that an 80-hour week is "a lot of hours" (Opp. at 8) is irrelevant to whether it is an essential function of the analyst role to be able to work unpredictable hours as the job demands. *See* Br. at 13–14. Similarly, that analysts might "not work on live deals consistently" (Opp. at 8) does not contradict the clear evidence that analysts who are assigned to live deals are expected to work whatever hours are necessary to timely complete tasks and that being assigned to live deals is a part of the analyst experience. *See* Br. at 15; SOF ¶¶ 20, 53, 60. Finally, Shiber's citations to reviews on "the Vault" that recommend working at Centerview or state that Centerview encourages work-life balance (Opp. at 8–9) do nothing to negate the undisputed evidence that analysts are expected to be available at unpredictable times consistent with the demands of the role. *See* Br. at 10–14; SOF ¶¶ 3–5, 8. Indeed, even Shiber admits that she "had expected to work long and unpredictable hours" as an analyst. Shiber Decl. ¶ 15.

Shiber's argument that the ability to work unpredictable hours is a "marginal" function of the analyst role (Opp. at 9) misses the mark. In *Stone v. City of Mount Vernon*, which Shiber cites, defendant municipality claimed that "fire suppression" was an essential function of a firefighter in the Department's specialized bureaus. 118 F.3d 92 (2d Cir. 1997). The Second Circuit disagreed, noting there was ***no evidence in the record that any firefighter in those bureaus was ever called upon to fight fires***. *Id.* at 99-100. Here, by contrast, it is undisputed that: (1) Shiber herself was

2

assigned to a live deal that required the flexibility to work after midnight (Counter 56.1 Statement ¶¶ 13, 18; Shiber Decl. ¶¶ 7, 9, 11, 13; SOF ¶¶ 16–20); (2) an associate on her deal team handled approximately *fifteen* such deals (Opp. at 8); (3) live deals can be active for several months (Ex. 9 at 40:8–9); and (4) Centerview's analysts can be staffed on "multiple live transactions at the same time." SOF ¶¶ 3–5, Ex. 10 at 28:21–29:10.

Shiber also cites to *Melton v. Resorts Intern. Hotel, Inc.* in support of her "marginal" function theory. 2014 WL 5341929 (D.N.J. Oct. 20, 2014). There, the court disagreed that the ability to work the graveyard shift as a doorman was undisputedly an "essential function" of the position, citing to employee testimony that they in fact worked regularly-scheduled shifts. 2014 WL 5341929, at *6. Here, by contrast, there is no evidence that any analyst works set hours; rather, the undisputed evidence is that analysts' hours are highly unpredictable. *See* SOF ¶¶ 4, 20; Ex. 10 at 29:23–30:22 ("the hours per week for a Wall street analyst likely vary between 60 to 120 hours a week."); Ex. 1 ("One part of this job (and the worst part of this job) is many times you can't 'get ahead' of things or work through things early because there will always be more for you to do. Late nights are just part of the job, especially on a live deal like this.").

Finally, contrary to Shiber's suggestion (Opp. at 7), the absence of any written job description mentioning unpredictable hours cannot overcome the mountain of evidence that the ability to work unpredictable hours is an essential function of the analyst role. *See Clark v. Coca-Cola Beverages Northeast, Inc.*, 2022 WL 92060, at *3 (2d Cir. 2022) (finding employer's written job description is only one of many factors considered when evaluating whether a job function is essential and "no one . . . factor will be dispositive").

2. **Shiber Cannot Perform Essential Function Of Her Position With Or Without Any Reasonable Accommodation**

Shiber cannot prove a *prima facie* case of discrimination because she cannot show that she could perform an essential function of the analyst role (the ability to work indeterminate hours on a daily basis) with or without a reasonable accommodation.[1] *See* Br. at 13–16.

(a) Centerview's Determination That Shiber Could Not Perform The Essential Function Of The Analyst Role Was Based On Undisputed, Objective Facts

First, Shiber undoubtedly could not perform one of the above-discussed essential functions of the analyst role without any accommodation. Shiber claims that "Centerview failed to 'produce evidence that its decision was based on 'an objective standard supported by factual evidence and not on general assumptions about [Shiber's] disability.'" Opp. at 14 (quoting *Grande v. Saint Clare's Health Sys.*, 230 N.J. 1, 27 (2017)). Yet, unlike the defendant in *Capobianco v. City of New York* that based its decision on an unsubstantiated and "mistaken" perception, 422 F.3d 47, 61 (2d Cir. 2005), Centerview indeed relied on "factual evidence"—rather than "general assumptions about [Shiber's] disability"—in determining that Shiber could not perform an essential function of the job. *See, e.g.*, SOF ¶ 47. As *Grande* makes clear: "Recognizing the importance of safety in the workplace, the LAD regulations and this Court have made clear that an employer may terminate a disabled employee where continued employment 'would be hazardous to the safety or health of [the employee.]'" 230 N.J. at 19–20.

Of course, "[w]hen asserting [that] safety defense, the employer must establish with a reasonable degree of certainty that it reasonably arrived at the opinion that the employee's handicap presented a materially enhanced risk of substantial harm in the workplace." *Id.*

---

[1] For the same reasons described herein and in Centerview's opening brief (at 13–14, 19), Shiber cannot prove her claims for failure to accommodate under the ADA and NJLAD.

(quotations omitted). Here, Centerview did just that. Specifically, Centerview relied on a note from Shiber's primary care provider that stated, in no uncertain terms: "[b]ecause of [Shiber's] underlying medical diagnosis, she requires consistent sleep 8-9 hours" and "[i]f she is not able to maintain a regular sleep schedule she is a[t] *a significant risk for exacerbation of her illness*." Ex. 5 (emphasis added); SOF ¶ 47; *see also* Ex. 21 at 43:4–10, 45:1–14 (enumerating the serious consequences of lack of sleep to Shiber's health). Centerview also relied on Shiber's own statements that she "had a medical disability which, for healthy management, required eight to nine hours of sleep per night and that ideally [sic] would have a somewhat consistent sleep schedule." SOF ¶ 27; Ex. 20; Ex. 19 at 244:4–19; Shiber Decl. ¶ 19.

(b)     Shiber's Requested Accommodation Imposed An Undue Burden

Moreover, there was no reasonable accommodation available to Shiber. *See* Br. at 14–16; SOF ¶¶ 60–61. Shiber contends that "permitting Shiber to sleep was not an undue burden for Centerview." Opp. at 10. Of course, here again Shiber misconstrues the pertinent essential function of the analyst role—the ability to work unpredictable and late hours—not the need to forego sleep for days on end. Yet nothing Shiber cites contradicts the evidence Centerview offers demonstrating why creating a role that would permit Shiber to work set hours was an undue burden. Br. at 14–16; SOF ¶ 53–58. Instead, Shiber points to the fact that Centerview's Director of Human Resources told Shiber she had "done the right thing" by speaking to Human Resources, that Centerview "understood" her concern and that the guardrails would not be detrimental. Opp. at 10. But that is all irrelevant to whether implementing Shiber's requested accommodation of a consistent sleep schedule—paired with her insistence that Centerview not disclose to her team members why she needed consistent sleep—imposed an undue burden on Centerview.

"A reasonable accommodation can never involve the elimination of an essential function of a job." Br. at 15; *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003).

5

Shiber offers no evidence disputing that: (1) creating set hours for Shiber would mean that her experience "would not be the same experience" or that "it's not the same job anymore" and that (2) having set hours made it "difficult for [Shiber] to own things to completion" such that her deal team "[kept] building things out without her." Br. at 15; SOF ¶¶ 53, 56, 60.

Nor does Shiber offer any evidence disputing that Shiber's required accommodation resulted in a light-duty position—the creation of which the law does not impose on employers. *See* Br. at 15–16 (citing *Raspa v. Office of Sheriff of Cty. Of Cloucester*, 924 A.2d 435, 445 (N.J. 2007) and *Clark*, 2022 WL 92060, at *2-3); SOF ¶ 53–58. Instead, Shiber simply claims that she never requested a "light duty" position and that she was nevertheless working many hours. Opp. at 12. This argument misses the mark. The inquiry is not whether Shiber specifically requested a light duty position or the number of hours she was working, but rather the natural effect of her needed accommodation. *See, e.g., Clark*, 2022 WL 92060, at *3 (explaining that accommodations that require "reallocating [] tasks from [plaintiff] to other team members" are indicative of an employer having to create an "indefinite, light duty position"); *see also Snowden v. Trustees of Columbia Univ.*, 612 F. App'x 7, 10 (2d Cir. 2015) (affirming that to the extent plaintiff employee sought "help" from other employees in executing these actions and performing her job functions, "such an accommodation constitutes an elimination of an essential function of [her] job and ... is unreasonable under the law") *and Flieger v. E. Suffolk Boces,* 2016 WL 3527519, at *15 (E.D.N.Y. June 23, 2016), *aff'd*, 693 F. App'x 14 (2d Cir. 2017) (plaintiff's proposed accommodation transferring her to a "desk position" would have resulted in "the elimination of the lion's share of the teaching assistant position' essential functions" and was therefore unreasonable).

Shiber ultimately fails to distinguish the plethora of cases cited by Centerview to support the fact that Shiber's requested accommodation of consistent hours was an undue burden. For

6

example, Shiber attempts to distinguish Centerview's cited cases by claiming that many of those cases "required physical exertion, unlike the Analyst position." Opp. at 12-13. Yet, contrary to Shiber's argument that "there was no physical component to being an Analyst," the ability to be awake and working during early morning hours is, in fact, a physical requirement. SOF ¶¶ 3, 6.

Shiber also summarily states that "Centerview also cites cases where the plaintiff asked the employer to create an entirely new position, which is not the case here." Opp. at 13. But that is precisely the case here. The evidence demonstrates that the analyst position demands long and unpredictable hours and that there was no analyst position available with set working hours. SOF ¶¶ 3-7, 20; Ex. 22 at 90:10–18.[2]

### B. Centerview Has Presented A Non-Pretextual Reason For Shiber's Termination

Even assuming Shiber could prove a *prima facie* case of discrimination, which she cannot, Centerview has offered a legitimate, non-discriminatory reason for Shiber's termination: she could not fulfill the essential functions of the first-year analyst position. *See* Br. at 17; *supra* at 4–7. Shiber relies on "mere conjecture or surmise," which are insufficient to defeat a motion for summary judgment, in arguing that Centerview's non-discriminatory reason for terminating her was pretextual. *Paluh v. HSBC Bank USA*, 409 F. Supp. 2d 178, 192 (W.D.N.Y. 2006).

For example, Shiber cites to various statements made by Vicari during Shiber's termination meeting as evidence of pretext. *See* Opp. at 15-16. But none of those statements reflect discriminatory animus. Shiber's opinion that they reflect "textbook disability discrimination"

---

[2] Shiber's reliance on *McMillan v. City of New York*, 711 F.3d 120 (2d Cir. 2023), is misplaced. *See* Opp at 11. There, relying on the employer's relaxed policies regarding punctuality and plaintiff's history of working the required hours without issue, the Court found that there was a genuine dispute of fact as to whether plaintiff's suggested accommodation for a late arrival would impose an undue burden. Here, there is no evidence that Centerview has established any set working hours for any analyst.

(Opp. at 15) do not support a finding of disability discrimination. *See, e.g., Idlisan v. Mount Sinai Med. Ctr.*, 2015 WL 136012, at *3 (S.D.N.Y. Jan. 9, 2015) ("Saying it is so does not establish discrimination."); *Fox v. Amtrak*, 2006 WL 395269, at *4 (N.D.N.Y. Feb. 16, 2006), *aff'd,* 241 F. App'x 771 (2d Cir. 2007) (plaintiff's mere personal belief that employer held discriminatory intent was insufficient to survive summary judgment motion). Similarly, Shiber's statements that Centerview and Shiber's colleagues "exaggerate[]" inefficiencies and complaints (Opp. at 20) are likewise pure *ipse dixit* that are not supported by any evidence and thus cannot support a finding of discrimination. *See, e.g.*, *Idlisan*, 2015 WL 136012, at *3.

Similarly unsupported is Shiber's argument that the timing between Vicari learning about Shiber's history of concussions and Vicari's decision to terminate Shiber evidences discriminatory animus. Opp. at 16–17. Shiber summarily claims, without citing any evidence or caselaw, that "[a] jury could find that once Vicari learned Shiber had a history of concussions, she perceived her as disabled, broken and not fit to work at Centerview." Opp. at 17. But nothing in the record supports that inference. To the contrary, Vicari testified that her learning about Shiber's concussions had no role in her decision and that she does not know whether she learned about Shiber's concussions before making the decision to terminate her. Ex. B at 84:3–11. Further, Vicari knew that Shiber had a disability weeks before her termination. *See* Br. at 5; SOF ¶ 33.

Nor is Centerview's refusal to accept Shiber's offer to "rescind" her accommodation request proof of discrimination. Opp at 21. Centerview was well within its rights to rely on the accuracy of Nurse Verdi's letter and Shiber's own statements weeks earlier that failure to receive consistent sleep would exacerbate her medical conditions. *See, e.g.*, *E.E.O.C. v. Greystar Mgmt. Servs. L.P.*, 2013 WL 6731885, at *21 (D. Md. Dec. 18, 2013) (under the ADA, "deferring to the doctor's notes was legitimate and lawful, even in light of [plaintiff's] attempt to waive her medical

restriction"); *Noecker v. Reading Hosp.*, 2010 WL 363840, at *5 n.6 (E.D. Pa. Jan. 27, 2010) (employer "should not be faulted for refusing to allow [the plaintiff] to perform duties which may have required her to go against her doctor's restrictions"); *Young v. United Parcel Serv., Inc.,* 2011 WL 3510997, at *3 (D. Md. Aug. 9, 2011) ("There is no case supporting the notion that an employer must question a medical provider's judgment and independently divine whether an employee is truly able to work. Nor was [the employer] required to let [employee] work merely because she insisted she was able to.").

The record reflects that Vicari made the decision to terminate Shiber only after carefully monitoring the situation and considering all of the information provided to her, directly and indirectly, by Robinson, Kim, the Project Dragon deal team, Shiber, and Shiber's medical provider. *See* Br. at 6–8; SOF ¶¶ 33–35.[3]

## II.  CENTERVIEW ENGAGED IN AN INTERACTIVE PROCESS

Shiber's claims for failure to engage in an interactive process fail because (1) she cannot establish a *prima facie* case of discrimination (*see* Br. at 9–14, *supra* at 1–7); (2) Centerview made a good faith effort to assist her in seeking her accommodations (Br. at 20–21; SOF ¶¶ 26, 33–45, 48–52, 59); and (3) there was no reasonable accommodation available (Br. at 10–14). As set forth in Centerview's opening brief, Centerview indisputably engaged in a good faith, interactive process with Shiber immediately after learning of her requested accommodation. *See* Br. at 20–21; SOF ¶¶ 26, 33–45, 48–52, 59. Shiber's opposition does not show otherwise.

Shiber claims that "Vicari acknowledged that there was no interactive process regarding Shiber's **termination.**" Opp. at 23 (emphasis added). But, of course, the law does not require

---

[3] As discussed *infra* at 9–10, Centerview in fact engaged in an interactive process with Shiber; as such, that cannot be a factor supporting discriminatory animus. *See* Opp. at 18.

employers to engage in an interactive dialogue with employees about their termination. And, as Vicari testified: "I believe there was an interactive process with Kate ***with regard to her accommodation request***." Ex. B at 91:3–7.

Shiber also now contends that "there was a wide range of things we could have discussed between the guardrails approach and terminating me." Shiber Decl. ¶ 71. Yet, the "examples" Shiber describes: (1) joining deals that "did not require employees to stay awake all night"; (2) "mak[ing] up the lost sleep" on a subsequent night (*id.*); (3) disregarding Shiber's documented medical needs altogether (Opp. at 24); or (4) or giving her temporary leave, were consistent with her accommodation request—verified by a medical provider—that she maintain a work schedule that allows for consistent, eight-to-nine hours of sleep each night. And, as discussed *supra* at 8–9, Centerview was within its right to rely on those representations in considering whether there was any reasonable accommodation.

## CONCLUSION

For the foregoing reasons, Centerview respectfully requests that the Court enter summary judgment in Centerview's favor on all claims.

Dated: December 1, 2023  QUINN EMANUEL URQUHART &
      New York, New York  SULLIVAN, LLP

By: */s/ Jennifer Barrett*
Jennifer Barrett
Hope D. Skibitsky
Janice Yoon
Maheema Haque
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel. (212) 849-7000
Fax (212) 849-7100
jenniferbarrett@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
janiceyoon@quinnemanuel.com
maheemahaque@quinnemanuel.com

*Attorneys for Centerview Partners LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st of December, 2023, I electronically filed the foregoing Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

SCHWARTZ PERRY & HELLER LLP
David S. Perry
Brian Adam Heller

CLAYMAN & ROSENBERG LLP
James Francis Valentino

*/s/ Hope D. Skibitsky*
Hope D. Skibitsky