UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHRYN SHIBER,

                Plaintiff,

– against –

CENTERVIEW PARTNERS LLC,

                Defendant.

**OPINION & ORDER**

21 Civ. 3649 (ER)

R‌AMOS, D.J.:

      Kathryn Shiber brought this action against her former employer, Centerview Partners LLC, asserting claims of disability discrimination under the Americans with Disabilities Act (ADA), the New York State Human Rights Law (NYSHRL), the New York City Human Rights Law (NYCHRL), and the New Jersey Law Against Discrimination (NJLAD). The Court previously granted Centerview's motion to dismiss the New York claims for lack of subject matter jurisdiction because Shiber failed to allege an "impact" in New York. *Shiber v. Centerview Partners LLC*, No. 21 Civ. 3649 (ER), 2022 WL 1173433, at *3–6 (S.D.N.Y. Apr. 20, 2022). Shiber has moved for leave to amend her complaint to reassert the New York claims, citing new factual and legal developments since the Court's decision. Doc. 103. The motion is GRANTED.

**I.    BACKGROUND**

      The underlying facts are discussed in more detail in the Court's previous opinion. *Shiber*, 2022 WL 1173433, at *1–2. In short, Centerview is an investment bank and advisory firm with offices in New York City. *Id.* at *1. In September 2019, Centerview offered Shiber a position in its three-year analyst program. *Id.* After several weeks of training, Shiber began working at Centerview in July 2020. *Id.* Due to the COVID-19 pandemic, however, Shiber worked remotely from her home in New Jersey. *Id.* Shiber understood her remote work to be temporary and expected to work in person from

Centerview's New York City offices upon their reopening. *Id.* Throughout her time at Centerview, Shiber worked exclusively from New Jersey and never entered the company's New York City offices. *Id.* at *2. Shiber was terminated in September 2020. *Id.* She asserts that she was fired because of her disability. *Id.*[1]

Shiber brought claims against Centerview for violations of the ADA, the NYSHRL, the NYCHRL, and the NJLAD. *Id.* Centerview moved to dismiss the New York claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *Id.*

The Court granted the motion. *Id.* at *6. That decision turned on the "impact requirement" of the NYSHRL and the NYCHRL. To invoke the protections of the NYCHRL, the Court explained, a nonresident plaintiff such as Shiber "must allege that the discriminatory conduct had an impact in New York City." *Id.* at *3 (citing *Hoffman v. Parade Publ'ns*, 933 N.E.2d 744, 746–47 (N.Y. 2010)). "Courts look to where the impact occurs, not the place of its origination, to determine the location of the discriminatory acts, and the impact needs to be felt by the plaintiff in New York City." *Id.* The same is true for claims under the NYSHRL: a nonresident plaintiff "must allege that she felt an impact in New York State." *Id.* (citing *Hoffman*, 933 N.E.2d at 747).

The Court held that Shiber failed to satisfy the impact requirement because she worked from her home in New Jersey at all relevant times. *Id.* at *4. Shiber relied on two failure-to-hire cases, but the Court found those decisions inapposite because Shiber "has not alleged—and cannot allege—a discriminatory failure-to-hire claim." *Id.* Instead, Shiber asserted that she might have been able to work in Centerview's New York City offices at some point in the future, which was not sufficient. *Id.* So the Court dismissed Shiber's NYSHRL and NYCHRL claims. *Id.* at *6.

---

[1] Shiber alleges that she "suffers from a medical, mental or psychological impairment in that she has been diagnosed with 'Unspecified Anxiety Disorder' and 'Unspecified Mood Disorder,'" and she "requires consistent sleep to avoid exacerbating the effects of her diagnosis." Doc. 23 ¶ 26; Doc. 104-1 ¶ 27.

Almost two years later, the New York Court of Appeals decided *Syeed v. Bloomberg L.P.*, --- N.E.3d ---, No. 20, 2024 WL 1097279 (N.Y. Mar. 14, 2024). In that case, the plaintiff alleged that she was subjected to sex- and race-based discrimination while working as a reporter in the defendant's Washington, D.C., bureau. *Id.* at *1. She applied for multiple positions in the defendant's New York bureau but was unsuccessful. *Id.* The plaintiff asserted that she was constructively discharged and left her employment with the defendant. *Id.* She then filed a lawsuit in New York state court that included failure-to-promote claims under the NYSHRL and NYCHRL. *Id.* The case was removed to this District, and the court granted the defendant's motion to dismiss all NYSHRL and NYCHRL claims. *Id.* Relying on *Hoffman*, the district court held that the plaintiff could not satisfy the impact requirement because she did not live or work in New York, and her claims rested solely on allegations that she was denied positions based in New York. *Id.*; *see Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 329–34 (S.D.N.Y. 2021).

On appeal, the Second Circuit noted that the case presented "an unresolved question of New York law." *Syeed v. Bloomberg L.P.*, 58 F.4th 64, 66 (2d Cir. 2023). Although *Hoffman* was the "closest case," that decision did not address "whether, in discriminatory failure-to-hire or failure-to-promote cases, a nonresident plaintiff" could satisfy the impact requirement by alleging that she would have worked in New York but for an employer's unlawful conduct. *Id.* at 68. The *Hoffman* court "was only asked to address a claim related to a discriminatory termination," so the Second Circuit did "not think it is our place to read *Hoffman*'s references to 'those who work in' New York City or State to necessarily preclude those who *would* work in New York City or State absent discrimination." *Id.* at 69. The court therefore certified the following question to the New York Court of Appeals:

> Whether a nonresident plaintiff not yet employed in New York City or State satisfies the impact requirement of the New York City Human Rights Law or the New York State Human Rights Law if the plaintiff pleads and later proves that an employer deprived the

3

>  plaintiff of a New York City- or State-based job opportunity on discriminatory grounds.

*Id.* at 71.

The Court of Appeals accepted the certified question and answered in the affirmative. *Syeed*, 2024 WL 1097279, at *2. That court framed the issue in the following terms: "The Second Circuit has asked us to explain how *Hoffman*'s impact test governs a situation where, as here, a nonresident plaintiff alleges a failure to promote or hire. We conclude that the City and State Human Rights Laws protect nonresidents who proactively sought an actual New York City- or State-based job opportunity." *Id.* at *3 (footnote omitted). "For purposes of the impact test," the court explained, "a failure to hire or promote case is distinct from a discriminatory termination case, like *Hoffman*." *Id.* A prospective employee who is discriminatorily denied a job in New York "loses the chance to work, and perhaps live, within [that] geographic area[]." *Id.* That employee "personally feels the impact of a discriminatory refusal to promote or hire in New York City or State, because that is where the person wished to work (and perhaps relocate) and where they were denied the chance to do so." *Id.* As a result, such an employee is protected by the NYSHRL and the NYCHRL. *Id.*

Almost one week after the Court of Appeals's decision, Shiber sought leave to amend her complaint in this case based on the change in law. Doc. 100. The proposed third amended complaint adds an allegation that "Centerview analysts who started their employment with Shiber in July 2020 are now working out of its New York City office, and if Shiber had continued to work at Centerview she would have been expected to come into the New York City office." Doc. 104-1 ¶ 17. At a premotion conference on April 3, 2024, the Court granted Shiber permission to move for leave to amend. The motion was fully briefed as of May 21, 2024.[2]

---

[2] There is also a pending motion for summary judgment filed by Centerview. Doc. 81. The Court addresses this motion for leave to amend first because its outcome will affect the status of the summary judgment motion.

4

## II. LEGAL STANDARD

Rule 15 provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 98 (2d Cir. 2019) (citation omitted). "An amended pleading is futile when, as a matter of law, the proposed complaint would not survive a Rule 12 motion, such as a Rule 12(b)(1) motion for lack of subject matter jurisdiction." *Anderson v. Tether Holdings Ltd.*, No. 21 Civ. 10613 (LTS), 2023 WL 6554382, at *1 (S.D.N.Y. Sept. 11, 2023) (citation omitted).

## III. DISCUSSION

Centerview challenges the proposed third amended complaint primarily on the basis of futility. According to Centerview, the Court continues to lack subject matter jurisdiction over Shiber's proposed NYSHRL and NYCHRL claims. Doc. 106 at 3–6. The question before the Court is whether those claims are now viable—specifically, whether the impact requirement is satisfied—in light of the Court of Appeals's decision in *Syeed* and the new allegations in the proposed third amended complaint.

The Court concludes that they are. Both the factual and legal ground has shifted since the Court dismissed the NYSHRL and NYCHRL claims in April 2022. Factually, Shiber now alleges that but for her termination, she would have been expected to work in person at Centerview's New York City offices. Doc. 104-1 ¶ 17. A Centerview partner testified that analysts from Shiber's class are now working in those offices and that Shiber would be expected to do the same if she still worked at Centerview. Doc. 104-2 at 46:14–47:17. Shiber previously alleged only that Centerview "had plans to re-open its offices—at some point." *Shiber*, 2022 WL 1173433, at *4; *see also id.* ("[I]f 'impact can be shown by a mere hope to work in New York down the line, the flood gates would be open.'" (quoting *Kraiem v. JonesTrading Inst. Servs. LLC*, 492 F. Supp. 3d 184, 199 (S.D.N.Y. 2020))). But she "point[ed] to no facts showing—with any specificity—that

5

she one day would have been able to work in Centerview's New York City offices." *Id.* Shiber has now done just that.

The legal landscape has changed as well since the Court's decision. In *Syeed*, the New York Court of Appeals made clear that the NYSHRL and NYCHRL "protect nonresidents who proactively sought an actual New York City- or State-based job opportunity." 2024 WL 1097279, at *3. The court explained that "a nonresident who has been discriminatorily denied a job in New York City or State loses the chance to work, and perhaps live, within those geographic areas." *Id.* Here too, Shiber lost the chance to work in New York when she was allegedly fired for discriminatory reasons.

Centerview relies heavily on language in *Syeed* suggesting that there is a distinction between discriminatory failure-to-hire or failure-to-promote cases and discriminatory termination cases. Doc. 106 at 3. To be sure, the *Syeed* court said that "[f]or purposes of the impact test, a failure to hire or promote case is distinct from a discriminatory termination case, like *Hoffman*." 2024 WL 1097279, at *3. But the facts of this case are not similar to *Hoffman*—as the discussion in *Syeed* illustrates. The New York high court noted that "the plaintiff in *Hoffman* was not a New York inhabitant and did not seek to become one." *Id.* Instead, "the plaintiff was a Georgia resident who worked in Georgia and wished to retain his Georgia employment." *Id.* The court contrasted that situation with "a nonresident who engaged in affirmative conduct to obtain an actual job opportunity based in New York City or State." *Id.* Shiber is far more similar to such a nonresident than to the plaintiff in *Hoffman*: she actively pursued New York employment, Doc. 104-1 ¶¶ 9–12, and would have worked in New York but for COVID-19 in-person work restrictions and her subsequent termination, *id.* ¶¶ 13–17.

To illustrate the point, imagine that one of Shiber's colleagues brought a discriminatory failure-to-promote claim against Centerview in April 2021 (the same time Shiber filed this action). Suppose that colleague had also worked remotely in New Jersey from the time she was hired until the time she filed her claim. And in her complaint, the

6

colleague alleged that she later would have worked in Centerview's New York offices if she had received the promotion. Like the plaintiff in *Syeed*, this colleague's NYSHRL and NYCHRL claims presumably would satisfy the impact requirement because she "proactively sought an actual New York City- or State-based job opportunity." *Syeed*, 2024 WL 1097279, at *3.

It is hard to see why that hypothetical colleague—and the plaintiff in *Syeed*—should be allowed to proceed while Shiber, who was likewise denied the opportunity to work in New York, is not. Nothing in the NYSHRL or NYCHRL requires that result, which would contravene the New York high court's refusal "to immunize employers from liability under the Human Rights Laws for discriminatory conduct pertaining to New York City- or State-based jobs even when the discriminatory conduct has an impact in New York." *Id.* at *4 (internal quotation marks and citation omitted). The *Syeed* court declined to adopt "such a narrow construction of the statutes," finding no reason to conclude "that the legislature and city council intended to give New York employers a license to discriminate against nonresident prospective employees." *Id.* Similarly, there is no reason to conclude that New York employers should be permitted to discriminate against an employee, such as Shiber, who was terminated before she had the chance to work in New York and who would have worked in New York but for the termination. The Court therefore holds that the proposed amended complaint would satisfy the impact requirement, so amendment would not be futile.

In a footnote, Centerview argues that the filing of the proposed complaint "would prejudice Centerview by causing unneeded delay to the resolution of this matter, as it will require Centerview to re-file its motion for summary judgment." Doc. 106 at 6 n.3. The Court concludes that allowing Shiber to amend the complaint would not unduly prejudice Centerview. For one, the delayed amendment in this case is adequately explained by the factual and legal developments discussed above. *Cf. Bromfield v. Bronx Lebanon Special Care Ctr., Inc.*, No. 16 Civ. 10047 (ALC), 2020 WL 495460, at *2 (S.D.N.Y. Jan. 30,

2020) (granting leave to amend and noting that plaintiff provided "a satisfactory explanation for her delay").  Shiber has also stated that she "does not seek any additional discovery and believes that the robust record already established under federal and New Jersey Law is equally applicable to claims under New York Law."  Doc. 105 at 9; *see Sobel v. Community Access, Inc.*, No. 03 Civ. 5642 (LAK) (MHD), 2007 WL 4049344, at *2 (S.D.N.Y. Nov. 13, 2007) (granting leave to amend and rejecting defendants' prejudice argument because the standards for demonstrating violations of the relevant statutes were the same and defendants could supplement their summary judgment motion to address the parallel claim).  *See generally Gorbea v. Verizon N.Y., Inc.*, No. 18 Civ. 420 (NGG) (ST), 2020 WL 5077169, at *5 (E.D.N.Y. Aug. 27, 2020) (noting that NYSHRL disability discrimination claims "are governed by the same legal standards as federal ADA claims" and that while NYCHRL claims are analyzed separately, a plaintiff "must still show that the conduct complained of is caused by a discriminatory motive" (citation omitted)).  To the extent additional discovery is required, there is no indication that it will be so extensive as to unduly prejudice Centerview, and no trial date has been set.  *See Olaf Sööt Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 399–400 (S.D.N.Y. 2017) ("While amending the Complaint at this point in the litigation's lifecycle is later than preferable, no trial date has been set, and the interrelation of the old claim and a new related, narrow claim to this patent case indicates that additional discovery, while warranted, will not prolong the proceedings significantly."); *Solman v. Corl*, No. 15 Civ. 1610 (JCH), 2017 WL 3527693, at *2 (D. Conn. Aug. 16, 2017) (granting leave to amend answer and rejecting plaintiff's prejudice argument where the court was not persuaded that further discovery would be necessary and, to the extent additional discovery was needed, plaintiff could request it "without substantially affecting the case schedule").

## IV. CONCLUSION

For the foregoing reasons, Shiber's motion for leave to amend, Doc. 103, is GRANTED.  Shiber is directed to file the third amended complaint by July 9, 2024.

Centerview's motion for summary judgment, Doc. 81, is DENIED as moot, but Centerview may renew the motion after the third amended complaint is filed.  *See, e.g., Laverty v. Dobco, Inc.*, No. 21 Civ. 2592 (VR), 2023 WL 4897218, at *2 (S.D.N.Y. Aug. 1, 2023) (granting plaintiff leave to amend and denying as moot pending cross-motions for summary judgment); *see also Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 508 n.6 (S.D.N.Y. 2018) (noting that courts "routinely deny summary judgment motions as moot, or even vacate prior grants of summary judgment, when the motion was based on a complaint that has been rendered legally inoperative" (citation omitted)).  Within one week of the filing of Centerview's answer to the third amended complaint, the parties are directed to submit a joint letter proposing a revised briefing schedule for Centerview's summary judgment motion and advising the Court as to their positions on whether any additional discovery is necessary.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 81, 103.

It is SO ORDERED.

Dated: July 2, 2024
New York, New York

EDGARDO RAMOS, U.S.D.J.