UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KATHRYN SHIBER,**<br><br>     **Plaintiff,**<br><br>  v.<br><br>**CENTERVIEW PARTNERS LLC,**<br><br>     **Defendant.** | **Case No: 1:21-cv-03649-ER**<br>**ECF Case**<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**Table of Contents**

**Page**

ARGUMENT ............................................................................................................................1

I.      Shiber Cannot Establish Disability Discrimination ............................................................1

          A.      Shiber Cannot Show A *Prima Facie* Case Of Disability Discrimination ................1

                   1.      The Ability To Work Unpredictable Hours Is An Essential Function Of Centerview's Analyst Position ................................................1

                   2.      Shiber Cannot Perform The Essential Function Of Her Position With Or Without Any Reasonable Accommodation .................................3

          B.      Centerview Has Presented A Legitimate, Non-Discriminatory, and Non-Pretextual Reason For Shiber's Termination ............................................................6

II.     Centerview Engaged In An Interactive Process ..................................................................8

III.    Centerview Did Not Retaliate ..............................................................................................9

IV.    Centerview Is Entitled To Summary Judgment Under New York Law .............................9

CONCLUSION ..........................................................................................................................10

## Table of Authorities

Page

### Cases

*Adams v. Montefiore Med. Ctr.*,
    2017 WL 4417695 (S.D.N.Y. Oct. 3, 2017) ..................................................................9

*Capobianco v. City of New York,*
    422 F.3d 47 (2d Cir. 2005) ..........................................................................................4

*Clark v. Coca-Cola Beverages Northeast, Inc.*,
    2022 WL 92060 (2d Cir. Jan. 10, 2022) ..............................................................3, 5, 6

*Daley v. Cablevision Sys. Corp.*,
    2016 WL 880203 (S.D.N.Y. Mar. 7, 2016) .................................................................1

*E.E.O.C. v. Greystar Mgmt. Servs. L.P.*,
    2013 WL 6731885 (D. Md. Dec. 18, 2013) ................................................................7

*Fasanello v. United Nations Int'l Sch.*,
    2022 WL 861555 (S.D.N.Y. Mar. 23, 2022) .............................................................10

*Forrester v. Corizon Health*,
    752 F. App'x 64 (2d Cir. 2018) ...................................................................................9

*Fox v. Amtrak*,
    2006 WL 395269 (N.D.N.Y. Feb. 16, 2006), *aff'd,* 241 F. App'x 771 (2d Cir.
    2007) ...........................................................................................................................7

*Frilando v. N.Y. City Transit Auth.*,
    513 F. Supp. 3d 356 (S.D.N.Y. 2021), *aff'd*, 2022 WL 3569551 (2d Cir. Aug.
    19, 2022) ...................................................................................................................10

*Grande v. Saint Clare's Health Sys.*,
    230 N.J. 1 (2017) ........................................................................................................4

*Idlisan v. Mount Sinai Med. Ctr.*,
    2015 WL 136012 (S.D.N.Y. Jan. 9, 2015) ..................................................................7

*Jacobsen v. N.Y. City Health & Hosp. Corp.*,
    22 N.Y.3d 824 (2014) ............................................................................................9, 10

*Lazzari v. N.Y. City Dep't of Parks & Recreation*,
    751 Fed. Appx. 100 (2d Cir. 2018) ...........................................................................10

*LeBlanc v. United Parcel Serv.*,
    2014 WL 1407706 (S.D.N.Y. Apr. 11, 2014) .............................................................1

*McMillan v. City of New York,*
    711 F.3d 120 (2d Cir. 2013)..................................................................................................3

*Nieblas-Love v. N.Y. City Hous. Auth.,*
    165 F. Supp. 3d 51 (S.D.N.Y. 2016).......................................................................................1

*Noecker v. Reading Hosp.,*
    2010 WL 363840 (E.D. Pa. Jan. 27, 2010) ............................................................................7

*Paluh v. HSBC Bank USA,*
    409 F. Supp. 2d 178 (W.D.N.Y. 2006) ..................................................................................6

*Raspa v. Office of Sheriff of Cty. of Cloucester,*
    924 A.2d 435 (N.J. 2007).......................................................................................................5

*Shannon v. N.Y. City Transit Auth.,*
    332 F.3d 95 (2d Cir. 2003).....................................................................................................5

*Sivio v. Village Care Max,*
    436 F. Supp. 3d 778 (S.D.N.Y. 2020).................................................................................6, 9

*Snowden v. Trustees of Columbia Univ.,*
    612 F. App'x 7 (2d Cir. 2015) ................................................................................................6

*Sohnen v. Charter Comms., Inc.,*
    2022 WL 900602 (E.D.N.Y. Mar. 28, 2022) .........................................................................6

*Stone v. City of Mount Vernon,*
    118 F.3d 92 (2d Cir. 1997).....................................................................................................2

## Statutes / Rules

29 C.F.R. § 1630.2(n)(2)....................................................................................................................3

N.J.A.C. 13:13–2.8(a)(2) ...................................................................................................................4

N.Y.C. Admin. Code § 8–107(15)(b) ................................................................................................4

Centerview Partners LLC ("Centerview") respectfully submits this reply memorandum in further support of its motion for partial summary judgment dismissing Counts 1 and 3–11 of Plaintiff Kathryn Shiber's ("Shiber") Third Amended Complaint.

## ARGUMENT

**I.   SHIBER CANNOT ESTABLISH DISABILITY DISCRIMINATION**

**A.   Shiber Cannot Show A *Prima Facie* Case Of Disability Discrimination**

Because Shiber cannot show that she was qualified to perform an essential function of Centerview's analyst position, with or without reasonable accommodation, she cannot make the *prima facie* showing of discrimination necessary to prove her New York City Human Rights Law ("NYCHRL"), New York State Human Rights Law ("NYSHRL," and with the NYCHRL, the "NY HRLs"),[1] New Jersey Law Against Discrimination ("NJLAD") and Americans with Disabilities Act ("ADA") claims.  *See* Centerview's opening brief ("Br.") at 9–17.

**1.   The Ability To Work Unpredictable Hours Is An Essential Function Of Centerview's Analyst Position**

Courts "give considerable deference to an employer's determination as to what functions are essential" to a job position. *Daley v. Cablevision Sys. Corp.*, 2016 WL 880203, at *5 (S.D.N.Y. Mar. 7, 2016).  The undisputed evidence shows that Centerview properly determined that the ability to work very late and/or unpredictable hours is an essential function of Centerview's analyst role.  Br. at 11–14; *see, e.g.*, SOF ¶¶ 3–7, 20.

---

[1]   Shiber argues that her claims under the NY HRLs—particularly the NYCHRL—"must receive special consideration."  Shiber's opposition brief ("Opp.") at 19.  "'The standard under the NYCHRL is liberal, but not boundless.'  Even under its permissive standard, a plaintiff must still establish a *prima facie* case. . . ."  *Nieblas-Love v. N.Y. City Hous. Auth.*, 165 F. Supp. 3d 51, 74 (S.D.N.Y. 2016) (quoting *LeBlanc v. United Parcel Serv.*, 2014 WL 1407706, at *13 (S.D.N.Y. Apr. 11, 2014)).

Shiber offers no evidence contradicting this essential function—nor does she address Centerview's cited cases demonstrating that the ability to work unpredictable, indeterminate hours can be an essential function. *See* Br. at 13–14 (collecting cases). Instead, Shiber creates a straw man by contorting Centerview's position to be that "the ability for Analysts to stay awake for days at a time" or "work without sleep for days on end" is an essential function. Opp. at 8, 9. That is not Centerview's position. Thus, evidence that Centerview analysts do in fact sleep and that an 80-hour week is "a lot of hours" (Opp. at 7) is irrelevant to whether it is an essential function of the analyst role to be able to work unpredictable hours as the job demands. *See* Br. at 11–14. Similarly, that analysts might "not work on live deals consistently" (Opp. at 7) does not contradict the clear evidence that (1) deals can "become[] live" and "demand[] sprints instead of marathons" at any moment (Ex. 22 at 103:14–24); (2) analysts who are staffed on live deals are expected to work the hours necessary to timely complete tasks; and (3) being assigned to live deals is a part of the analyst experience.[2] *See* Br. at 16; SOF ¶¶ 4, 20, 53, 60. Finally, Shiber's citations to reviews on "the Vault" (Opp. at 8) do nothing to negate the undisputed evidence that analysts are expected to be available at unpredictable times consistent with the demands of the role. *See* Br. at 11–14; SOF ¶¶ 3–5, 8; Shiber Decl. ¶ 15 (discussing her expectations for the role).

In *Stone v. City of Mount Vernon*, which Shiber cites, the Second Circuit found that "fire suppression" was not an essential function in the Department's specialized bureaus where there was **no evidence in the record** that any firefighter in those bureaus was ever called upon to fight fires. 118 F.3d 92, 99–100 (2d Cir. 1997). Here, by contrast, it is undisputed that: (1) Shiber

---

[2] Shiber incorrectly asserts that "Centerview offered to take Shiber off project Dragon and live deals in general." Opp. at 8. As Shiber later acknowledges in her own brief (Opp. at 18), Centerview offered to take Shiber off project Dragon *specifically* as an immediate-term means of protecting her need for consistent sleep, given this live deal would continue requiring the team to work unpredictable, long hours. *See* SOF ¶¶ 27, 28, 34, 35, 41; Shiber Decl. ¶ 79.

2

herself was assigned to a live deal that required the flexibility to work after midnight (Counter 56.1 Statement ¶¶ 13, 18; Shiber Decl. ¶¶ 7, 9, 11, 13; SOF ¶¶ 16–20); (2) an associate on her deal team handled approximately *fifteen* such deals (Opp. at 7); (3) live deals can be active for several months (Ex. 9 at 40:8–19); and (4) Centerview's analysts can be staffed on "multiple live transactions at the same time." SOF ¶¶ 3–5; Ex. 10 at 28:21–29:10. And in *McMillan v. City of New York*, which Shiber also cites, the Court found a genuine dispute of fact existed as to whether "a timely arrival at work is an essential function of [plaintiff city employee's] job, provided that [plaintiff] is able to offset the time missed due to tardiness with additional hours worked to complete the actual essential functions of his job" in accordance with an existing workplace "flex-time policy." 711 F.3d 120, 123, 128 (2d Cir. 2013). By contrast, Centerview's analyst job does not follow set work hours or allow for offsetting time missed. *See* SOF ¶¶ 4, 20; Ex. 10 at 29:23–30:22 ("the hours per week for a Wall Street analyst likely vary between 60 and 120 hours a week); Ex. 1 ("One part of this job (and the worst part of this job) is many times you can't 'get ahead' of things or work through things early because there will always be more for you to do. Late nights are just part of the job, especially on a live deal like this.").

Finally, contrary to Shiber's suggestion (Opp. at 6–7), "an employer's written job description is **only one of the many factors** [courts] consider when evaluating whether a job function is essential and 'no one … factor will be dispositive.'" *Clark v. Coca-Cola Beverages Northeast, Inc.*, 2022 WL 92060, at *3 (2d Cir. Jan. 10, 2022) (emphasis added); *see also* 29 C.F.R. § 1630.2(n)(2) (noting a "job function may be considered essential for any of several reasons").

### 2.  Shiber Cannot Perform The Essential Function Of Her Position With Or Without Any Reasonable Accommodation

To prove a *prima facie* case of disability discrimination under the ADA, NY HRLs, or NJLAD, Shiber must show that she could perform the above-discussed essential function (or,

3

under the NYCHRL, "satisfy the essential requisites" of the position) with or without a reasonable accommodation. N.Y.C. Admin. Code § 8–107(15)(b); *see* Opp. at 21–22. Here, Shiber cannot make her required showing; conversely, Centerview can fulfill its burden.[3] *See* Br. at 14–17.

*First*, Shiber undoubtedly could not perform the above-discussed essential function of the analyst role without an accommodation. While Shiber attempts to liken Centerview to the defendant in *Capobianco v. City of New York* that based its decision on an unsubstantiated and "mistaken" perception, 422 F.3d 47, 61 (2d Cir. 2005), Centerview based its decision on "factual evidence"—rather than "general assumptions about [Shiber's] disability"—in determining that Shiber could not perform an essential function of the job. *Grande v. Saint Clare's Health Sys.*, 230 N.J. 1, 19 (2017); *see, e.g.*, SOF ¶ 47. And as *Grande* makes clear, "an employer may terminate a disabled employee where continued employment 'would be hazardous to the safety or health of [the employee.]'" 230 N.J. at 20 (quoting N.J.A.C. 13:13–2.8(a)(2)).

Of course, "[w]hen asserting [that] safety defense, the employer must establish with a reasonable degree of certainty that it reasonably arrived at the opinion that the employee's handicap presented a materially enhanced risk of substantial harm in the workplace." *Id.* (quotations omitted). Here, Centerview did just that. Specifically, Centerview relied both on Shiber's own statements as well as a note from Shiber's primary care provider that stated, in no uncertain terms: "[b]ecause of [Shiber's] underlying medical diagnosis, she requires consistent sleep 8-9 hours" and "[i]f she is not able to maintain a regular sleep schedule she is a[t] ***a significant risk for exacerbation of her illness***." Ex. 5 (emphasis added); SOF ¶¶ 27, 47; *see also* Ex. 19 at 244:4–19; Ex. 20; Ex. 21 at 43:4–10, 45:1–14; Shiber Decl. ¶ 19.

---

[3] For the same reasons described herein and in Centerview's opening brief (Br. at 14–17, 20–21), Shiber cannot prove her claims for failure to accommodate under the ADA, NJLAD, and NY HRLs (Counts 3, 6, 8, 11).

*Second*, there was no reasonable accommodation available to Shiber.  *See* Br. at 14–17; SOF ¶¶ 60–61.  Nothing Shiber cites contradicts the evidence that creating a role that would permit Shiber to work set hours was an undue burden for Centerview.  *See* Br. at 15–17; SOF ¶ 53–58.  Shiber's claim that "[i]t was Centerview who proposed the guardrails accommodation for Shiber, which it would not have done had it been an undue burden" (Opp. at 10), again distorts the factual record:  Centerview offered the guardrails as an immediate-term means of protecting Shiber's need for consistent sleep.  SOF ¶ 45.  It is undisputed that Centerview added another analyst to the project Dragon team to "help out right away" once the team was unable to rely on Shiber during the night.  SOF ¶¶ 52, 57–58.  After carefully monitoring the situation as it progressed, Centerview finally determined that no reasonable accommodation existed in the long run that could guarantee Shiber consistent sleep without imposing an undue burden on Centerview.  SOF ¶¶ 47–60.

"A reasonable accommodation can never involve the elimination of an essential function of a job."  *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003).  Shiber offers no evidence disputing that: (1) creating set hours for Shiber would mean that her experience "would not be the same experience" or that "it's not the same job anymore" and that (2) having set hours made it "difficult for [Shiber] to own things to completion" such that her deal team "[kept] building things out without her."  Br. at 16; SOF ¶¶ 53, 56, 60.  The fact that "the work on Dragon was completed successfully notwithstanding the guardrails" (Opp. at 10) is a testament to the deal team—not, as Shiber suggests, evidence that accommodating Shiber's need for consistent sleep was reasonable and viable long-term.  *See* Br. at 15–17.

Nor does Shiber offer any evidence disputing that her required accommodation resulted in a light-duty position—the creation of which the law does not impose on employers.  *See* Br. at 16 (citing *Raspa v. Office of Sheriff of Cty. of Cloucester*, 924 A.2d 435, 445 (N.J. 2007) and *Clark*,

5

2022 WL 92060, at *2-3); SOF ¶¶ 53–58. Instead, Shiber simply claims that she never requested a "light duty" position and that she was nevertheless working many hours. Opp. at 11. The inquiry is ***not*** whether Shiber specifically requested a light duty position or the number of hours she was working, but rather the natural effect of her needed accommodation. *See, e.g., Clark*, 2022 WL 92060, at *3 (accommodations that require "reallocating [] tasks from [plaintiff] to other team members" are indicative of an employer having to create a new, light-duty position); *see also Snowden v. Trustees of Columbia Univ.*, 612 F. App'x 7, 10 (2d Cir. 2015) (to the extent plaintiff employee sought "help" from other employees, "such an accommodation constitutes an elimination of an essential function of [her] job and ... is unreasonable under the law").

### B. Centerview Has Presented A Legitimate, Non-Discriminatory, and Non-Pretextual Reason For Shiber's Termination[4]

Even assuming Shiber could prove a *prima facie* case of discrimination, which she cannot, Centerview has offered a legitimate, non-discriminatory reason for Shiber's termination: she could not fulfill the essential functions of the first-year analyst position. *See* Br. at 18; *supra* at 3–6.

Shiber cannot show pretext. While she cites to various statements made by Vicari during the termination meeting as supposed evidence of pretext (Opp. at 14–15), none of the statements reflect discriminatory animus—and Shiber's reliance on "mere conjecture or surmise" is insufficient to defeat a motion for summary judgment. *Paluh v. HSBC Bank USA*, 409 F. Supp. 2d 178, 192 (W.D.N.Y. 2006). Shiber's opinion that Vicari "held a discriminatory animus towards

---

[4] Shiber claims Centerview "terminated Shiber because of her disability and need for accommodation" such that "there is no need to analyze whether Centerview's reasons are pretext." Opp. at 16. But as discussed *supra* at 3–6, Centerview terminated Shiber not due to her disability, or even conduct caused by her disability, but because no reasonable accommodation existed that would enable her to perform the essential functions of her job. This distinguishes her case from *Sivio v. Village Care Max*, 436 F. Supp. 3d 778 (S.D.N.Y. 2020) and *Sohnen v. Charter Comms., Inc.*, 2022 WL 900602 (E.D.N.Y. Mar. 28, 2022), where the Court premised its decision on the fact that a reasonable accommodation was available but not provided by the employer.

Shiber" and exhibited "malice" during that meeting (Opp. at 13) is not enough to support a finding of disability discrimination. *See, e.g., Fox v. Amtrak*, 2006 WL 395269, at *4 (N.D.N.Y. Feb. 16, 2006), *aff'd,* 241 F. App'x 771 (2d Cir. 2007) (plaintiff's mere personal belief that employer held discriminatory intent was insufficient to survive summary judgment motion). Shiber's statements that Centerview and Shiber's colleagues "exaggerate[]" inefficiencies and complaints (Opp. at 17) are pure *ipse dixit* that are unsupported by evidence and cannot support a finding of discrimination. *See, e.g.*, *Idlisan v. Mount Sinai Med. Ctr.*, 2015 WL 136012, at *3 (S.D.N.Y. Jan. 9, 2015).

Similarly unsupported is Shiber's argument that the timing between Vicari's learning about Shiber's history of concussions and Vicari's decision to terminate Shiber evidences discriminatory animus. Opp. at 14–17. To the contrary, Vicari testified that learning about Shiber's concussions played no role in her decision and that she does not know whether she learned about Shiber's concussions before making the decision to terminate her. Heller Decl., Ex. B at 84:3–11. Further, Vicari knew that Shiber had a disability weeks before her termination. *See* Br. at 5; SOF ¶ 33.

Nor is Centerview's refusal to accept Shiber's offer to "rescind" her accommodation request proof of discrimination. Opp at 14. Centerview was well within its rights to rely on the accuracy of Nurse Verdi's letter in making its decision to terminate Shiber. *See, e.g.*, *E.E.O.C. v. Greystar Mgmt. Servs. L.P.*, 2013 WL 6731885, at *23 (D. Md. Dec. 18, 2013) (under the ADA, "deferring to the doctor's notes was legitimate and lawful, even in light of [plaintiff's] attempt to waive her medical restriction"); *Noecker v. Reading Hosp.*, 2010 WL 363840, at *5 n.6 (E.D. Pa. Jan. 27, 2010) (employer "should not be faulted for refusing to allow [the plaintiff] to perform duties which may have required her to go against her doctor's restrictions").

The record reflects that Vicari made the decision to terminate Shiber only after carefully monitoring the situation and considering all of the information provided to her, directly and

7

indirectly, by Robinson, Kim, the project Dragon deal team, Shiber, and Shiber's medical provider. *See* Br. at 6–8; SOF ¶¶ 33–35.[5]

## II. CENTERVIEW ENGAGED IN AN INTERACTIVE PROCESS

Shiber's claim for failure to engage in an interactive process (Count 9) fails because (1) she cannot establish a *prima facie* case of discrimination (*see* Br. at 9–14, *supra* at 1–8); (2) Centerview made a good faith effort to assist her in seeking her accommodations (Br. at 20–23; SOF ¶¶ 26, 33–45, 48–52, 59); and (3) there was no reasonable accommodation available (Br. at 10–14).  As set forth in Centerview's opening brief, Centerview indisputably engaged in a good faith, interactive process with Shiber immediately after learning of her requested accommodation. *See* Br. at 20–21; SOF ¶¶ 26, 33–45, 48–52, 59.  Shiber's opposition does not show otherwise.

Shiber claims that "Vicari acknowledged that there was no interactive process regarding Shiber's ***termination.***"  Opp. at 23 (emphasis added).  But, of course, the law does not require employers to engage in an interactive dialogue with employees about their termination.  And, as Vicari testified: "I believe there was an interactive process with Kate ***with regard to her accommodation request***."  Heller Decl., Ex. B at 91:3–7 (emphasis added).

Shiber also now contends that "there was a wide range of things we could have discussed between the guardrails approach and terminating me."  Shiber Decl. ¶ 71.  Yet, the "examples" Shiber describes: (1) joining deals that "did not require employees to stay awake all night" (*id.*); (2) "mak[ing] up the lost sleep" on a subsequent night (*id.*); (3) disregarding Shiber's documented medical needs altogether (Opp. at 24); or (4) or giving her temporary leave (*id.*), would not actually address her need—verified by a medical provider—for an accommodation allowing her to

---

[5] As discussed *infra* at 8–9, Centerview in fact engaged in an interactive process with Shiber; as such, that cannot be a factor supporting discriminatory animus. *See* Opp. at 15.

8

maintain a work schedule that allows for consistent, eight-to-nine hours of sleep each night. And, as discussed *supra* at 7, Centerview was within its right to rely on those representations in considering whether there was any reasonable accommodation.

### III. CENTERVIEW DID NOT RETALIATE

Shiber's retaliation claim (Count 4) fails because she cannot establish "a causal connection" between her accommodation request and Centerview's "subsequent action" or that Centerview's legitimate reason for her termination was "pretextual or motivated at least in part by an impermissible motive." *Adams v. Montefiore Med. Ctr.*, 2017 WL 4417695, at *5 (S.D.N.Y. Oct. 3, 2017) (quotations omitted). While Shiber suggests Centerview was motivated by "retaliatory animus" (Opp. at 25), Centerview's decision to terminate was informed by Shiber's own stated needs and her medical provider's assessment. *See* SOF ¶¶ 27, 47; Shiber Decl. ¶ 19. An employer's decision to terminate an employee based on its "perception that the employee could not perform the essential functions of her job" does not demonstrate retaliatory intent. *Sivio*, 436 F. Supp. 3d at 802 (granting summary judgment on NYCHRL retaliation claim). Moreover, "evidence of temporal proximity alone is not enough to demonstrate retaliation under the NYCHRL." *Forrester v. Corizon Health*, 752 F. App'x 64, 66 (2d Cir. 2018).

### IV. CENTERVIEW IS ENTITLED TO SUMMARY JUDGMENT UNDER NEW YORK LAW

Shiber argues that "Centerview's failure to engage interactively with Shiber precludes summary judgment under [*Jacobsen v. N.Y. City Health & Hosp. Corp.*, 22 N.Y.3d 824 (2014)]." Opp. at 20. But as discussed *supra* in Section II, and in sharp contrast to the defendant in *Jacobsen* (who denied plaintiff's request for a respirator "without considering it"), Centerview "engaged in a good faith interactive process regarding [Shiber's] specifically requested accommodation" of getting a consistent 8-9 hours of sleep per night. *Id.* at 838, 842. And after "assess[ing] the needs

9

of [Shiber] and the reasonableness of the accommodation requested," *id*. at 837, Centerview determined that no reasonable accommodation existed that would enable Shiber to perform the essential functions of the analyst job.

Even *assuming arguendo* that Centerview did *not* engage in an interactive process, "a plaintiff cannot prevail under the NYSHRL or NYCHRL 'solely based on the employer's failure to engage in an interactive process.'" *Frilando v. N.Y. City Transit Auth*., 513 F. Supp. 3d 356, 365 (S.D.N.Y. 2021), *aff'd*, 2022 WL 3569551 (2d Cir. Aug. 19, 2022) (quoting *Jacobsen*, 22 N.Y.3d at 838). "Plaintiff makes too much of [the] language [in *Jacobsen*], claiming that it precludes the entry of summary judgment in all cases. It does not. As the Court of Appeals wrote in *Jacobsen*, its 'conclusion that, in all but the most extreme cases, the lack of a good faith interactive process forecloses summary judgment in favor of the employer should not be construed too broadly.' [*Jacobsen*] at 838." *Fasanello v. United Nations Int'l Sch*., 2022 WL 861555, at *21 (S.D.N.Y. Mar. 23, 2022) (granting defendant summary judgment on plaintiff's failure to accommodate claim under the NYCHRL); *see also Lazzari v. N.Y. City Dep't of Parks & Recreation*, 751 Fed. Appx. 100, 103 (2d Cir. 2018) (finding "[plaintiff's] sweeping argument that an employer is categorically precluded from obtaining summary judgment under the NYSHRL unless the employer engaged in a good faith interaction … about a requested accommodation rests on a misinterpretation of *Jacobsen*" and affirming summary judgment for defendant).

For the reasons set forth in its opening brief (Br. at 9–20) and *supra* at 1–6, Centerview is entitled to summary judgment under the NY HRLs given that no reasonable accommodation existed that would have enabled Shiber to perform the essential functions of her job.

## CONCLUSION

For the foregoing reasons, Centerview respectfully requests that the Court enter summary judgment in Centerview's favor on Counts 1 and 3–11 of Shiber's Third Amended Complaint.

10

| | |
|---|---|
| Dated: October 30, 2024<br>New York, New York | QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP |

By: */s/ Jennifer Barrett*
Jennifer Barrett
Hope D. Skibitsky
Janice Yoon
Maheema Haque
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel. (212) 849-7000
Fax (212) 849-7100
jenniferbarrett@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
janiceyoon@quinnemanuel.com
maheemahaque@quinnemanuel.com

*Attorneys for Centerview Partners LLC*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th of October, 2024, I electronically filed the foregoing Reply Memorandum of Law in Further Support of Defendant's Motion for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

SCHWARTZ PERRY & HELLER LLP
David S. Perry
Brian Adam Heller

CLAYMAN & ROSENBERG LLP
James Francis Valentino

*/s/ Hope D. Skibitsky*
Hope D. Skibitsky