Schwartz Perry & Heller LLP
3 Park Avenue, Suite 2700
New York, NY 10016

212.889.6565 PHONE
212.779.8208 FAX
www.sphlegal.com

January 20, 2026

**Via ECF**

Hon. Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Street
New York, NY 10007

        Re:    **Kathryn Shiber v. Centerview Partners LLC**
                **1:21-cv-03649-ER**

Dear Judge Ramos:

      We represent Plaintiff Kathryn Shiber ("Plaintiff" or "Shiber") in the above-referenced matter. We write pursuant to Local Civil Rule 37.2 and Rule 2(A) of Your Honor's Individual Practices to respectfully request an informal pre-motion conference to address Defendant Centerview Partners LLC's (Defendant or "Centerview") refusal to produce updated discovery responses. The parties have met and conferred in good faith, including exchanging emails and speaking over Zoom on January 14, 2026, but have not been successful in resolving these issues.

      Specifically, Centerview refuses to provide (i) updated responses to Shiber's interrogatories seeking the compensation information of similarly situated employees so that she can calculate her backpay loss and (ii) updated documents regarding the number of hours that similarly situated employees have worked at Centerview from the time that Shiber commenced her employment to the present. Centerview previously provided such information but now refuses to update that information in advance of the trial scheduled for February 23, 2026.

**I.**    **Centerview Refuses To Respond To Interrogatories**
       **About The Compensation She Could Have Received**

      During discovery, Plaintiff served interrogatories on December 1, 2022 seeking compensation information of other employees in Plaintiff's same three-year Analyst program from Plaintiff's termination on September 15, 2020 to that date. The applicable interrogatories stated: "For each person in the Analyst Class of 2020, identify the compensation that Centerview paid such individual in calendar year [2020, 2021 and 2022] without providing the name of each person, including the (a) base salary, (b) bonus and/or (c) other compensation that such individual received." Defendant provided responses to these interrogatories on January 4, 2023 and amended responses on March 2, 2023.

# Schwartz Perry & Heller

On November 10, 2025, after the trial date was set, Plaintiff served a second set of interrogatories seeking the exact same information but extending the end dates through the conclusion of 2025. Defendant served its responses on January 9, 2026 and objected to providing information beyond the conclusion of the three-year Analyst program in June 2023. As the information regarding what employees received between June 2023 and the present is crucial to determining Plaintiff's financial loss and cannot be obtained by any other mechanism, Plaintiff now seeks the assistance of the Court.

Should Plaintiff prevail, she is "entitled to an award of back pay from the date of her termination until the date of judgment." Poliard v. Saintilus Day Care Ctr., Inc., 2013 U.S. Dist. LEXIS 49374, at *12-13 (E.D.N.Y. Mar. 7, 2013) (quoting Saulpaugh v. Monroe Cnty. Hosp., 4 F.3d 134, 144 (2d Cir. 1993)). It is well settled that "[t]he purpose of back pay is to completely redress the economic injury the plaintiff has suffered as a result of discrimination." Hannah v. Walmart Stores, Inc., 803 Fed. Appx. 417, 423 (2d Cir. 2020). "The 'make-whole' approach requires that victims of discrimination be restored to the economic position they would have occupied but for the intervening unlawful conduct of employers." Knox v. John Varvatos Enters., 512 F. Supp. 3d 470, 485 (S.D.N.Y. 2021) (citations omitted); see also Quintero v. Angels of the World, 2021 U.S. Dist. LEXIS 172445, at *36 (E.D.N.Y. Sep. 10, 2021) ("Back pay is calculated from the date of the discriminatory practice to the date of entry of judgment.").

In this case, a calculation of Shiber's back pay is far easier to ascertain than in many cases. Unlike most plaintiffs, Shiber can compare herself to other Centerview employees who started at the exact time she did, completed the three-year Analyst program she was part of and who are still employed by the company as Associates. Accordingly, Shiber is entitled to obtain this clearly relevant information about similarly situated employees. See Ophir v. Koneksa Health Inc., 2024 U.S. Dist. LEXIS 78732, at *1-2 (S.D.N.Y. Ap. 30, 2024) (noting that "courts typically apply more liberal civil discovery rules in employment discrimination cases" and holding that an executive who was denied the ability to sell stock shares was permitted to discover whether other executives were permitted to sell their shares); Chisolm v. Liberty Lines Transit, Inc., 2013 U.S. Dist. LEXIS 16254, at *23 (S.D.N.Y. Feb. 6, 2013) (granting back pay from the date that plaintiff was denied employment "to the date of the verdict herein")

Centerview provides no legitimate basis to limit its interrogatory response to only the time-period of Shiber's Analyst class. Centerview speculates that Shiber definitely would have left its employ at the conclusion of the Analyst program, even though others in her class remain employed. In fact, the key witnesses at issue in this case, including the two junior employees who worked with Shiber, all remain employed at Centerview, confirming that it is reasonable for Shiber to expect to have been permitted to continue her employment at the end of the program. A jury must make the determination as to whether or not Shiber would have remained employed after the program ended. See e.g. Emamian v. Rockefeller Univ., 2018 U.S. Dist. LEXIS 97674, *39 (S.D.N.Y. June 8, 2018) (holding that where other employees had their contracts renewed or were promoted, "[i]t was therefore not unreasonable for Plaintiff's counsel to argue that Dr. Emamian expected renewal of her contract but for her discrimination, and that she was entitled to damages for a renewed term.").

# Schwartz Perry & Heller

The authority that Centerview cites in its interrogatory response does not support its argument. For example, in Claud v. Brown Harris Stevens of the Hamptons, LLC, 676 F.Supp.3d 100, 136 (E.D.N.Y. June 7, 2023), which Centerview cites, the court granted back pay for the "309.71 weeks" between the date of termination and judgment, which totals almost *6 years*, so that the case is more helpful to Shiber than to Centerview. In Meschino v. Intl. Telephone & Telegraph Corp., 661 F.Supp. 254, 257 (S.D.N.Y. 1987), which Centerview also cites, the plaintiff's back pay damages were cut off by an earlier reduction in force that would have cut off his damages, not because his calculations were speculative. Finally, Centerview's citation to Tse v. UBS Financial Services, 568 F.Supp.2d 274, 304-305 (S.D.N.Y. 2008), is not relevant because the plaintiff in that case failed to mitigate her damages and, furthermore, relied on a defective damages chart.

If discovery were limited to only the three-year Analyst program, Shiber would not only be precluded from seeking her back pay damages beyond June 2023, but would also be precluded from seeking front pay damages that she can reasonably expect to incur in the future. Centerview should not receive an unfair advantage because Shiber was hired as part of a three-year program, when Shiber had no guarantee of employment during that program and Centerview cannot demonstrate with certainty that her employment would have ended in June 2023. Shiber should not be deprived of the full scope of her damages because of Centerview's speculation.

Shiber does intend to assume at trial that her continued employment at Centerview was guaranteed. However, discovery into what others in her exact situation have earned since the time she was fired is clearly discoverable and relevant. See Clarke v. Statewide Auto Repair, Inc., 2025 U.S. Dist. LEXIS 102301, at *10 (E.D.N.Y. May 29, 2025) (noting that "[a] plaintiff seeking back pay need not prove the amount of loss with mathematical precision" but need only "a sufficient basis for estimating an amount with reasonable certainty.").

**II.     Centerview Refuses To Supplement Its Document Production About The Hours Analysts Worked**

Plaintiff has also requested that Centerview supplement its response to her document request 20, which seeks "[d]ocuments identifying the hours that each individual in the Analyst class of 2020 have worked since July 2020 to the present." This information is relevant to Centerview's claim that the role Shiber held called for "long hours," an argument that was repeatedly made in its motion for summary judgment. (See Centerview's Brief dkt. #117). Indeed, the amount of hours Centerview employees actually work is a key issue in this litigation.

Centerview previously provided responsive documents through the end of 2020 as bates "Centerview 2909." However, Centerview has refused to provide updated information. Although Plaintiff has repeatedly asked for Centerview to provide a basis for its refusal to produce updated information, it has not provided any rationale. Plaintiff, therefore, now seeks the assistance of the Court to compel Centerview to update its production to include documents from January 1, 2021 through the present (though Plaintiff will accept information through the end of 2025).

We thank the Court for its consideration of this matter.

Schwartz Perry & Heller

                                                                            Respectfully submitted,

                                                                            BRIAN HELLER

cc:    All counsel – via ECF