**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KATHRYN SHIBER,

             Plaintiff,

    v.

CENTERVIEW PARTNERS LLC,

         Defendant.

Case No. 1:21-cv-03649

**CENTERVIEW PARTNERS LLC'S MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTIONS IN LIMINE</u>**

Jennifer J. Barrett
Hope D. Skibitsky
Charles H. Sangree
Janice Yoon

QUINN EMANUEL
URQUHART & SULLIVAN LLP
295 5th Ave, New York, NY 10016
Tel: 212-849-7000
Fax: 212-849-7100
jenniferbarrett@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
charlessangree@quinnemanuel.com
janiceyoon@quinnemanuel.com

*Attorneys for Centerview Partners LLC*

**TABLE OF CONTENTS**

**Page**

MOTIONS IN LIMINE ................................................................................................... 1

I.  Motion in limine to exclude the trial testimony of Robert Pruzan. ...................... 1

II. Motion in limine to preclude the testimony of Kylee Mueggenburg for Plaintiff's discovery violations. ........................................................................... 4

III. Motion in limine to exclude testimony regarding Plaintiff's purported emotional distress ............................................................................................................. 9

IV. Motion in limine to preclude evidence of compensation beyond the analyst position ........................................................................................................... 14

V.  Motion in limine to exclude evidence, testimony, or argument regarding Centerview's revenues, profits, or financial performance. ................................. 19

CONCLUSION .................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Adams-Flores v. City of New York*,
2024 WL 519819 (S.D.N.Y. Feb. 9, 2024)...................................................................7

*Arista Records LLC v. Lime Grp. LLC*,
2011 WL 1542560 (S.D.N.Y. Apr. 21, 2011) .............................................................19

*Badolato v. Long Island R.R. Co.*,
2016 WL 6236311 (E.D.N.Y. Oct. 25, 2016)................................................................6

*Boucher v. U.S. Suzuki Motor Corp.*,
73 F.3d 18 (2d. Cir. 1996)...........................................................................................16

*Capak v. Smith*,
2023 WL 5465443 (S.D.N.Y. Aug. 24, 2023)............................................................10

*Colon v. N.Y.C. Hous. Auth.*,
2024 WL 659938 (S.D.N.Y. Feb. 16, 2024).................................................................7

*Davids v. Novartis Pharma. Corp.*,
857 F. Supp. 2d 267 (E.D.N.Y. 2012).........................................................................11

*DeRienzo v. Metro. Transp. Auth.*,
694 F. Supp. 2d 229 (S.D.N.Y. 2010).........................................................................13

*Design Strategy, Inc. v. Davis*,
469 F.3d 284 (2d. Cir. 2006) .........................................................................................8

*Dunn v. Zimmer, Inc.*,
2005 WL 563095 (D. Conn. Mar. 9, 2005) ..................................................................6

*E.E.O.C. v. Yellow Freight Sys., Inc.*,
2002 WL 31011859 (S.D.N.Y. Sept. 9, 2002) .......................................................9, 14

*F.H. Krear & Co. v. Nineteen Named Trs.*,
810 F.2d 1250 (2d. Cir. 1987) ......................................................................................4

*Frydman v. Experian Info. Solutions, Inc.*,
2016 WL 11483839 (S.D.N.Y. Aug. 11, 2016)..........................................................13

*Gass v. Marriott Hotel Servs., Inc.*,
558 F.3d 419 (6th Cir. 2009) ......................................................................................12

*Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of New York*,
2014 WL 10447206 (S.D.N.Y. Oct. 24, 2014) ....................................................................2

*Gulino v. Board of Educ. Of City School Distrct of City of New York*,
2018 WL 6583844 (S.D.N.Y. Dec. 14, 2018) ...................................................................17

*Hernandez v. Leichliter*,
2016 WL 684038 (S.D.N.Y. Feb. 18, 2016) ....................................................................13

*Highland Capital Mgmt., L.P. v. Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008) ........................................................................1, 4

*Hines v. First Unum Life Ins. Co.*,
2016 WL 1246483 (S.D.N.Y. Mar. 23, 2016) ....................................................................7

*Housing Works, Inc. v. Turner*,
2004 WL 2101900 (S.D.N.Y. Sept. 15, 2004) ...................................................................9

*Int'l Minerals & Res., S.A. v. Pappas*,
96 F.3d 586 (2d Cir. 1996) ........................................................................................3

*Jean-Laurent v. Hennessy*,
840 F.Supp. 2d 529 (E.D.N.Y. 2011) ..............................................................................3

*Kaufman LLC v. Estate of Feinberg*,
2022 WL 13845083 (D. Conn. Oct. 24, 2022) .................................................................20

*Kirsch v. Fleet Street, Ltd.*,
148 F.3d 149 (2d. Cir. 1998) ....................................................................... 15, 16, 18

*Kossoff v. Felberbaum*,
2017 WL 1014375 (S.D.N.Y. Mar. 15, 2017) ....................................................................2

*Lee v. Delta Air Lines, Inc.*,
2025 WL 2208856 (S.D.N.Y. Aug. 4, 2025) ..................................................................7, 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
801 F. Supp. 3d 330 (S.D.N.Y. 2025) ...........................................................................13

*Loussier v. Universal Music Grp., Inc.*,
2005 WL 5644421 (S.D.N.Y. July 14, 2005) ...............................................................19, 20

*Maldonado v. Town of Greenburgh*,
2022 WL 21295040 (S.D.N.Y. Mar. 31, 2022) ...................................................................5

*Meschino v. Int'l Tel. & Tel. Corp.*,
661 F. Supp. 254 (S.D.N.Y. 1987) ...............................................................................16

*Monette v. Cnty of Nassau*,
    2015 WL 1469982 (E.D.N.Y. Mar. 31, 2015) ........................................... 15, 17, 18

*Morritt v. Stryker Corp.*,
    973 F. Supp. 2d at 186 ..........................................................................11, 13

*On Track Innovations, Ltd. v. T-Mobile USA, Inc.*,
    2015 WL 14072083 (S.D.N.Y. July 24, 2015) ....................................................5, 6, 8

*Palmieri v. Defaria*,
    88 F.3d 136 (2d Cir. 1996).......................................................................... 1

*Patterson v. Balsamico*,
    440 F.3d 104 (2d Cir. 2006) ........................................................................ 5

*Perl v. Meher*,
    18 N.Y.3d 208 (2011) .............................................................................. 12

*Pierce v. City of New York*,
    2017 WL 2623857 (E.D.N.Y. June 16, 2017) .......................................................... 12

*Pogil v. KPMG L.L.P.*,
    2024 WL 1208909 (S.D.N.Y. Mar. 21, 2024) .......................................................... 16

*Reilly v. Natwest Mkts. Grp. Inc.*,
    181 F.3d 253 (2d Cir. 1999) ........................................................................ 20

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
    280 F.R.D. 147 (S.D.N.Y. 2012) ...................................................................... 5

*Romanelli v. Long Island R. Co.*,
    898 F. Supp. 2d at 631 n.20  .....................................................................11, 12

*Sanderson v. Leg Apparel LLC*,
    2024 WL 898654 (S.D.N.Y. Mar. 1, 2024) ............................................................ 16

*Saulpaugh v. Monroe Community Hospital*,
    4 F.3d 134 (2d. Cir. 1993).......................................................................... 9

*Shepler v. Metro-North Commuter Railroad*,
    2016 WL 1532251 (S.D.N.Y. Apr. 15, 2016) .......................................................... 18

*Sura v. Zimmer, Inc.*,
    768 F. App'x 58 (2d Cir. 2019) ..................................................................... 10

*Tiger Cap., LLC v. PHL Variable Ins. Co.*,
    2013 WL 4517267 (S.D.N.Y. Aug. 26, 2014) ........................................................... 1

*Tretola v. First Unum Life Ins. Co.*,
    2015 WL 509288 (S.D.N.Y. Feb. 6, 2015) ..................................................................7

*Tufariello v. Long Island R.R. Co.*,
    458 F.3d 80 (2d Cir. 2006) ..............................................................................10, 11

*United States v. Kaplan*,
    490 F.3d 110 (2d Cir. 2007) .................................................................................2

*Vatansever v. New York City*,
    2005 WL 2396904 (S.D.N.Y. Sept. 28, 2005) ........................................................7

*Williams v. Buffalo Board of Education*,
    2025 WL 2047887 (W.D.N.Y. July 22, 2025) ..................................................16, 18

*Williams v. County of Orange*,
    2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005) .........................................................7

*Wills v. Amerada Hess Corp.*,
    379 F.3d 32 (2d Cir. 2004) .................................................................................10

*Wiwa v. Royal Dutch Petroleum Co.*,
    2006 WL 2637836 (S.D.N.Y. Sept. 12, 2006) ........................................................3

## Other Authorities

Fed. R. Evid. 401 ........................................................................................ 14, 16, 19

Fed. R. Evid. 403 ................................................................................3, 4, 14, 18, 19

Fed. R. Evid. 602 ................................................................................................2, 3

Fed. R. Evid. 702 ..........................................................................................11, 13

Fed. R. Civ. P. 26(a) ............................................................................................5

Fed. R. Civ. P. 26(a)(2) ........................................................................................9

Fed. R. Civ. P. 26(e) ............................................................................................5

Fed. R. Civ. P. 26(e)(1) ........................................................................................4

Fed. R. Civ. P. 37 ................................................................................................8

Fed. R. Civ. P. 37(c)(1) ......................................................................................5, 6

Pursuant to the Court's Revised Scheduling Order (ECF No. 141), Defendant Centerview Partners LLC ("Centerview") respectfully requests that the Court grant the following motions in limine.

## MOTIONS IN LIMINE

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008). "The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted). Defendant's motions should be granted for the reasons set forth below.

**I.      Motion in limine to exclude the trial testimony of Robert Pruzan.**

Plaintiff included Robert Pruzan, Centerview's co-Founder, partner, and CEO, on her witness list. Joint Pretrial Order ("JPTO") at 7. Plaintiff intends to seek testimony from Mr. Pruzan regarding Centerview's ability to provide her with a reasonable accommodation and Centerview's motivations for terminating Ms. Shiber. *Id.* This Court should preclude this testimony because Mr. Pruzan lacks unique personal knowledge of the accommodation request and termination decision at issue. This Court previously recognized this fact and denied Ms. Shiber's motion to compel Mr. Pruzan's deposition because "the record shows that Pruzan does not have "personal and *unique* knowledge of the relevant facts.'" Op. & Order, Apr. 25, 2023 (ECF No. 75 at 6) (quoting *Tiger Cap., LLC v. PHL Variable Ins. Co.*, 2013 WL 4517267, at *3 (S.D.N.Y. Aug. 26, 2014)). The Court should do so again. Further, even if Mr. Pruzan had unique personal knowledge relevant to this case, and he does not, Ms. Shiber should still be precluded from calling him as a witness because his testimony would be hearsay and cumulative.

"A witness may testify to a matter **only** if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  FRE 602 (emphasis added). Courts exclude testimony when witnesses lack firsthand knowledge of the events at issue because testimony "must be predicated upon concrete facts within [a witness's] own observation and recollection—that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts."  *United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir. 2007); *see also Kossoff v. Felberbaum*, 2017 WL 1014375, at *2 (S.D.N.Y. Mar. 15, 2017) (precluding individual from serving as fact witness due to lack of personal knowledge).  This is dispositive. This Court has already found that Mr. Pruzan lacked "personal and *unique* knowledge of the relevant facts" regarding Ms. Shiber's termination.  Op. & Order, Apr. 25, 2023 (ECF No. 75 at 6) (emphasis in original).  That finding is the law of the case, is binding upon Ms. Shiber, and should operate to bar her from compelling Mr. Pruzan to testify at trial.  *See Gulino v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, 2014 WL 10447206, at *5 (S.D.N.Y. Oct. 24, 2014) ("The  doctrine  of law of  the case  dictates  that  ...  unreversed  factual findings and  legal conclusions  ...  in  the  same  case  should  not  be disturbed absent  changed  law,  changed circumstances or clear error.") (citation omitted).

Even if this Court's prior finding did not bar Ms. Shiber from compelling Mr. Pruzan's testimony, and it does, Ms. Shiber should still be prohibited from calling Mr. Pruzan as a witness because the record shows he lacks personal knowledge of facts relevant to this case.  Mr. Pruzan did not make the decision to terminate Ms. Shiber.  ECF No. 75 at 6.  He "'never spoke with Ms. Shiber while she was employed by Centerview,' does not recall 'ever overseeing a project which Ms.  Shiber  was  assigned  to,'  and  'was  not  involved  in  the  decision'  to  implement  an accommodation for her."  *Id.* (quoting ECF No. 71-1 ¶¶ 4, 5).  Thus, the matters on which Ms.

Shiber seeks Mr. Pruzan's testimony—her request for an accommodation and her termination—are matters over which Mr. Pruzan lacks personal knowledge as he did not have any personal interactions with Ms. Shiber.  All knowledge he has on those topics he learned through other witnesses. ECF No. 71-1 ¶¶ 3-7. Thus, his knowledge is premised on hearsay and Ms. Shiber should not be permitted to compel his testimony.  *See Wiwa v. Royal Dutch Petroleum Co.*, 2006 WL 2637836, at *3 (S.D.N.Y. Sept. 12, 2006) ("A witness who has knowledge of an event only by virtue of what he or she has read or heard does not have personal knowledge of the event."); *Jean-Laurent v. Hennessy*, 840 F.Supp. 2d 529, 548 (E.D.N.Y. 2011) ("All of plaintiff's claims involve the circumstances surrounding the arrest, an event in which ADA Wilkonowski had no involvement . . . . Therefore, ADA Wilkonowski is precluded from testifying and plaintiff's and defendants' motion *in limine* regarding ADA Wilkonowski is granted.").

Even if Mr. Pruzan had personal knowledge under FRE 602, and that knowledge was not the mere product of hearsay, his testimony should be excluded as needlessly cumulative under FRE 403.  *See Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 596 (2d Cir. 1996) ("A district judge has discretion to exclude evidence if it is cumulative of evidence already in the record."). Indeed, this Court has already ruled that Mr. Pruzan's testimony would be cumulative.  ECF No. 75 at 6 ("Accordingly, to the extent that Pruzan has knowledge about Shiber's termination, it is cumulative.").  The parties' witness lists confirm the Court's prior finding.  *Id*.  Two Centerview witnesses will testify about Ms. Shiber's termination—Ms. Vicari, Centerview's COO, and Ms. Robinson, Centerview's Director of Human Resources, the individuals actually present at her termination, with Ms. Vicari being the person who "ultimately made the decision to terminate Shiber." *Id*.; JPTO at 7-9.  Ms. Shiber intends to call *five* Centerview witnesses to testify about Ms. Shiber's accommodation—Ms. Vicari, Ms. Robinson, Anthony Kim, a Centerview partner,

and Centerview bankers Timothy Ernst and Matthew Gallea, each of whom were either directly involved in implementing the accommodation or worked with Ms. Shiber after the accommodation was implemented. *Id.* Mr. Pruzan's second-hand testimony on these topics would be needlessly cumulative under FRE 403. *See Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 184 (S.D.N.Y. 2008) (excluding witnesses as cumulative because "[a]ny admissible opinion testimony that they would offer could be addressed by" other witnesses); *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1258 (2d. Cir. 1987) (affirming exclusion of witness when "at least four other witnesses" testified on the same subject).

This Court should exclude Mr. Pruzan's trial testimony.

**Granted**            **Denied**

_____            _____

## II.    Motion in limine to preclude the testimony of Kylee Mueggenburg for Plaintiff's discovery violations.

Ms. Shiber intends to introduce the testimony of Ms. Kylee Mueggenburg, one of her medical providers, regarding "Plaintiff's emotional distress and treatment." JPTO at 7. This Court should preclude this witness from testifying because Ms. Shiber violated her discovery obligations by not disclosing the identity of Ms. Mueggenburg until three months before trial, despite having knowledge of this potential witness since 2023.

Centerview served an interrogatory on October 3, 2022 which asked Ms. Shiber to "Identify all Persons and/or entities who provided You with any health or medical care or consultation from September 1, 2018 to present . . . ." Skibitsky Decl., Ex. A, Interrog. No. 4. Ms. Shiber first sought treatment from Ms. Mueggenburg on August 30, 2023. Skibitsky Decl. Ex. B 44:19-20. Accordingly, she was required under Federal Rule of Civil Procedure 26(e)(1) to update her initial disclosures and interrogatory responses to disclose Ms. Mueggenburg to Centerview "in a timely manner". But, Ms. Shiber did not disclose Ms. Mueggenberg to Centerview until

4

providing supplemental interrogatory responses on November 18, 2025 (which provided incorrect dates for Ms. Mueggenburg's treatment of Ms. Shiber), over *two years* after Ms. Shiber began seeing her. Skibitsky Decl., Ex. C, Interrog. No. 4A. This conduct plainly breached Rule 26(e). *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 161 (S.D.N.Y. 2012) ("Making a supplemental disclosure nearly a year after the close of fact discovery is not 'timely,' by any definition."); *Maldonado v. Town of Greenburgh*, 2022 WL 21295040, at *4 (S.D.N.Y. Mar. 31, 2022) (evidence that " was not disclosed until more than seven months after the completion of fact discovery" was untimely under Rule 26(e)).

Rule 37(c)(1) empowers the Court to exclude witnesses who were not timely disclosed unless the failure was substantially justified or harmless. "The party that fails to comply with Rule 26(a) or (e) bears the burden of proving both that its non-compliance was substantially justified *and* that it was harmless." *Ritchie*, 280 F.R.D. at 158 (emphasis added). This Court makes that determination by weighing "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *See On Track Innovations, Ltd. v. T-Mobile USA, Inc.*, 2015 WL 14072083, at *4 (S.D.N.Y. July 24, 2015) (*quoting Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)). Ms. Shiber cannot meet her burden.

First, Ms. Shiber's failure to disclose Ms. Mueggenburg is inexcusable. She knew Ms. Mueggenburg possessed relevant information in ██████████ because she was in her care at that time. Given that Ms. Shiber seeks damages for emotional distress, JPTO at 52, no "reasonable person" could have failed to understand that Ms. Mueggenburg (a therapist) would potentially have information relevant to those damages. *Ritchie*, 280 F.R.D. at 159. Yet Ms. Shiber did not

5

disclose Ms. Mueggenburg for over two years after seeing Ms. Mueggenburg. "This weighs strongly in favor of preclusion." *On Track Innovations*, 2015 WL 14072083, at *5 (precluding late-disclosed expert testimony where party offered no explanation for failure to supplement within discovery period, holding this "weighs strongly in favor of preclusion" under Rule 37(c)(1)); *see Dunn v. Zimmer, Inc.*, 2005 WL 563095, at *2 (D. Conn. Mar. 9, 2005) ("Plaintiffs offer no explanation for their failure to properly disclose Dr. Pruitt, and absent some explanation the witness must be excluded."); *Badolato v. Long Island R.R. Co.*, 2016 WL 6236311, at *4-6 (E.D.N.Y. Oct. 25, 2016) (precluding testimony of non-expert panel doctor first disclosed in joint pre-trial order after discovery closed, holding that defendant "should not be permitted to sandbag" plaintiff at trial by forcing reopening of discovery "at the 11th hour and on the very eve of trial").

Second, Ms. Mueggenburg's testimony is not so "important" as to warrant against exclusion. At the outset, Ms. Mueggenburg is only relevant to Ms. Shiber's alleged emotional distress (though, as discussed *infra*, she cannot offer admissible evidence on the topic). JPTO at 7. Such damages witnesses are generally "of moderate, but not vital, importance." *On Track Innovations*, 2015 WL 14072083, at *5 (compiling cases). Further, the availability of a more relevant witness, Dr. Heather Nelson, weighs against the importance of Ms. Mueggenburg. Ms. Shiber sought treatment with Dr. Nelson from ████████████████████████. Skibitsky Decl. Ex. D 38:1-9. Dr. Nelson was timely disclosed, enabling Centerview to seek discovery from Dr. Nelson in compliance with the Scheduling Order. Given that Dr. Nelson treated Ms. Shiber closer in time to her termination than Ms. Mueggenburg, Dr. Nelson's testimony (obtained by deposition) is more relevant to Ms. Shiber's alleged emotional distress than is the testimony of Ms. Mueggenburg. Courts routinely afford greater weight to medical evidence that is closer in time to the relevant events and discount opinions or testimony developed months (or years) later.

See *Hines v. First Unum Life Ins. Co.*, 2016 WL 1246483, at \*14 (S.D.N.Y. Mar. 23, 2016) (Ramos, J.) (holding it reasonable to "afford more weight to evidence most contemporaneous with the critical dates" and to "discount the probative nature" of later-created medical notes); *Tretola v. First Unum Life Ins. Co.*, 2015 WL 509288, at \*23 (S.D.N.Y. Feb. 6, 2015) (placing "particular weight" on contemporaneous medical opinions); *Vatansever v. New York City*, 2005 WL 2396904, at \*3 (S.D.N.Y. Sept. 28, 2005) (medical evidence closer to the date of the alleged events is "far more probative" than evidence obtained years after the fact.).

Third, Centerview was plainly prejudiced by Ms. Shiber's disclosure failures. Ms. Shiber's belated disclosures have forced Centerview to expend considerable resources attempting to obtain documents from Ms. Mueggenburg, interrupting Centerview's trial preparation. Those efforts are ongoing, with documents still apparently unproduced. And, while Centerview was able to depose Ms. Mueggenburg on January 15, 2026, it did so on an incomplete record and on a highly compressed timeline. This deposition, taken less than six weeks before trial, does not cure the prejudice Centerview suffered. *See Lee v. Delta Air Lines, Inc.*, 2025 WL 2208856, at \*8 (S.D.N.Y. Aug. 4, 2025) (excluding belatedly disclosed medical providers and "preclud[ing] [the plaintiff] from offering any medical testimony or evidence in support of her claim for emotional distress damages."); *Williams v. County of Orange*, 2005 WL 6001507, at \*5 (S.D.N.Y. Dec. 13, 2005) ("Plaintiff has been prejudiced. As discussed above, the trial in this matter is scheduled to begin in approximately six weeks . . . and Plaintiff only has a deficient expert report from which to prepare a cross examination of Dr. Alter."); *Colon v. N.Y.C. Hous. Auth.*, 2024 WL 659938, at \*4 (S.D.N.Y. Feb. 16, 2024) (denying late expert disclosure on the eve of trial where it would be "plainly prejudicial" and "any remedy other than preclusion would unduly prejudice Defendants by taking time away from trial preparation"); *Adams-Flores v. City of New York*, 2024 WL 519819,

at *2 (S.D.N.Y. Feb. 9, 2024) (precluding witnesses first disclosed in the JPTO where defendants "would be prejudiced" and omission was not "substantially justified or [] harmless"); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d. Cir. 2006) (finding prejudice where "discovery would have had to be reopened" in response to new evidence and "the fact that discovery had been closed for 'approximately one and a half years,'" and "there was only a 'short time left before trial.'").

Fourth, "while a continuance is, at least hypothetically, possible, discovery has long since closed in this case and the Court has since set a firm schedule for trial . . . .  This factor therefore has little weight on the Court's analysis." *On Track Innovations*, 2015 WL 14072083, at *6.

Last, while "bad faith . . . is not *required* in order to exclude evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply." *Design Strategy*, 469 F.3d at 296.  It is difficult to construe Ms. Shiber's discovery conduct as good faith. Ms. Shiber disclosed Dr. Nelson in her supplemental initial disclosures on January 4, 2023 as the only witness (beside Ms. Shiber) who could provide information regarding Ms. Shiber's alleged emotional distress.  Skibitsky Decl. Ex. C (supplemental disclosures).  Dr. Nelson was deposed on February 10, 2023.  Skibitsky Decl. Ex. D.  In that deposition she unequivocally testified that ██████ ██████████████████████████████████████████████████████████████████████ ████████.  *Id* at 170:13-171:2.  It was only after this deposition that Ms. Shiber terminated her relationship with Dr. Nelson and began seeing Ms. Mueggenburg.  Skibitsky Decl. Ex. B 13:3-10. Yet, she did not disclose this provider to Centerview until over two years later, on the eve of trial. This conduct warrants in favor of exclusion.  *Lee*, 2025 WL 2208856, at *7.

Centerview respectfully requests that the Court preclude Ms. Mueggenburg from testifying at trial.

8

**Granted**                    **Denied**

_____                _____

### III.    Motion in limine to exclude testimony regarding Plaintiff's purported emotional distress

Plaintiff is seeking damages for emotional distress she claims Centerview caused by terminating her employment. JPTO at 52. She should be precluded from presenting evidence of emotional distress to the jury because she will not be able to provide any witness qualified to testify that Ms. Shiber's alleged emotional distress was caused by Centerview. It is axiomatic that damages are only available if competent evidence shows that a defendant's conduct caused such damages. *Housing Works, Inc. v. Turner*, 2004 WL 2101900, at *38 (S.D.N.Y. Sept. 15, 2004) ("Quite apart from proving the amount of damages, a plaintiff must show that its injuries were caused by the defendant's alleged conduct."); *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 145 (2d. Cir. 1993) (a plaintiff "is only entitled to losses suffered 'as a result' of defendants' discrimination."). This includes emotional distress damages. *E.E.O.C. v. Yellow Freight Sys., Inc.*, 2002 WL 31011859, at *34 (S.D.N.Y. Sept. 9, 2002) (refusing to award emotional distress damages because "Plaintiff offered no evidence, concrete or otherwise, of any emotional problems he suffered as a result of Defendant's conduct.").

Ms. Shiber has not provided any expert report in this action, and thus offers no expert to opine that Centerview caused her alleged emotional distress, rather than such alleged distress being caused by her preexisting health conditions. *See* Skibitsky Decl., Ex. E at 16:8-12, 25:21-22; 320:2-12, 321:6-10 (Ms. Shiber testifying about medical conditions that pre-dated her terminations). Ms. Shiber has instead disclosed two non-physician health providers as individuals who will testify as to her emotional distress. JPTO at 7. But, one such provider, Dr. Nelson, has unequivocally testified ███████████████████████████████████████████. Skibitsky Decl., Ex. D at 170:5-172:18. And Plaintiff's counsel confirmed during a meet and confer regarding this

matter that Ms. Shiber will not be seeking testimony from Ms. Mueggenburg that Centerview has

caused Ms. Shiber's alleged emotional distress.  Accordingly, because Ms. Shiber cannot offer any

competent evidence as to the cause of her purported emotional distress, Ms. Shiber should be

precluded from seeking emotional distress damages.

 Ms. Shiber claims she was diagnosed with ████████████████████████████

████████████ long before she began working at Centerview.  Skibitsky Decl., Ex. E at 16:8-

12, 25:21-22; 320:2-12, 321:6-10.  She claims to still suffer from these conditions.  *Id.* at 41:18-

42:8.  Nonetheless, she will apparently elicit testimony at trial that her current symptoms of those

diagnoses were caused by her termination by Centerview and argue that she should receive

emotional distress damages as a result.  JPTO at 7.  But where a plaintiff indisputably suffered

from significant medical issues before her termination, and where she is attempting to show that

her current symptoms were not caused by such preexisting issues, but by the defendant's conduct,

expert evidence is required to show causation.  *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46

(2d Cir. 2004) ("In a case such as this, where an injury has multiple potential etiologies, expert

testimony is necessary to establish causation . . . .");  *Tufariello v. Long Island R.R. Co.,* 458 F.3d

80, 89 (2d Cir. 2006) ("[E]xpert testimony usually is necessary to establish a causal connection

between an injury and its source unless the connection is a kind that would be obvious to laymen,

such as a broken leg from being struck by an automobile.").

 For example, Ms. Shiber ████████████████ before she was terminated by

Centerview.  Skibitsky Decl. Ex. E 17:7-19.  She allegedly still ████████████████

Skibitsky Decl., Ex. F at 17 and 19.  Determining which ████████████ were caused by her

preexisting condition and which were purportedly caused by termination is nothing like connecting

a broken leg to a car crash, and instead is "beyond the experience and observation of the ordinary

jury." *Sura v. Zimmer, Inc.*, 768 F. App'x 58, 59 (2d. Cir. 2019) (quotation omitted); *Capak v. Smith*, 2023 WL 5465443, at *3 (S.D.N.Y. Aug. 24, 2023) ("Differentiating between whether certain injuries were pre-existing or the extent to which it was pre-existing is not an inference that a jury may make because of an obvious connection between the trauma alleged and the injury."). Accordingly, Ms. Shiber cannot show such causation without expert testimony, which she indisputably has not obtained. *See Tufariello,* 458 F.3d at 89.

Plaintiff has stated she will not be seeking testimony from Ms. Mueggenburg regarding the cause of her emotional distress. Nor could Ms. Mueggenburg testify to causation. While so-called "treating physicians" may be able to opine on causation without providing an expert report, Ms. Mueggenburg is not a physician, and even if she was, her testimony should still be excluded under FRE 702. "[W]hen the treating physician seeks to render an opinion on causation, that opinion is subject to the same standards of scientific reliability that govern the expert opinions of physicians hired solely for the purposes of litigation." *Davids v. Novartis Pharma. Corp.*, 857 F. Supp. 2d 267, 280 (E.D.N.Y. 2012) (quotation omitted). Ms. Shiber could not meet her burden to establish both that Ms. Mueggenburg is qualified to opine on causation and that her testimony is "relevant and reliable." *Morritt v. Stryker Corp.*, 973 F. Supp. 2d 177, 186 (E.D.N.Y. 2013). Ms. Shiber cannot meet either requirement.

First, Ms. Mueggenburg is not qualified to opine that Centerview caused any of Ms. Shiber's purported distress. Ms. Mueggenburg is not a medical doctor and does not have specialized training in forensic evaluation. Skibitsky Decl. Ex. B 29:13-15, 55:19-21. Instead, Ms. Mueggenburg is a therapist who does not perform any forensic work during her therapy sessions. Skibitsky Decl. Ex. B 30:14-16; 55:18-56:2. Accordingly, though Ms. Mueggenburg may be qualified to treat some aspects of Ms. Shiber's medical conditions, she is not qualified

under FRE 702 to opine on the cause of Ms. Shiber's symptoms. *Romanelli v. Long Island R. Co.*, *898 F. Supp. 2d 626, 631 (S.D.N.Y. 2012)* ("The ability to diagnose medical conditions is not remotely the same . . . as the ability to deduce, delineate, and describe, in a scientifically reliable manner, the causes of those medical conditions.") (*quoting Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009)).

Second, Ms. Mueggenburg's testimony would not be reliable evidence of the cause of Ms. Shiber's alleged distress. *Romanelli*, 898 F. Supp. 2d at 631 ("Even treating physicians, however, must demonstrate a scientifically reliable method to support their conclusions."). As noted, Ms. Mueggenburg did not begin treating Ms. Shiber until ████████████████████████ ████████████████ *Supra* at 8. Accordingly, in the absence of having performed a forensic examination (including a robust analysis of Ms. Shiber's medical history), and having not observed Ms. Shiber's condition before her termination from Centerview or even ████████████████ ████████, Ms. Mueggenburg cannot reliably opine on how that termination impacted Ms. Shiber. This alone renders her testimony unreliable. *See, e.g.*, *Perl v. Meher*, 18 N.Y.3d 208, 217-18 (2011) ("As the author of a recent article points out, a contemporaneous doctor's report is important to proof of *causation*; an examination by a doctor years later cannot reliably connect the symptoms with the accident.") (emphasis in original); *Pierce v. City of New York*, 2017 WL 2623857, at *3 (E.D.N.Y. June 16, 2017) (excluding causation testimony and observing "the Court had serious concerns about the reliability of the opinions that would be based thereon, given the 13-month gap between the September 1, 2014 incident and Sternberg's first appointment with plaintiff, an individual whose medical history reflects several injuries to the same body parts as allegedly injured on September 1.").

Further, Ms. Mueggenburg testified that she formed her opinions on the cause of Ms. Shiber's injuries merely by taking Ms. Shiber's word for it, and did not inquire about or examine other potential causes of Ms. Shiber's distress.  Skibitsky Decl. Ex. B at 56:4-11; 57:14-58:5; 53:12-54:7; 55:18-56:2.  This "recast[ing] the testimony of Plaintiff in order to arrive at a theory of causation" means Ms. Mueggenburg "is not testifying as an expert witness based upon specialized knowledge, but rather is acting as a conduit for another witness's testimony in the guise of an expert's opinion." *Hernandez v. Leichliter*, 2016 WL 684038, at *2 (S.D.N.Y. Feb. 18, 2016) (quotation omitted).  Even putting aside Ms. Mueggenburg's improper reliance on Ms. Shiber's unreliable self-reports, that Ms. Mueggenburg did not proactively consider alternative causes of Ms. Shiber's alleged distress independently warrants exclusion under FRE 702.  "For an expert's testimony on this issue to be reliable, the expert must demonstrate that he has adequately accounted for obvious alternative explanations."  *In re LIBOR-Based Fin. Instruments Antirust Litig.*, 801 F. Supp. 3d 330, 455 (S.D.N.Y. 2025) (cleaned up).  This rule is well-settled in the Second Circuit, including in cases where a treating physician offers causation testimony. *See, e.g.*, *Morritt*, 973 F. Supp. 2d at 189-90 (excluding treating physician testimony for failure to consider alternative causes of injury); *DeRienzo v. Metro. Transp. Auth.*, 694 F. Supp. 2d 229, 239 (S.D.N.Y. 2010) ("Dr. Pikus's failure to address [the identified] alternative causes and provide a reasonable explanation for dismissing them renders his testimony inadmissible.") (alternation in original) (quotation omitted).

Ms. Mueggenburg's inability to testify as to the causation of Ms. Shiber's emotional distress is fatal to Plaintiff's attempt to seek such damages.  Centerview has provided an expert report from a board-certified forensic psychiatrist stating that Ms. Shiber's emotional distress was not caused by her termination from Centerview.  Skibitsky Decl. Ex. G.  As noted, Ms. Shiber's

lay witness testimony cannot meet her burden of showing causation. *Supra*. Accordingly, no competent evidence exists to possibly rebut Centerview's expert report on the lack of causation and there is thus no jury issue as to the availability of emotional distress damages. *See Frydman v. Experian Info. Solutions, Inc.*, 2016 WL 11483839, at *12 (S.D.N.Y. Aug. 11, 2016) (holding that without any evidence connecting any emotional distress to the Defendants' alleged violation of their duty under federal law, there was insufficient evidence for a reasonable jury to award emotional damages); *Yellow Freight Sys.*, 2002 WL 31011859, at *34 (denying emotional distress damages because "[o]ther than . . . Plaintiff's hurt feelings, Plaintiff offered no evidence, concrete or otherwise, of any emotional problems he suffered as a result of Defendant's conduct."). Because Ms. Shiber should be precluded from bringing her emotional distress case to the jury, Ms. Mueggenburg's testimony is irrelevant and should likewise be precluded.

**Granted** _____    **Denied** _____

## IV.    Motion in limine to preclude evidence of compensation beyond the analyst position.

Ms. Shiber was hired as a part of Centerview's analyst program. ECF No. 109 ¶ 9. The analyst program lasts for approximately three years, although Centerview analysts are at-will employees with no guarantee of completing the three-year program (such program ended in June 2023). Skibitsky Decl., Ex. H; ECF No. 148 Ex. A ("Case Decl.") ¶¶ 2-3. Ms. Shiber seeks as damages not only the compensation she would have received if she had completed the analyst program, but also compensation she would have received had she remained employed at Centerview through the present, as well as "10 years of front pay" she claims she "could have reasonably expected to earn had her employment at Centerview continued." JPTO at 53. Ms. Shiber further asserts she "can reasonably expect to suffer a loss in income for the remainder of her working career, as the role she held at Centerview could reasonably have led to a lucrative

14

career in investment banking." *Id*. Ms. Shiber should be precluded under FRE 401 and FRE 403 from introducing evidence of any compensation she could have earned at Centerview apart from compensation she would have earned had she been employed for the three-year analyst program because such evidence is irrelevant to any cognizable damages award and would confuse the jury and prejudice Centerview.

"Evidence of the salaries paid to other individuals may be relevant to [damages], but only insofar as the plaintiff lays a sufficient foundation to permit the reasonable inference that his salary would have matched or been pegged to the salaries of others." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 166-67 (2d. Cir. 1998) (affirming exclusion of evidence of compensation for employees in roles different to plaintiff's as irrelevant to backpay); *Monette v. Cnty of Nassau*, 2015 WL 1469982, at *19 (E.D.N.Y. Mar. 31, 2015) (holding that a "plaintiff is not entitled to back pay beyond the date" where his employment would naturally end "simply because it was not foreseeable that plaintiff would have kept his position.").

Plaintiff has not laid any such foundation here to permit an inference that her salary would have matched associates, principals, managing directors, or partners of Centerview.  Those employees' compensation is thus irrelevant.  *Id.* ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

15

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

A plaintiff may not recover damages based on speculative future promotions or compensation increases. *See Kirsch*, 148 F.3d at 166; *Sanderson v. Leg Apparel LLC*, 2024 WL 898654, at *2 (S.D.N.Y. Mar. 1, 2024) ("It is plaintiff's burden to present a non-speculative basis for determining back pay.") (cleaned up); *Williams v. Buffalo Board of Education*, 2025 WL 2047887, at *2 (W.D.N.Y. July 22, 2025) (granting motion *in limine* because "[i]dentifying an amount of damages based on estimated salaries for hypothetical future jobs that Plaintiffs may have obtained is insufficient to establish the amount of damages with reasonable certainty because such an estimation is speculative, at best."); *Meschino v. Int'l Tel. & Tel. Corp.*, 661 F. Supp. 254, 258 (S.D.N.Y. 1987) (rejecting "claim that [plaintiff] would have been promoted [as] too speculative"); *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d. Cir. 1996) ("Where lost future earnings are at issue, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects."). Yet, that is what Ms. Shiber seeks here—damages based on the speculative assumption she would have received promotions that ████████████████████████████████████████████ Case Decl. ¶¶ 8-9. Ms. Shiber was only employed by Centerview for three months. She has identified no evidence indicating she would have completed the three-year analyst program, let alone received a promotion to associate. Accordingly, evidence regarding compensation that Centerview's associates, principals, managing directors, or partners earn is not relevant under FRE 401 because Ms. Shiber has laid no foundation at all permitting any inference that her salary would ever have

"matched or been pegged to" those individuals. *Kirsch*, 148 F.3d at 166; *see Pogil v. KPMG L.L.P.*, 2024 WL 1208909, at *14 (S.D.N.Y. Mar. 21, 2024) ("given plaintiff's record of zero promotions and a single, modest bonus [], I conclude that [expert's] promotion and bonus assumptions – like his assumption about the length of plaintiff's hypothetical [] career – are too speculative, conjectural, and unrealistic to support his opinions.").

Indeed, Ms. Shiber has not even tried to lay such foundation, and instead merely claims that she "intend[s] to assume at trial that her continued employment at Centerview was guaranteed." ECF No. 143 at 3. But such assumptions are not a proper evidentiary foundation. Accordingly, given the fact ███████████████████████████████████ ██████, and those who do not receive such promotions leave Centerview, Ms. Shiber cannot meet her burden of showing she would have remained employed at Centerview beyond the completion of the analyst program. *See Gulino v. Board of Educ. Of City School Distrct of City of New York*, 2018 WL 6583844, at *2 (S.D.N.Y. Dec. 14, 2018) ("Backpay will ordinarily run until the date of judgment ***provided that Plaintiffs have adduced evidence that, absent the discrimination, their employment would have continued until that date***.") (emphasis added); *Monette*, 2015 WL 1469982, at *19 ("plaintiff is not entitled to back pay beyond the date of" a "superseding cause" which renders it "not foreseeable that plaintiff would have kept his position.").

Ms. Shiber must rely on bare assumptions that she would have been ████████████████ █████████████████████████████ because Ms. Shiber never sought discovery regarding compensation of associates, principals, managing directors, or partners at Centerview, as well as an analyst's likelihood of receiving promotions to those positions. She never questioned Centerview's witnesses at deposition regarding this compensation or her chances for promotion

had she remained at Centerview.  It was only in November 2025, over two years after conclusion of fact discovery, that Ms. Shiber served untimely interrogatories seeking information regarding the compensation of Centerview associates.[1]  Skibitsky Decl. Ex. C.  Thus, the only facts in the record show Plaintiff was exceedingly unlikely to receive associate level compensation, let alone compensation for more senior roles, had she not been terminated.  Case Decl. ¶¶ 4-9.  Plaintiff's speculation is insufficient to show any legal basis for claiming damages based on future promotions.  *Kirsch*, 148 F.3d at 167; *Williams*, 2025 WL 2047887, at *2; *Shepler v. Metro-North Commuter Railroad*, 2016 WL 1532251, at *4 (S.D.N.Y. Apr. 15, 2016) (granting motion *in limine* and finding that "[s]ince Plaintiff has not designated an expert in contract wages, Plaintiff will not be permitted to speculate about any future increases to wages."); *Monette*, 2015 WL 1569982, at *19.

Further, evidence regarding the compensation of Centerview's associates, principals, managing directors, and partners would be likely to confuse the jury and unduly prejudice Centerview.  This warrants exclusion under FRE 403.  As noted, promotions out of the analyst program are not automatic, and are limited to the highest performers.  Case Decl. ¶¶ 2-3.  Evidence regarding compensation these high performers earned would mislead the jury regarding Shiber's likely future earnings.  Relatedly, evidence of this compensation would unfairly prejudice Centerview.  It is no secret that investment banking is a lucrative industry.  Ms. Shiber apparently intends to ask senior bankers, including two of its most senior partners Anthony Kim, Centerview's co-president of investment banking, and Robert Pruzan, Centerview's co-founder, what they earn annually.  The compensation of more senior investment bankers—including one of the firm's co-

---

[1]  This discovery request is the subject of Ms. Shiber's motion to compel, filed January 20, 2026. ECF No. 143.

founders—which Shiber was not reasonably expected to receive at any point, let alone within the "ten years" of front pay she seeks, is irrelevant to this case and could prejudice the jury against Centerview by causing them to view any damages they award Shiber as insignificant. *See Loussier v. Universal Music Grp., Inc.*, 2005 WL 5644421, at *2 (S.D.N.Y. July 14, 2005) (excluding wealth/financial-condition evidence where plaintiff failed to show relevance and "any probative value . . . is substantially outweighed by the danger of unfair prejudice that might result from jurors basing their conclusions on the relative wealth of the parties.").

The Court should preclude Ms. Shiber from introducing any evidence at trial regarding the earnings of Centerview employers other than analysts.

**Granted** _____     **Denied** _____

## V.    Motion in limine to exclude evidence, testimony, or argument regarding Centerview's revenues, profits, or financial performance.

To the extent that Ms. Shiber intends to introduce evidence of Centerview's revenues, profits, or financial performance, the Court should preclude her from doing so under FRE 401 and 403 because this evidence is irrelevant to liability or compensatory damages, and because such evidence is likely to prejudice the jury by causing them to award damages based not on what Ms. Shiber may prove, but rather based on a belief that Centerview can afford any damages award.

Evidence is relevant only if it makes a fact of consequence "more or less probable." FRE 401. Evidence of financial condition is irrelevant to liability unless it bears on an element of a substantive claim. *See Arista Records LLC v. Lime Grp. LLC*, 2011 WL 1542560, at *2 (S.D.N.Y. Apr. 21, 2011) (holding defendant's net worth may be excluded if "defendant's overall financial condition [is not] relevant to a *liability* issue"). Evidence of Centerview's revenues or profits has no bearing on whether Centerview discriminated against Ms. Shiber or whether Shiber was unable to perform the essential functions of her job as analyst. It should be excluded on that basis. *Id.*

19

Even if such evidence had some relevance—and it does not—FRE 403 requires exclusion where "the danger of unfair prejudice substantially outweighs any probative value." Fed. R. Evid. 403. Courts in this Circuit exclude evidence of a defendant's financial condition because such evidence "can be taken as suggesting that the defendant should respond in damages because he is rich." *Kaufman LLC v. Estate of Feinberg*, 2022 WL 13845083, at *9 (D. Conn. Oct. 24, 2022) (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 266 (2d Cir. 1999)). In *Loussier v. Universal Music Group*, the court excluded evidence of a corporate defendants' wealth, financial condition, and unrelated revenues, finding that "any probative value that evidence of the corporate Defendants' wealth, financial condition, and unrelated revenues may have during the liability phase of the trial is substantially outweighed by the danger of unfair prejudice." 2005 WL 5644421, at *2 (emphasis removed). The same result should apply here. Evidence of Centerview's revenues, profits, transaction volume, or other financial performance could cause the jury to view this case as a battle of "David and Goliath" that distracts the jury from the relevant liability issues. *Id.* (excluding financial performance evidence).

The Court should exclude any evidence, testimony, or argument regarding Centerview's revenues, profits, or financial performance.

**Granted**                    **Denied**

_____          _____

## CONCLUSION

For the foregoing reasons, Centerview respectfully requests that the Court grant Centerview's motions *in limine*.

Dated: January 27, 2026          QUINN EMANUEL URQUHART &
New York, New York          SULLIVAN, LLP

By:  _/s/ Hope D. Skibitsky_____
          Jennifer Barrett

20

Hope D. Skibitsky
Charles H. Sangree
Janice Yoon
295 Fifth Ave
New York, New York 10016
Tel. (212) 849-7000
Fax (212) 849-7100
jenniferbarrett@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
charlessangree@quinnemanuel.com
janiceyoon@quinnemanuel.com

*Attorneys for Centerview Partners LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th of January, 2026, I electronically filed the foregoing Memorandum of Law In Support of Motions *in Limine* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

SCHWARTZ PERRY & HELLER LLP
David S. Perry
Brian Adam Heller

CLAYMAN & ROSENBERG LLP
James Francis Valentino


/s/ *Hope D. Skibitsky*
Hope Skibitsky

## **CERTIFICATE OF CONFERENCE**

Counsel for Centerview conferred with counsel for Kathryn Shiber on January 21, 2026, who did not consent to the relief sought in this motion.

/s/ *Hope D. Skibitsky*
Hope D. Skibitsky

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KATHRYN SHIBER,

            Plaintiff,

    v.

                                                Case No. 1:21-cv-03649

CENTERVIEW PARTNERS LLC,

            Defendant.

**[PROPOSED] ORDER ON CENTERVIEW'S MOTIONS IN LIMINE**

Pending before the Court is Centerview Partners LLC's Motions *In Limine*.  After considering the motions, the Court orders as follows:

1.      Motion *in limine* to exclude the trial testimony of Robert Pruzan.

      **Granted** _____    **Denied** _____

2.      Motion *in limine* to preclude the testimony of Kylee Mueggenburg for Plaintiff's discovery violations.

      **Granted** _____    **Denied** _____

3.      Motion *in limine* to exclude testimony regarding Plaintiff's purported emotional distress.

      **Granted** _____    **Denied** _____

4.      Motion *in limine* to preclude evidence of compensation beyond the analyst position.

      **Granted** _____    **Denied** _____

24

5.    Motion *in limine* to exclude evidence, testimony, or argument regarding Centerview's revenues, profits, or financial performance.

   **Granted** _____    **Denied** _____

   Signed this _____ day of   _____, 2026.

   _____
   Hon.  Edgardo Ramos

25