UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KATHRYN SHIBER,

                                             1:21-cv-03649-ER

                *Plaintiff*,

   -against-

CENTERVIEW PARTNERS LLC,

                *Defendant*.
------------------------------------------------------------------X

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S
PROPOSED JURY INSTRUCTIONS, VERDICT
SHEET & VOIR DIRE QUESTIONS**

      Pursuant to Rule 4(C)(i) of the Court's Individual Practices, Plaintiff Kathryn Shiber ("Shiber") submits the following objections to Defendant Centerview Partners LLC's ("Centerview") Proposed Jury Instructions, Proposed Verdict Sheet and Proposed Voir Dire Questions.

**I.**     **SHIBER'S OBJECTIONS TO CENTERVIEW'S
        PROPOSED JURY INSTRUCTIONS**

      Shiber generally objects to Centerview's Proposed Jury Instructions to the extent that they are one-sided and place a greater burden on Shiber than the law actually requires. Centerview uses their Instructions as an opportunity for the Court to read Centerview's defense to the jury as if their defense are the law. Shiber also objects to the self-serving and one-sided nature of many of Centerview's Proposed Instructions. Shiber respectfully requests that Centerview's Proposed Instructions that do anything more than state the law in a neutral fashion be disregarded.

      Centerview's Proposed Instructions are also overly burdensome, in that they discuss legal matters that are not at issue in this case. For example, there are a number of elements of Shiber's claims that are undisputed, such as whether or not Shiber is disabled. It would be confusing to the

jury and prejudicial to Shiber for the Court to present those issues as disputed matters for the jury to resolve. Shiber respectfully requests that the jury be charged with only those issues that are actually in dispute.

Additionally, Centerview's Proposed Instructions fail to distinguish the New York City and State Human Rights Laws ("New York Laws") from the Americans With Disabilities Act ("the ADA") and the New Jersey Law Against Discrimination ("NJLAD"). Shiber respectfully requests that the jury be instructed on the unique elements of the New York Laws before they begin their deliberations.

Shiber presents a number of specific objections below. However, the fact that Shiber does not address any particular Proposed Instruction herein is not a waiver of any objection or admission that such Proposed Instruction is appropriate.

**Request 3.2(a): ADA Disability Discrimination – Disabled Person**

Throughout this litigation, Centerview has not disputed that Shiber is a "disabled person" as relates to the prima facie case under the ADA. Accordingly, Centerview's request to charge the jury on this element would be prejudicial to Plaintiff as it is unnecessary and risks causing confusion for the jury.

**Request 3.2(b): ADA Disability Discrimination – Qualified Individual**

Centerview's Proposed Instruction 3.2(b) (pg. 30) places the burden on Shiber to prove she can perform essential functions, but then directs the jury to give "consideration to the employer's judgment as to what functions of a job are essential." This language is confusing and alters the burden of proof, effectively shifting the burden to Shiber to disprove Centerview's characterization of "essential functions." The instruction compounds this error by stating that "[b]eing available to work unpredictable, long, or late hours may be an essential function of a job," without requiring

Centerview to prove this assertion. This language improperly suggests that availability requirements are presumptively essential functions rather than factual determinations for the jury. It would be prejudicial to the Plaintiff for the Court to present Centerview's defense as if it is a point of settled law.

The last sentence of the first paragraph proposes that the jury be instructed to decide whether or not Shiber is a qualified individual "based on the date of the plaintiff's termination." This creates confusion, as it implies that Shiber's disability may have been more severe in 2020, or improved over time. Centerview cites McElwee v. Cty. of Orange, 700 F.3d 635, 642 (2d Cir. 2012) for this proposition, but that case does not discuss the date of when a disabled individual qualification must be considered. Accordingly, this sentence should be stricken.

The last paragraph on page 32 states that a prior accommodation given as an "experiment" or "an act of compassion" does not have to be extended. Shiber objects to any mention of "compassion" when referring to Centerview's actions with respect to Shiber. Centerview's intent in unilaterally implementing the "guardrails" accommodation and then terminating Shiber for that accommodation is at the heart of this case and it would be prejudicial for the Court to reference Centerview's "compassion."

**Request 3.2(c): ADA Disability Discrimination – Intentional Discrimination**

The Proposed Instruction (pg. 33) states that employers may terminate an employee "for any other reason, good or bad, fair or unfair" and warns against second-guessing employer decisions. This language improperly suggests that there may have been a non-disability reason for Shiber's Termination that immunizes Centerview from liability. Here, it is undisputed that Shiber's disability and request for accommodation was the but-for cause of termination.

This Proposed Instruction directs that the jury "must not second guess" Centerview's decisions "or permit any sympathy for the plaintiff" to motivate it, "even if you personally may not approve of the action taken." It would be prejudicial to Shiber for the Court to tell the jury that it may not "second guess" Centerview and must defer to its decisions regarding her.

**Request 3.4: Failure to Provide A Reasonable Accommodation Under the ADA**

Centerview's Proposed Instructions do not accurately set forth the elements of this cause of action. The Court should use the same elements it identified in its Order on Centerview's motion for summary judgment, namely that Shiber must show "that: (1) she is disabled within the meaning of the ADA, (2) her employer is covered by the ADA and had notice of her disability, (3) she could perform the essential functions of her job with reasonable accommodation, and (4) her employer refused to provide such an accommodation despite being on notice." Shiber v. Centerview Partners LLC, 2025 U.S. Dist. LEXIS 196493, at *28-29 (S.D.N.Y. Sep. 29, 2025).

Centerview's Proposed Instruction requires Shiber to "demonstrate an accommodation which would have been reasonable to implement." This is not the standard and should not be presented to the jury. Once Shiber demonstrates that "there is a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits," Centerview then "bears the burden of proving that the requested accommodation is not reasonable." McElwee v. Cty. of Orange, 700 F.3d 635, 642 (2d Cir. 2012). The Proposed Instruction does not properly identify the true nature of Centerview's burden.

**Request 3.4(b): ADA Failure to Provide A Reasonable Accommodation – Need for Accommodation**

Centerview's Proposed Instruction 3.4(b) (pg. 38) inadequately explains the interactive process by stating only that employers need not continue the process "where, in the end, no

4

accommodation is possible." This Instruction does not include the fact that an employer has an affirmative duty to engage in a good faith dialogue and explore potential accommodations before concluding none are possible. Centerview cites McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 101 (2d Cir. 2009), but omits McBride's instruction that "an employer, by failing to engage in a sufficient interactive process, risks not discovering a means by which an employee's disability could have been accommodated and thereby increases the chance that it will be found to have violated the ADA." Id. If Centerview's language is used, the remainder of the proposition from McBride should be included, as well. See also Sheng v. M&TBank Corp., 848 F.3d 78, 87 (2d Cir. 2017) ("We clarify, however, that an employer's failure to engage in a good faith interactive process can be introduced as evidence tending to show disability discrimination.").

**Request 3.5: Failure to Provide Reasonable Accommodation Claims Under The New York State Human Rights Laws, New York City Human Rights Laws, and New Jersey Law Against Discrimination**

This Proposed Instruction omits the distinctions between the New York Laws and the NJLAD. That distinction must be made clear, as the New York Laws have different standards from the NJLAD.

**Request 3.6: Failure To Engage In An Interactive Process Under The New Jersey Law Against Discrimination**

Centerview's Proposed Instruction does not state the elements that this Court identified in its Order denying summary judgment. The proper elements of this claim are: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but

5

for the employer's lack of good faith." Shiber, 2025 U.S. Dist. LEXIS 196493, at *32. To the extent that Centerview's Proposed Instructions under 3.6 misstate the elements, those should be disregarded.

Additionally, the elements of the NJLAD that mirror the ADA need not be restated. The errors in the duplicative Proposed Instructions must also be modified. For example, Request 3.6(c) states that Shiber "must prove a reasonable accommodation actually existed that would have allowed her to perform the essential functions of the job," omitting that once Shiber demonstrates "a plausible accommodation" it becomes Centerview's burden to prove "that the requested accommodation is not reasonable." McElwee, 700 F.3d at 642.

**Request 3.6(a): Failure To Engage In An Interactive Process Under The NJLAD – Perform Essential Functions**

Centerview's Proposed Instruction 3.6(a) states that Shiber bears the burden of proving that she could perform the essential functions of the job but does not clearly state that Centerview bears the burden of proving that the function is essential. The proposed language creates inconsistency and confusion to the jury and is, therefore, prejudicial to Plaintiff.

**Request 3.7: Failure To Engage In Cooperative Dialogue Under The New York City Human Rights Laws**

Centerview's Proposed Instructions omits language from the New York City Human Rights Law that defines a claim for failure to engage in the cooperative dialogue. Centerview states that the second element is that "[t]he plaintiff must prove she requested an accommodation." What the statute actually states, however, is that it is unlawful for an employer to refuse to fail to engage in a cooperative dialogue "with a person who has requested an accommodation *or who the covered entity has notice may require such an accommodation*." N.Y.C. Administrative Code §8-107(28)(a)

(emphasis added). Both definitions of covered employees must be included in the charge to the jury.

Additionally, the instruction should clarify that the employer bears the burden of demonstrating good faith engagement and cannot simply declare accommodations impossible without meaningful dialogue. See Fernsmith v. City of N.Y., 2024 N.Y. Misc. LEXIS 13820, at *10 (Sup. Ct. N.Y. Cty. Oct. 29, 2024) (recognizing that the City Law "requires employers to engage in meaningful discussions to determine whether an employee's request for accommodation can be reasonably granted.").

**Request 3.7(a): Failure To Engage In Cooperative Dialog Under The New York City Human Rights Laws – Accommodation Requested**

As set forth in the prior objection, Centerview's claim that Shiber "must prove that she made a request to the defendant for an accommodation" is not the full language of the statute. Specifically, Shiber may alternatively establish her claim by showing that Centerview "ha[d] notice [that Shiber] may require such an accommodation." N.Y.C. Administrative Code §8-107(28)(a).

**Request 3.7(c): Failure To Engage In Cooperative Dialog Under The New York City Human Rights Laws – Written Final Determination**

Centerview includes a provision that the written determination required by the cooperative dialog "does not require a 'written justification' for the employer's decision." Given that there was no written justification at all provided to Shiber, this provision is unnecessary and potentially confusing to the jury.

**Request 3.8: Retaliation Under the New York City Human Rights Laws**

Centerview's Proposed Instructions outlines each element required, even though many of them are undisputed. For example, it is undisputed that Shiber engaged in a protected activity by requesting a reasonable accommodation, that Centerview knew of her protected activity and that she suffered an adverse employment action. Accordingly, there is no need to confuse the jury by presenting them with questions that have only one possible response.

**Request 3.8(d): Retaliation Under the New York City Human Rights Laws – Causal Connection**

The Proposed Instruction fails to state that the causal connection can be demonstrated by the temporal proximity between protected activity and adverse action. The instructions should clarify that close temporal proximity can support an inference of retaliation. See Tafolla v. Heilig, 80 F.4th 111, 126 (2d Cir. 2023) ("The close temporal proximity between Tafolla's requests for the accommodation and the instruction that she would need to go on medical leave is sufficient to support on inference of retaliation.").

**Request 3.9: Compensatory Damages – Back Pay**

Centerview's Proposed Instruction 3.9 improperly limits back pay by stating that "any award for backpay must take into account that the position for which the plaintiff was hired had a maximum duration of approximately three years." This is a manufactured instruction that improperly limits the jury's financial damages calculation and misstates the facts of Shiber's employment relationship with Centerview.

The Proposed Instruction also creates confusion by addressing mitigation, stating that the jury may award back pay "reduced by mitigation" and providing that the jury "may shorten the period" of back pay. These issues are more properly addressed in the "Mitigation" instruction. The

inclusion of mitigation in the "Back Pay" instruction prejudicially causes the jury to believe they must reduce any award.

**Request 3.10: Mitigation of Damages**

The Proposed Instruction correctly places the burden on Centerview to prove a failure to mitigate but includes confusing language about "reasonable effort" that may appear to shift the burden to Shiber. The Instruction should clarify that Centerview must prove both that comparable employment was available and that plaintiff unreasonably failed to pursue it.

**Request 3.11: Punitive Damages**

Centerview's Proposed Instruction regarding punitive damages is inaccurate on many levels. The proposed instruction states that "[i]n some cases punitive damages may be awarded for the purpose of punishing a defendant for its wrongful conduct and to deter others from engaging in similar wrongful conduct." However, that is the purpose for every case and Centerview's instruction creates confusion about what must be demonstrated by Plaintiff for the jury to award punitive damages. See Chauca v. Abraham, 30 N.Y.3d 325, 331 (2017).

The Proposed Instruction includes elements that do not exist in the Second Circuit. For example, the Proposed Instruction requires that "a higher management official" acted with malice or reckless indifference, and that the defendant "had not acted in a good faith attempt to comply with the law by adopting policies and procedures…" These two elements simply do not exist under New York Law and it would be prejudicial to Shiber to charge them to the jury. Notably, Centerview does not cite any cases supporting such an instruction.

The Proposed Instruction creates the erroneous perception that a showing of actual damages is required for punitive damages, stating, "punitive damages must bear a reasonable relationship to the plaintiff's actual injury." However, a showing of actual damages is not required

for punitive damages. See Cush-Crawford v. Adchem Corp., 271 F.3d 352, 357 (2d Cir. 2001) ("An award of actual or nominal damages is not a prerequisite for an award of punitive damages in Title VII cases."). This language that does not exist within the Second Circuit, along with the factors that Centerview cites without support, should not be read to the jury.

Additionally, Centerview's Proposed Instruction fails to address the different standard that applies to punitive damages under the New York Laws. Unlike the federal standard, the New York Laws require "neither a showing of malice or awareness of the violation of a protected right, representing the lowest threshold, and the least stringent form, for the state of mind required to impose punitive damages." Chauca v. Abraham, 30 N.Y.3d 325, 333 (2017).

## II. SHIBER'S OBJECTION TO CENTERVIEW'S PROPOSED VERDICT SHEET

Centerview's Proposed Verdict Sheet is unduly burdensome to the jury. It requires the jury to address each element of each claim, even when such elements are undisputed. The verdict sheet is filled with legal definitions that have the potential to create confusion and misunderstanding by the jury. Rather than following the Court's instructions, the jury is more likely to parse the words in the verdict sheet.

The verdict sheet should consider the limited role of the jury as finders of fact. In Gordon v. New York City Board of Education, 232 F.3d 111, 118 (2d Cir. 2000), the Second Circuit vacated a verdict where the jury was charged with the legal requirements of the McDonnell Douglas burden shifting test. The court noted the limited role of the jury, holding:

> In an employment discrimination or retaliation case, the job of the jury is simply to decide whether an impermissible factor was a motivating factor in the adverse employment action. The jury therefore does not need to be lectured on the concepts that guide a judge in determining whether a case should go to the jury.

Id. (cited by Balu v. City of New York, 679 Fed. App. 84, 85 (2d Cir. 2017). In this case, as in Gordon, the Court's instructions will set forth the legal elements to the jury. The verdict sheet does not need to again state all of the elements of each claim.

### III. SHIBER'S RESPONE TO CENTERVIEW'S PROPOSED VOIR DIRE QUESTIONS

**Proposed Voir Dire Question 4**

Question: "Do you feel it is fair for an employer to expect that employees work long or unpredictable hours if employees are compensated for those hours?"

Objection: This proposed voir dire question is irrelevant to the legal and factual issues in this case and can serve to confuse the potential jurors.

**Proposed Voir Dire Question 11**

Question: "Have you ever requested an accommodation on behalf of yourself or someone else, including a child, at a school or in a test-taking environment because of a disability?

    a.    If so, what was the disability?

    b.    What was the requested accommodation?

    c.    Was the accommodation granted?"

**Objection:** This proposed voir dire question is irrelevant to the legal and factual issues in this case and can serve to confuse the potential jurors. The accommodations that Shiber sought and received while in college are not relevant to the reasonable accommodations Centerview should have provided to Shiber during her employment.

Dated: New York, NY
February 10, 2026

Respectfully submitted,

**SCHWARTZ PERRY & HELLER LLP**
*Attorneys for Plaintiff*

By: _____
BRIAN HELLER
DAVIDA S. PERRY
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565
bheller@sphlegal.com
dperry@sphlegal.com

**CLAYMAN ROSENBERG KIRSHNER & LINDER LLP**
*Attorneys for Plaintiff*

By: _____
JAMES F. VALENTINO
305 Madison Avenue, Suite 650
New York, NY 10165
(212) 922-1080
valentino@clayro.com