UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KATHRYN SHIBER,

                                      **1:21-cv-03649-ER**

            *Plaintiff*,

   -against-

CENTERVIEW PARTNERS LLC,

            *Defendant*.
-------------------------------------------------------------------X

| |
|---|
| **PLAINTIFF'S MEMORANDUM**<br>**OF LAW IN OPPOSITION TO**<br>**DEFENDANT'S MOTION IN *LIMINE*** |

**SCHWARTZ PERRY & HELLER, LLP**
***Attorneys for Plaintiff***
**3 Park Avenue, Suite 2700**
**New York, NY 10016**
**(212) 889-6565**

**CLAYMAN ROSENBERG KIRSHNER & LINDER LLP**
***Attorneys for Plaintiff***
**305 Madison Avenue, Suite 650**
**New York, NY 10165**
**(212) 922-1080**

## TABLE OF CONTENTS

**SUBJECT**                                                                    **PAGE**

TABLE OF AUTHORITIES                                                              ii

PRELIMINARY STATEMENT                                                             1

LEGAL STANDARD ON A MOTION IN LIMINE                                              1

POINT I      SHIBER SHOULD BE PERMITTED TO
             QUESTION ROBERT PRUZAN ON HIS
             UNIQUE AND RELEVANT KNOWLEDGE                                        2

POINT II     SHIBER TIMELY DISCLOSED MS. MUEGGENBURG
             AFTER SUMMARY JUDGMENT WAS DENIED                                    5

POINT III    SHIBER MUST BE ALLOWED TO PRESENT EVIDENCE
             OF HER EMOTIONAL DISTRESS TO THE JURY                                9

       A.    Shiber Is Not Required To Present Expert Testimony                   9

       B.    Ms. Mueggenberg May Testify To Causation                           11

POINT IV     EVIDENCE OF SHIBER'S LOST COMPENSATION
             BEYOND THE ANALYST POSITION IS ADMISSIBLE
             AT TRIAL                                                            14

POINT V      CENTERVIEW'S REVENUES ARE
             ADMISSIBLE AND NOT PREJUDICIAL                                      21

CONCLUSION                                                                       23

**TABLE OF AUTHORITIES**

**CASE**                                                                                   **PAGE**

Alexander v. Stop & Shop Supermarket Co. LLC,
    2025 U.S. Dist. LEXIS 37507 (S.D.N.Y. Feb. 28, 2025)                  6

Arista Records LLC v. Lime Group LLC,
    2011 U.S. Dist. LEXIS 43716 (S.D.N.Y. Apr. 21, 2011)                  22

Badolato v. Long Island Rail Road,
    2016 U.S. Dist. LEXIS 147713 (E.D.N.Y. Oct. 24, 2016)                 8

Banks v. Travelers Cos.,
    180 F.3d 358 (2d Cir. 1999)                                           16

Barton v. Warren Cty.,
    2023 U.S. Dist. LEXIS 102281 (N.D.N.Y. June 13, 2023)                 5

Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.,
    860 F. Supp. 2d 251 (S.D.N.Y. 2012)                                   1

Berk v. St. Vincent's Hosp.,
    380 F. Supp. 2d 334 (S.D.N.Y. 2005)                                   12

Binns-Harty-Bolt v. McDonough,
    2024 U.S. Dist. LEXIS 211331 (S.D.N.Y. Nov. 18, 2024)                 12

Boucher v. U.S. Suzuki Motor Corp.,
    73 F.3d 18 (2d. Cir. 1996)                                            20

Capak v. Smith,
    2023 U.S. Dist. LEXIS 155152 (S.D.N.Y. Aug. 24, 2023)                 10

Carlton v. Mystic Transp., Inc.,
    202 F.3d 129 (2d Cir. 2000)                                           4

Colon v. N.Y.C. Hous. Auth.,
    2024 U.S. Dist. LEXIS 27567 (S.D.N.Y. Feb. 16, 2024)                  9

Derienzo v. Metropolitan Transportation Authority,
    694 F.Supp.2d 229 (S.D.N.Y. 2010)                                     13

Dilaura v. Power Auth. of NY,
    982 F.2d. 73 (2d Cir 1992)                                            4

Dunn v. Zimmer, Inc.,
    2005 U.S. Dist. LEXIS 3505 (D. Conn. Mar. 9, 2005)        8

EEOC v. Yellow Freight System, Inc.,
    2002 U.S. Dist. LEXIS 16826 (S.D.N.Y. Sept. 4, 2002)        11

Emamian v. Rockefeller Univ.,
    2018 U.S. Dist. LEXIS 97674 (S.D.N.Y. June 8, 2018)        15

Frydman v. Experian Information Solutions,
    2016 U.S. Dist. LEXIS 107139 (S.D.N.Y. Aug. 11, 2016)        14

Gordon v. Aps Contractors Inc.,
    2024 U.S. Dist. LEXIS 29368 (E.D.N.Y. Feb. 20, 2024)        15

Greenway v. Buffalo Hilton Hotel,
    143 F.3d 47 (2d Cir. 1998)        15

Grella v. Avis Budget Grp., Inc.,
    2016 U.S. Dist. LEXIS 19248 (S.D.N.Y. Feb. 11, 2016)        9-10

Habeeb Ahmad v. N.Y. Univ.,
    2025 U.S. Dist. LEXIS 213605 (S.D.N.Y. Oct. 29, 2025)        11

Hannah v. Wal-Mart Stores, Inc.,
    2017 U.S. Dist. LEXIS 23681 (D. Conn. Feb. 21, 2017)        21

Hines v. First Unum Life Ins. Co.,
    2016 U.S. Dist. LEXIS 37766 (S.D.N.Y. Mar. 23, 2016)        8

Housing Works, Inc. v. Turner,
    2004 U.S. Dist. LEXIS 18909 (S.D.N.Y. Sep. 15, 2004)        11

Jean-Laurent v. Hennessy,
    840 F. Supp. 2d 529 (E.D.N.Y. 2011)        1-2

Kane v. St. Raymond's R.C. Church,
    2015 U.S. Dist. LEXIS 91398 (S.D.N.Y. July 13, 2015)        15

Kaufman LLC v. Estate of Feinberg,
    2022 U.S. Dist. LEXIS 192988 (D.Conn. Oct. 24, 2022)        22

Kirsch v. Fleet Street, Ltd.,
    148 F.3d 149 (2d. Cir. 1998)        20

Knox v. John Varvatos Enters.,
    512 F. Supp. 3d 470 (S.D.N.Y. 2021)          15

Kreisler v. Humane Socy. of N.Y.,
    2018 U.S. Dist. LEXIS 171147 (S.D.N.Y. Oct. 3, 2018)     9

Lee v. Delta Airlines, Inc.,
    2025 U.S. Dist. LEXIS 149585 (S.D.N.Y. Aug. 4, 2025)     8

Leibowitz v. Cornell Univ.,
    584 F.3d 487 (2d Cir. 2009)          15

Loussier v. Universal Music Grp., Inc.,
    2005 U.S. Dist. LEXIS 37545 (S.D.N.Y. July 14, 2005)    19

Luca v. Cty. of Nassau,
    344 Fed. Appx. 637 (2d Cir. 2009)         17

Maldonado v. Town of Greenburgh,
    2022 U.S. Dist. LEXIS 246255 (S.D.N.Y. Mar. 31, 2022)    5, 7

McIntyre v. Manhattan Ford,
    256 A.D.2d 269 (1st Dept. 1998)         21

Meschino v. Intl. Tel. & Tel. Corp.,
    661 F. Supp. 254 (S.D.N.Y. 1987)         21

Monette v. Cty. of Nassau,
    2015 U.S. Dist. LEXIS 42523 (E.D.N.Y. Mar. 31, 2015)    19

Morritt v. Stryker Corp.,
    973 F.Supp.2d 177 (E.D.N.Y. 2013)         11

New York City Transit Authority v. State Division of Human Rights,
    78 N.Y.2d 207 (1991)         9

On Track Innovations, Ltd. v. T-Mobile USA, Inc.,
    2015 U.S. Dist. LEXIS 202032 (S.D.N.Y. July 24, 2015)    8

Pacific Mut. Life Ins. Co. v Haslip,
    499 U.S. 1 (1991)         21

Padilla v. Metro-North Commuter R.R.,
    92 F.3d 117 (2d Cir. 1996)         17

Papiez v. Home Depot U.S.A., Inc.,
    2018 U.S. Dist. LEXIS 245416 (E.D.N.Y. Apr. 20, 2018)    12

Piepes v. NAI Entertainment Holdings LLC,
    2019 U.S. Dist. LEXIS 165668 (E.D.N.Y. Sep. 26, 2019)    10

Pogil v. KPMG L.L.P.,
    2024 WL 1208909 (S.D.N.Y. Mar. 21, 2024)    20

Poliard v. Saintilus Day Care Ctr., Inc.,
    2013 U.S. Dist. LEXIS 49374 (E.D.N.Y. Mar. 7, 2013)    15

Rahman v. Lee,
    2024 U.S. Dist. LEXIS 158448 (S.D.N.Y. Sep. 4, 2024)    13

Ramsay v. Amtrack,
    2015 U.S. Dist. LEXIS 60326 (S.D.N.Y. May 7, 2015)    10

Riisna v. ABC,
    219 F. Supp. 2d 568 (S.D.N.Y. 2002)    4

Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.
v. Coventry First LLC,
    280 F.R.D. 147 (S.D.N.Y. 2012)    5

Rivera v. United Parcel Serv., Inc.,
    148 A.D.3d 574 (1st Dept. 2017)    21

Rodriguez v. Vill. of Port Chester,
    535 F. Supp. 3d 202 (S.D.N.Y. 2021)    11-12

Sagendorf-Teal v. Cty. of Rensselaer,
    100 F.3d 270 (2d Cir. 1996)    16

Saulpaugh v. Monroe Community Hospital,
    4 F.3d 134 (2d Cir. 1993)    15, 20-21

Shepler v. Metro-North Commuter Railroad,
    2016 WL 1532251 (S.D.N.Y. Apr. 15, 2016)    19

Sura v. Zimmer, Inc.,
    768 Fed. Appx. 58 (2d Cir. May 17, 2019)    10

Thoreson v. Penthouse Intl.,
    179 A.D.2d 29 (1st Dept. 1992)    9

Tufariello v. Long Island Rail Road,
    458 F.3d 80 (2d Cir. 2005)                       11

Txo Prod. Corp. v. All. Res. Corp.,
    509 U.S. 443 (1993)                        21

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015)                       4

Weiss v. La Suisse, Societe D'Assurances,
    293 F. Supp. 2d 397 (S.D.N.Y. 2003)            2

Williams v. Buffalo Board of Education,
    2025 WL 2047887 (W.D.N.Y. July 22, 2025)      20

Williams v. County of Orange,
    2005 U.S. Dist. LEXIS 46051 (S.D.N.Y. Dec. 13, 2005)    8-9

Williams v. Muhammad's Holy Temple of Islam, Inc.,
    2006 U.S. Dist. LEXIS 7425 (E.D.N.Y. Feb. 8, 2006)    2

Williams v. Regus Mgmt. Grp., LLC,
    2012 U.S. Dist. LEXIS 68551 (S.D.N.Y. May 11, 2012)    12

Wills v. Amerada Hess Corp.,
    379 F.3d 32 (2d Cir. 2004)                       10

## PRELIMINARY STATEMENT

Plaintiff Kathryn Shiber ("Plaintiff" or "Shiber") submits this memorandum of law in opposition to Defendant Centerview Partners LLC's ("Defendant" "Centerview") five separate motions *in limine*. Each of Centerview's motions should be denied. Specifically:

1.   Shiber should be permitted to present the testimony of Robert Pruzan, a decisionmaker at Centerview who was involved in Shiber's termination.

2.   Shiber should be permitted to present the testimony of her treating therapist Kylee Mueggenberg, M.A., who started treating Shiber while summary judgment was pending, and who Centerview has already deposed.

3.   Centerview misstates the standard required for Shiber to establish her claim of emotional distress and may properly call her treating provider as a fact witness without needing expert testimony.

4.   For the purposes of back pay, Shiber should be permitted to compare herself to others who started in her same position at Centerview at the same she did and who remain employed at Centerview, and she should be permitted to recover her full loss, including back pay and front pay.

5.   Centerview's revenues are relevant to a determination of punitive damages and should not be excluded.

Accordingly, Centerview's motions *in limine* should be denied.

## LEGAL STANDARD ON A MOTION *IN LIMINE*

"The purpose of a motion *in limine* is to allow a court to rule on the admissibility of potential evidence in advance of trial." Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A., 860 F. Supp. 2d 251, 254 (S.D.N.Y. 2012). "A court will exclude evidence on a motion *in limine* only if the evidence is clearly inadmissible on all potential grounds." Id. It is well settled that "courts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 536

(E.D.N.Y. 2011); Williams v. Muhammad's Holy Temple of Islam, Inc., 2006 U.S. Dist. LEXIS 7425, at *4 (E.D.N.Y. Feb. 8, 2006) (noting that "it is better practice to deal with questions of admissibility as they arise."); Weiss v. La Suisse, Societe D'Assurances, 293 F. Supp. 2d 397, 407 (S.D.N.Y. 2003) ("A motion *in limine* may properly be denied where it is too sweeping in scope.").

## POINT I

### SHIBER SHOULD BE PERMITTED TO
### QUESTION ROBERT PRUZAN ON HIS
### UNIQUE AND RELEVANT KNOWLEDGE

The jury should be permitted to hear the testimony of Centerview's co-Founder and CEO, Robert Pruzan, who possesses personal and unique knowledge of the relevant facts. He submitted a Declaration to this Court in which he admits that he "had at least one discussion with Jeanne Vicari, Centerview's Chief Operating Officer, and Cheryl Robinson, Centerview's Human Resources Director, about Shiber before her termination." (ECF No. 71-1 at ¶6). While Pruzan states he does not recall how many discussions he had with Vicari and/or Robinson or the dates of these discussions, he does not deny knowing the content of those discussions. If he did recall, he would have stated so in the Declaration he submitted to this Court seeking to avoid sitting for a deposition. Pruzan also states that Vicari "informed" him that "she had made the decision to terminate Ms. Shiber." (Id. at ¶7). Pruzan does not explain the content of the conversation he had with Vicari about the termination decision in his Declaration, which the jury should be permitted to hear. Additionally, as the CEO and co-founder of Centerview, Pruzan has a unique perspective on what are the "essential functions" of the analyst position.

Pruzan's testimony is particularly appropriate considering the deposition testimony of Centerview's Director of Human Resources Cheryl Robinson ("Robinson") and its COO Jeanne Vicari ("Vicari"). Robinson testified that the decision to terminate Shiber was a joint decision

2

between herself, Vicari and Pruzan. (Robinson 101:2-5). Robinson also testified that she had conversations with Vicari and Pruzan about Shiber, at least one of which was about the guard rails accommodation, but she only had a vague recollection of what was discussed and could not recall what Pruzan said. (Robinson 96:21-17, 98:24-99:4, 99:14-100:5, 117:24-118:4, 156:18-22).

While Vicari claimed that she decided to terminate Shiber, she also admitted that this decision was based upon discussions with Tony Kim and Robert Pruzan. (Vicari 80:14-81:9: "Q. Who did you talk to to arrive at that decision? A. In the end there are conversations internally with senior members of the PDC and HR [...] Q. When you say, "senior members of the PDC, who were they? A. Tony Kim and Robert Pruzan. Q. What was Tony Kim's involvement in the decision to terminate Kate Shiber? A. The decision was mine, and that is what I believe I said. One of the things that the decision was based upon was feedback from the team and the PDC, so I – I had spoken to Tony and Robert as part of the PDC, and gotten information from them […]"). Vicari also testified that she spoke to Pruzan about Shiber multiple times but did not provide details about those conversations. (Vicari 86:23-87:2: "Q. How many times did you speak to Robert Pruzan about Kate Shiber? A. Two or three times maybe.").

Considering this testimony and Pruzan's declaration, Pruzan should be required to testify at trial about the key meetings he had with Robinson and Vicari regarding Shiber. Shiber should be permitted to examine Pruzan about, for example, what "feedback" he provided to Vicari in connection with Shiber's termination and his recollection of other meetings he had with Robinson and Vicari. While Robinson and Vicari attended these meetings, neither Robinson nor Vicari during their depositions provided any meaningful information about what Pruzan said. Therefore, his testimony will neither be cumulative nor hearsay, as Centerview claims. Pruzan participated in the conversations with other Centerview executives (Vicari and Robinson) who were speaking in

their corporate capacities about key issues in this case. See Fed. R. Evid. 801(d)(2)(C) & (D); see also Riisna v. ABC, 219 F. Supp. 2d 568, 572-573 (S.D.N.Y. 2002) (corporate executive's conveyance of his colleague's statement about the plaintiff is not hearsay and is admissible as a vicarious admission under Fed. R. Evid. 801(d)(2)(D)).

While Pruzan testified that he did not make the decision to terminate Shiber, Robinson testified that he did. A jury should be permitted to evaluate such inconsistencies as evidence of discriminatory animus. See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000) ("[A]n employer who discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file."); see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015) ("Because discrimination claims implicate an employer's usually unstated intent and state of mind, rarely is there 'direct, smoking gun, evidence of discrimination.' Instead, plaintiffs usually must rely on 'bits and pieces' of information to support an inference of discrimination, i.e., a 'mosaic' of intentional discrimination.") (citations omitted).

Centerview also argues that the Court's preclusion of Shiber from deposing Pruzan is the "law of the case, is binding upon Ms. Shiber, and should operate to bar her from compelling Mr. Pruzan to testify at trial." (Centerview Brief pg. 2). However, the law of the case doctrine is discretionary, and a court is not precluded from reconsidering its prior judgment should there be "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Dilaura v. Power Auth. of NY, 982 F.2d. 73, 76 (2d Cir 1992) (internal citations omitted). For the reasons stated herein, Shiber respectfully requests that the Court use its discretion and reconsider and reverse its earlier determination.

## POINT II

## SHIBER TIMELY DISCLOSED MS. MUEGGENBURG
## AFTER SUMMARY JUDGMENT WAS DENIED

Centerview's claim that Shiber delayed in identifying Kyle Mueggenberg as her treating therapist, and that Centerview suffered prejudice as a result, is false. Shiber began her treatment with Ms. Mueggenberg while summary judgment was pending and identified her shortly after summary judgment was denied. With Plaintiff's counsel's help, Centerview was provided with all her records and has taken her deposition. The real reason Centerview asks to preclude Ms. Mueggenberg is because her testimony is helpful to the Plaintiff.

"Preclusion of evidence is a harsh remedy, and it should be imposed only in rare situations." Maldonado v. Town of Greenburgh, 2022 U.S. Dist. LEXIS 246255, at *11 (S.D.N.Y. Mar. 31, 2022) (citing Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012)); Barton v. Warren Cty., 2023 U.S. Dist. LEXIS 102281, at *32 (N.D.N.Y. June 13, 2023) ("Preclusion is a drastic remedy and should be used only when a party has shown bad faith.").

The procedural history demonstrates that Shiber timely disclosed Ms. Mueggenberg and aided Centerview in obtaining the discovery it requested:

- Discovery was completed on May 4, 2023. (Minute Entry May 8, 2023).

- On August 16, 2023, the Court set a briefing schedule for summary judgment. (Dkt. #78).

- While that motion was pending, Plaintiff made a motion to assert claims under the New York City and State Human Rights Laws, which the Court granted on July 2, 2024. (Dkt. #108).

- Centerview was permitted to re-submit its motion for summary judgment, which was fully submitted on October 31, 2024. (Dkt. #134).

- Summary judgment was denied on September 30, 2025. (Dkt. #139).

- On November 4, 2025, the Court issued a Minute Entry setting a trial date of February 23, 2026. The parties then discussed updating discovery responses to take into account the 2.5 years that had passed since discovery closed and while the motion was pending.

- On November 18, 2025, Shiber provided updated responses to Centerview's second set of interrogatories, identifying additional medical providers she had treated with since her prior response in 2022.

One of the medical providers that Shiber identified was a therapist she saw during the intervening time, Kyle Mueggenberg. Shiber started treating with Ms. Mueggenberg in early September 2023 and continued seeing her through September 2025. Shiber provided Centerview with an authorization to obtain Ms. Mueggenberg's records and also produced her therapy records that Shiber obtained directly. Plaintiff also assisted Centerview in scheduling the deposition of Ms. Mueggenburg, which took place on January 15, 2026. Centerview has not indicated that it seeks any additional discovery from Ms. Mueggenberg.

Centerview's motion, therefore, is premised on an argument that Shiber should have informed Centerview of Ms. Mueggenburg's treatment *while summary judgment was pending*. The result Centerview seeks would require a plaintiff to continually notify a defendant of every medical visit, even while a defendant is actively seeking dismissal of the case, or else preclusion at trial. Such a rule would substantially increase litigation costs during a period where it is uncertain whether the claim will even proceed to trial. See Alexander v. Stop & Shop Supermarket Co. LLC, 2025 U.S. Dist. LEXIS 37507, at *10 (S.D.N.Y. Feb. 28, 2025) (refusing to grant "the drastic remedy of precluding" a witness from testifying where the explanation for not disclosing the witness "is reasonable")

Centerview's claim of prejudice is not made in good faith. In fact, does not identify what it would have done differently had it learned of Ms. Mueggenberg's treatment during summary judgment nor is it reasonable to think that it would have expended resources on discovery at the

same time it was awaiting the outcome of its motion. Further, Centerview fails to identify what information it lacks that it needs for trial. Based on this flimsy argument, it is quite apparent that Centerview's true goal is to find any means to prevent Shiber from presenting her treating provider's testimony to the jury. Such a result should not be allowed based on a disingenuous arguments.

Shiber had no motive to delay revealing the testimony of Ms. Mueggenburg, which is helpful to her case. In <u>Maldonado v. Town of Greenburgh</u>, 2022 U.S. Dist. LEXIS 246255, at *14, a case that Centerview cites, the court refused to preclude evidence where "it makes no sense whatsoever that Plaintiff or her counsel would consciously withhold a piece of evidence that they believe could support their theory of the case."

Centerview's belief that Ms. Mueggenberg's testimony is "not so important" (Centerview Brief pg. 6) is not a sufficient basis to preclude. Contrary to Centerview's belief, Shiber's emotional distress damages are a crucial part of this case and Ms. Mueggenberg, who treated Shiber for two years, provides unique evidence for the jury.

Centerview's apparent preference for Heather Nelson, Psy. D., who only treated Shiber for a few months, is not an appropriate basis to preclude Ms. Mueggenberg's testimony. Centerview claims that Dr. Nelson is "more relevant" information because that treatment was closer in time to the termination (Centerview Brief pg. 6). However, Dr. Nelson did not recall much about her treatment of Shiber, unlike Ms. Mueggenberg's detailed testimony. Additionally, Centerview intentionally ignores that Shiber has alleged continuing emotional distress from the date of her termination until today, and she believes that her discriminatory termination will continue to impact her emotionally well into the future. At most, Centerview's argument goes to the weight of Ms. Mueggenburg's testimony, not its relevance.

Centerview distorts this Court's prior decision in <u>Hines v. First Unum Life Ins. Co.</u>, 2016 U.S. Dist. LEXIS 37766, at *50 (S.D.N.Y. Mar. 23, 2016), where the court found it reasonable for an insurer to "afford more weight" to the medical opinions of providers who treated plaintiff's neck injury closer to the time of injury. That decision does not support denying Shiber the ability to submit any evidence of her emotional distress to the jury.

Centerview does not present any applicable authority for the drastic relief it seeks. In <u>Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC</u>, 280 F.R.D. at 151, the corporate plaintiff, a year after the close of discovery, sought to add an additional $12 million to its damages calculations, denying defendant discovery into that amount. In <u>On Track Innovations, Ltd. v. T-Mobile USA, Inc.</u>, 2015 U.S. Dist. LEXIS 202032, at *10-11 (S.D.N.Y. July 24, 2015), which Centerview also cites, the court precluded the plaintiff from submitting a supplemental expert report when that expert had repeatedly said no supplement was need during discovery. In <u>Badolato v. Long Island Rail Road</u>, 2016 U.S. Dist. LEXIS 147713, at *2 (E.D.N.Y. Oct. 24, 2016), the court, shortly before trial, precluded the defendant from relying on a medical professional that it had never previously identified as a witness and held that the plaintiff's knowledge of that individual did not satisfy its obligations under Rule 26. In <u>Dunn v. Zimmer, Inc.</u>, 2005 U.S. Dist. LEXIS 3505, at *5 (D. Conn. Mar. 9, 2005), the plaintiff was precluded from submitting a rebuttal expert report long after the time to do so had expired. In <u>Lee v. Delta Airlines, Inc.</u>, 2025 U.S. Dist. LEXIS 149585, at *7-8 (S.D.N.Y. Aug. 4, 2025), the pro se plaintiff intentionally withheld the name of a medical provider until after the close of discovery and was precluded from offering evidence supporting her claim of emotional distress. In <u>Williams v. County of Orange</u>, 2005 U.S. Dist. LEXIS 46051, at *17-18 (S.D.N.Y. Dec. 13, 2005), the defendant was not permitted to rely on its expert when it still had not provided all the required

disclosures just weeks before trial. In <u>Colon v. N.Y.C. Hous. Auth.</u>, 2024 U.S. Dist. LEXIS 27567, at *9 (S.D.N.Y. Feb. 16, 2024), the court precluded plaintiff from disclosing an expert on the eve of trial, years after summary judgment, rather than a treating provider. As described above, what occurred in this case with Ms. Mueggenberg is far different than the cases relied on by Centerview.

Accordingly, Centerview's motion *in limine* to preclude Ms. Mueggenberg's testimony should be denied.

**POINT III**

**SHIBER MUST BE ALLOWED TO PRESENT EVIDENCE
OF HER EMOTIONAL DISTRESS TO THE JURY**

Centerview, in its third motion in limine, incorrectly argues that Shiber should be precluded from presenting evidence of emotional distress damages because she will not be able to connect such damages to her termination from Centerview. This fundamentally misstates what evidence Shiber must present at trial to support her claim for emotional distress.

**A.     <u>Shiber Is Not Required To Present Expert Testimony</u>**

It is well settled that a plaintiff's own testimony is sufficient to establish a claim of emotional distress damages, without expert testimony. In <u>New York City Transit Authority v. State Division of Human Rights</u>, 78 N.Y.2d 207, 216, (1991), the Court of Appeals recognized that a "[m]ental injury may be proved by the complainant's own testimony, corroborated by reference to the circumstances of the alleged misconduct." <u>Cited by</u> <u>Kreisler v. Humane Socy. of N.Y.</u>, 2018 U.S. Dist. LEXIS 171147, at *22 (S.D.N.Y. Oct. 3, 2018); <u>Thoreson v. Penthouse Intl.</u>, 179 A.D.2d 29, 31 (1st Dept. 1992) ("The Court of Appeals has emphasized that "medical treatment is not a precondition to recovery.") (<u>aff'd on other grounds</u> 80 N.Y.2d 490 (1992)); <u>Grella v. Avis Budget Grp., Inc.</u>, 2016 U.S. Dist. LEXIS 19248, at *18 (S.D.N.Y. Feb. 11, 2016) (holding that while the plaintiff's evidence of emotional distress "standing alone appears scant, it is for the jury, not the

9

judge to determine whether (and to what extent) Plaintiff has suffered any compensable emotional harm."

This case – Involving emotional distress caused by the wrongful termination of employment – does not present any complicated conditions that a jury would be uncapable of comprehending. As the court noted in <u>Piepes v. NAI Entertainment Holdings LLC</u>, 2019 U.S. Dist. LEXIS 165668, at *1-2 (E.D.N.Y. Sep. 26, 2019), "Expert testimony is unnecessary in cases where jurors are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training." (Quoting <u>Wills v. Amerada Hess Corp.</u>, 379 F.3d 32, 46 (2d Cir. 2004)); <u>see also</u> <u>Ramsay v. Amtrack</u>, 2015 U.S. Dist. LEXIS 60326, at *28 (S.D.N.Y. May 7, 2015) ("The need for expert opinions on causation is limited in this Circuit to cases where some special expertise is necessary to draw a causal inference.") (citations omitted). Even in <u>Capak v. Smith</u>, 2023 U.S. Dist. LEXIS 155152, at *8 (S.D.N.Y. Aug. 24, 2023), which Centerview cites, a case that a celebrity photographer brought following an altercation with a security guard, the treating provider was permitted to testify to causation "to those injuries where the facts of the incident allow the factfinder to infer causation," such as abrasions to the scalp. <u>Id</u>. at *10.

Centerview relies on cases with vastly different fact patterns, where the injuries alleged were far more complicated than those claimed here. For example, in <u>Wills v. Amerada Hess Corp.</u>, 379 F.3d 32 at 44, the court held that the plaintiff, a seaman working on ships transporting petroleum-based fuels, did not establish his squamous cell carcinoma cancer was caused by his exposure to benzene. Similarly, in <u>Sura v. Zimmer, Inc.</u>, 768 Fed. Appx. 58, 59 (2d Cir. May 17, 2019), plaintiff alleged that a design defect in a knee implant caused his injury. None of these cases dealt with the emotional impact of the loss of a career, which is well within the jury's

understanding. Centerview relies on <u>Morritt v. Stryker Corp.</u>, 973 F.Supp.2d 177, 182 (E.D.N.Y. 2013), where the treating provider's testimony regarding a knee replacement system addressed "specialized subjects in which that physician has no training or for which there is no sufficiently reliable basis." In <u>Housing Works, Inc. v. Turner</u>, 2004 U.S. Dist. LEXIS 18909, at *119 (S.D.N.Y. Sep. 15, 2004), the court held that the plaintiff, a non-profit advocacy group for the homeless, could not connect its loss in fundraising to statements made by the Mayor's administration.

Centerview actually relies on cases where the court held that a jury could understand the plaintiff's injuries without an expert. For example, in <u>Tufariello v. Long Island Rail Road</u>, 458 F.3d 80, 82 (2d Cir. 2005), the Second Circuit found that a jury could find a link between the plaintiff's hearing loss and the decibel levels on the trains where he worked as a conductor. In <u>EEOC v. Yellow Freight System, Inc.</u>, 2002 U.S. Dist. LEXIS 16826, at *115 (S.D.N.Y. Sept. 4, 2002), the court recognized that plaintiff's testimony alone could support an award of emotional distress, but denied compensatory damages because the plaintiff's testimony did not reference the discrimination beyond claiming that he "felt very bad."

The fact is, emotional distress damage awards are routinely left to the jury. The Court should leave the determination as to what impact Shiber's termination has had on her emotional condition to the jury. <u>See</u> <u>Habeeb Ahmad v. N.Y. Univ.</u>, 2025 U.S. Dist. LEXIS 213605, at *113-14 (S.D.N.Y. Oct. 29, 2025) ("The Court cannot second guess the jury's credibility determinations and assessment of the evidence as to causation and psychological impact.").

**B.**    <u>**Ms. Mueggenberg May Testify To Causation**</u>

While Ms. Mueggenberg will not be testifying as an expert, she is permitted to testify to her opinions based on information she learned through the course of her treatment of Shiber. It is black letter law that a treating provider may "testify in limited fashion, solely as to that information

the physician acquired through observation during treatment and limited to the facts obtained during treatment." <u>Rodriguez v. Vill. of Port Chester</u>, 535 F. Supp. 3d 202, 214 (S.D.N.Y. 2021). Treating physicians who are not designated as experts, like Ms. Mueggenberg, "are considered fact witnesses who testify solely as to their personal knowledge of their patient's treatment." <u>Id</u>. "Testimony limited to such personal knowledge may include the physician's opinions regarding the patient's condition, diagnosis, treatment and prognosis based on his or her observations of the patient during the period of consultation," and "can address causation based on a treating physician's treatment of his or her patient..." <u>Id</u>. at 214-15.

Ms. Mueggenberg, therefore, may testify as to what she believes was the cause of Shiber's emotional distress, based on her treatment of Shiber. <u>See</u> <u>Binns-Harty-Bolt v. McDonough</u>, 2024 U.S. Dist. LEXIS 211331, at *7 (S.D.N.Y. Nov. 18, 2024) (recognizing that "treating physicians may testify as to opinions formed during their treatment, including causation, without the submission of an expert report.") (<u>citing</u> <u>Williams v. Regus Mgmt. Grp., LLC</u>, 2012 U.S. Dist. LEXIS 68551, at *8 (S.D.N.Y. May 11, 2012) ("Courts in this Circuit…have regularly held that treating physicians may testify as to opinions formed during their treatment, *including causation*, severity, disability, permanency and future impairments, without the obligation to submit an expert report.") (emphasis in original)); <u>Papiez v. Home Depot U.S.A., Inc.</u>, 2018 U.S. Dist. LEXIS 245416, at *17-18 (E.D.N.Y. Apr. 20, 2018) ("It is generally settled in this Circuit that a treating doctor's testimony may properly include opinions about causation, prognosis or permanency, as long as the opinions are based on information learned during the course of treatment."); <u>Berk v. St. Vincent's Hosp.</u>, 380 F. Supp. 2d 334, 352 (S.D.N.Y. 2005) (noting that "the Second Circuit has generally permitted treating physicians to testify concerning the causation of their patients' injuries based on their background and specialized experience.").

While Ms. Mueggenberg cannot rule out all other possible sources of emotional distress that may have impacted Shiber, she can testify to her treatment and what she believed was the cause of the distress Shiber experienced. See Rahman v. Lee, 2024 U.S. Dist. LEXIS 158448, at *31-32 (S.D.N.Y. Sep. 4, 2024) ("In other words, without an expert report, the treating physician cannot testify to opinions based on information not learned during the course of treating the plaintiff, including information contained in a hypothetical posed by counsel.").

Centerview argues that Ms. Mueggenberg's testimony should be disregarded because she "did not inquire about or examine other potential causes of Shiber's distress." (Centerview Brief pg. 13). There is no requirement that a treating provider – who is not identified as an expert – conduct a "forensic evaluation," as Centerview claims is necessary. (Centerview Brief pg. 11). At most, this argument goes to the weight of Ms. Mueggenberg's testimony, not its admissibility. In Derienzo v. Metropolitan Transportation Authority, 694 F.Supp.2d 229, 239 (S.D.N.Y. 2010), which Centerview cites, the court noted that "authority supporting the position that a failure on the part of a treating physician to rule out all possible causes of an injury goes to the weight, rather than the admissibility, of the opinion."

Centerview, in its motion, misstates counsel's representations about Ms. Mueggenberg's testimony. While Shiber does not intend to ask Ms. Mueggenberg about the ultimate issue of causation, Ms. Mueggenberg is free to testify about her perspective on the cause of Shiber's emotional distress based on her sessions with her.

Centerview makes a number of other arguments that either have no merit or should be left for the fact-finder to resolve. For example, Centerview minimizes Ms. Mueggenberg by noting that she "is not a medical doctor" (Centerview Brief pg. 11), but presents no authority

13

demonstrating that a therapist should be treated differently than a medical doctor. Centerview's reference to Shiber's history of panic attacks is a credibility argument.

This case must be distinguished from <u>Frydman v. Experian Information Solutions</u>, 2016 U.S. Dist. LEXIS 107139, at *36 (S.D.N.Y. Aug. 11, 2016), which Centerview cites, where the *pro se* plaintiff suing for false information on his credit report was not permitted to seek emotional distress damages because he "concede[d] that he did not suffer mental or emotional distress."

**POINT IV**

**EVIDENCE OF SHIBER'S LOST COMPENSATION BEYOND
THE ANALYST POSITION IS ADMISSIBLE AT TRIAL**

Centerview seeks to prevent the jury from seeing the full loss that Shiber has suffered as a result of her termination. Without citing any applicable authority, Centerview claims that the jury should only be permitted to consider Shiber's loss through the end of the 3-year Analyst program. This argument flies in the face of settled law that a victim of employment discrimination be made whole.

What Centerview really seeks to hide is the depth of the loss that Shiber will face over the course of her career. Shiber's termination just weeks into the Analyst program fundamentally altered her career trajectory, removing her from the highly-compensated doors that Centerview's program would open for her. Revealingly, Centerview's argument would permit it to mask the fact that her counterparts who moved on to be Associates received bonuses of *$200,000* for staying at Centerview[1]. Shiber must be permitted to present the totality of that loss to the jury.

Like any other victim of employment discrimination, Shiber is presumptively entitled to back pay from the date of the unlawful termination to the date of judgment, and for any other

---

[1] <u>Financial News</u>, June 4, 2021, "Boutique Centerview joins talent war with $200,000 associate bonuses – reports" <u>https://www.fnlondon.com/articles/boutique-centerview-joins-talent-war-with-200000-associate-bonuses-reports-20210604</u>

14

damages, in order to make her "whole for injuries suffered on account of unlawful employment discrimination." Poliard v. Saintilus Day Care Ctr., Inc., 2013 U.S. Dist. LEXIS 49374, at *12-13 (E.D.N.Y. Mar. 7, 2013) (quoting Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 54 (2d Cir. 1998); Gordon v. Aps Contractors Inc., 2024 U.S. Dist. LEXIS 29368, at *22 (E.D.N.Y. Feb. 20, 2024) (recognizing that an award of back pay "is the rule, not the exception."); Knox v. John Varvatos Enters., 512 F. Supp. 3d 470, 485 (S.D.N.Y. 2021) (victims of discrimination should "be restored to the economic position they would have occupied but for the intervening unlawful conduct of employers"). In Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 144-145 (2d Cir. 1993), a case that Centerview cites, the Second Circuit recognized that where the plaintiff succeeded on her unlawful termination claim, "she would ordinarily be entitled to an award of back pay from the date of her termination until the date of judgment." The court noted that this full scope of remedies fulfilled the purpose of back pay, which is "to completely redress the economic injury the plaintiff has suffered as a result of discrimination." Id.

To determine her financial loss, Shiber reasonably seeks the compensation information of her class, including those who have remained employed since Shiber's termination. Restoring Shiber's economic position and making her whole for Centerview's unlawful actions requires evidence of the amounts could had made at Centerview had she remained employed past the completion of its three-year analyst program.[2]

---

[2] Centerview is not arguing that Shiber was a term-contract employee. However, even if the three-year analyst program was viewed as a term and not at-will, the damages Shiber seeks are appropriate. See Emamian v. Rockefeller Univ., 2018 U.S. Dist. LEXIS 97674, at *39 (S.D.N.Y. June 8, 2018) (holding that physician could assert claim for damages after end date of employment contract, arguing that she "expected renewal of her contract but for her discrimination, and that she was entitled to damages for a renewed term"); Kane v. St. Raymond's R.C. Church, 2015 U.S. Dist. LEXIS 91398, at *16-17 (S.D.N.Y. July 13, 2015) (citing Leibowitz v. Cornell Univ., 584 F.3d 487, 500-01 (2d Cir. 2009) (superseded by statute on other grounds by N.Y.C. Local L. No. 85) ("The mere fact that an employer has discretion whether to rehire does not grant it discretion whether to rehire based on an impermissible consideration, such as race or sex.")).

Centerview, however, refuses to produce this relevant information. In fact, Centerview goes further and argues that Shiber should not be permitted to full back pay beyond the conclusion of the three-year Analyst program for which she was hired. If Centerview's arguments are accepted, Shiber would not only be denied complete redress for her full back pay, but she would be denied front pay entirely. Such an argument is completely unfounded in the law.

In an effort to stunt Shiber's compensatory damages, Centerview makes a number of arguments, all of which should be rejected. First, Centerview argues that "only a small percentage of Centerview analysts are subsequently promoted to associate." (Centerview Brief pg. 16). However, the record does not support such a sweeping claim. The Declaration of Richard Case that Centerview submits shows that ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████ Removing Shiber from these calculations because Centerview unlawfully terminated her so quickly, the results are even higher for all of the above metrics. It is not speculative that Shiber could have been one of the employees that completed the program. Centerview has cited no case that holds that such percentages of employee attrition preclude relevant evidence at trial, cut off back pay or prohibits front pay.

Further, the mere fact that some of Shiber's colleagues did not remain employed at Centerview after her unlawful termination does not preclude her from the damages she seeks. See Banks v. Travelers Cos., 180 F.3d 358, 361-63 (2d Cir. 1999) (rejecting employer's argument that damages should be cut off at point where it downsized employee's former division from 26 to 13 people, because plaintiff could still argue that "she would have survived a reduction in force which occurred after her unlawful firing."); Sagendorf-Teal v. Cty. of Rensselaer, 100 F.3d 270, 276 (2d

Cir. 1996) ("The fact that the plaintiff could have been terminated solely because her probationary period ended does not mean that such a discharge would have occurred in the absence of protected speech, and the jury was not required to find otherwise."). If Centerview's position was correct, then arguably any employee who was part of a program– whether in finance, law or any other industry – would be deprived of meaningful damages in employment discrimination lawsuits.

It is equally probable that Shiber would have been promoted to Associate. Current Centerview employee Timony Ernst ("Ernst"), who started three years before Shiber, testified that ███████████████████████████████████████████████████████████ ████████████████████ Centerview speculates that Analysts are forced out, but, as set forth above, it has been reported that Centerview incentivizes employees to stay as Associates with bonuses of $200,000.

Even if Shiber had elected to leave Centerview at the end of the program, she would have held substantially more earning power. Employees who complete Centerview's prestigious Analyst program are highly sought and have myriad opportunities available to them. Centerview denied Shiber that future by terminating her 18 days after she disclosed her disability.

**Given that Shiber can expect a loss for the remainder of her career, she should be entitled to seek a substantial award of front pay.** See Padilla v. Metro-North Commuter R.R., 92 F.3d 117, 126 (2d Cir. 1996) (affirming an award of front pay for over 20 years where the plaintiff could not reasonably find comparable employment, noting that "this Court and other circuits previously have affirmed awards of front pay for substantial periods of time when necessary to provide whole relief for victims of employment discrimination.") (cited by Luca v. Cty. of Nassau, 344 Fed. Appx. 637, 641 (2d Cir. 2009) (rejecting defendant's argument that too many years of front pay were awarded and holding, "We have repeatedly upheld awards of front

pay through retirement where the record contained evidence sufficient to find that a plaintiff had 'no reasonable prospect of obtaining comparable alternative employment' and to calculate the resulting salary disparity.").

Second, Centerview argues that Shiber's compensatory damages should be cut off after three years because she "was only employed by Centerview for three months" and therefore has not proffered evidence that she would have remained employed at Centerview past the analyst program. (Centerview Brief pg. 16). Centerview essentially asks to be rewarded for its decision to terminate so soon into her employment. An employer should not benefit by discriminating against an employee early in their tenure. That is particularly the case here, where Centerview's unlawful termination of Shiber so soon after she started the analyst program effectively precluded her from seeking an analyst position in a comparable investment bank.

Despite Shiber's short tenure at Centerview, there is sufficient evidence for a jury to consider that she would have remained employed through the analyst program and been promoted to associate and beyond. As stated above, a meaningful percentage of her classmates finished the program and received a promotion to associate.[3] Further, Shiber described the job at Centerview as her "dream opportunity." *See* TAC, ¶11, Shiber 108:19-21 ("My dream was to work at Centerview."). Indeed, Tim Ernst and Matt Gallea, employees of Centerview who were not in Shiber's class but will testify at trial, both completed the Analyst program and were promoted to Associate and Principal.

Third, Centerview appears to argue that Shiber should be precluded from presenting post-analyst program compensation data because she "never sought discovery" regarding "this compensation or her chances for promotion had she remained at Centerview." (Centerview Brief

---

[3] Many of the employees in Shiber's class who completed the analyst program, but did not remain at Centerview thereafter, transitioned to other reputable companies in investment banking and finance.

pgs. 17-18). This argument is wrong and nonsensical. As set forth in Point II, Shiber sought and received this same information during discovery. In fact, at the time discovery was completed on May 4, 2023, *Shiber's Analyst class had not yet completed*. Shiber appropriately sought updated responses on the compensation of her classmates after a trial date was scheduled. Shiber should not be prejudiced due to the delay that Centerview caused by seeking summary judgment.[4]

Finally, Centerview argues that eliciting information about the compensation of other employees would "confuse the jury and unduly prejudice Centerview." (Centerview Brief pg. 18). The case it cites, Loussier v. Universal Music Grp., Inc., 2005 U.S. Dist. LEXIS 37545 (S.D.N.Y. July 14, 2005), demonstrates the opposite. In Loussier, a music copyright infringement case, the court precluded information about the defendants' wealth during the liability phase of trial, but noted that it could be relevant to fact finding on damages if liability was established. Id. at *7-8. Shiber is not seeking to present information to the jury that would mislead the jury or unduly prejudice Centerview. Rather, she seeks to present the compensation of her most direct comparators at Centerview. Such evidence is squarely on point with the damages at issue in this case. As Centerview admits, "investment banking is a lucrative industry." Id. As such, Shiber should be permitted to present what she could have made at such a prestigious investment bank had her career there not been unlawfully short circuited.

In support of its request to limit Shiber's compensatory damages to only what she could have made during the analyst program, Centerview cites several cases all of which are either inapposite or support Shiber's arguments. For example, Centerview cites Monette v. Cty. of Nassau, 2015 U.S. Dist. LEXIS 42523, at *4 (E.D.N.Y. Mar. 31, 2015), where the court held that

---

[4] Centerview relies upon Shepler v. Metro-North Commuter Railroad, 2016 WL 1532251, at *4 (S.D.N.Y. Apr. 15, 2016), for the purported premise that Shiber must rely upon an expert in order to prove her damages. That is not the law in this Circuit. Further, Shepler was a negligence case and not a discrimination case. Here, support for Shiber's back and front pay damages are best proven through the compensation information Centerview refuses to produce.

there was "overwhelming (and uncontroverted)" evidence that plaintiff, who was the Assistant Commissioner of the Nassau County Police Department, would have been replaced for non-discriminatory reasons after the reelection of the incumbent Nassau County Executive. Id. at *57-59. Therefore, the court cut off plaintiff's right to back pay as of the date of the reelection. There is no such evidence in Shiber's case. Rather, as discussed above, there is sufficient evidence for a jury to conclude that she would have remained an employee at Centerview for many years.

Equally unavailing is Centerview's reliance on Kirsch v. Fleet Street, Ltd., 148 F.3d 149 (2d. Cir. 1998). In that case, the plaintiff had been employed by defendant as a salesman for approximately twenty-one years and had no managerial experience. Id. at 156. As such, the court rejected plaintiff's attempt to compare himself for damages purposes to employees in managerial positions or those who were directors or owners of the defendant company. Id. While the plaintiff in Kirsch did seek to compare himself to another sales representative, the court held that he did not present sufficient evidence that they had comparably similar responsibilities. Id. Here, Shiber is seeking to present evidence of the compensation of her peers at the company who were in her analyst class and had the same duties and responsibilities as she did. Further, Centerview did not give her the opportunity to work there for more than a few months so she cannot be credibly compared to the plaintiff in Kirsch.

Shiber's case is also not comparable to the plaintiffs in Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d. Cir. 1996) (a seasonal and intermittent employee seeking to compare himself for damages purposes to full time workers in a negligence and products liability lawsuit); Williams v. Buffalo Board of Education, 2025 WL 2047887, at *2 (W.D.N.Y. July 22, 2025) (seeking consequential damages for loss of reputation in a breach of contract action); or Pogil v. KPMG L.L.P., 2024 WL 1208909, at *14, 19-20, 32-33 (S.D.N.Y. Mar. 21, 2024) (seeking to

introduce expert testimony about future front pay loss of a theoretical 401(k) plan thirty-three years into the future, despite employment at defendant company for two and a half years and no history of participation in 401(k) plans through work). In <u>Saulpaugh v. Monroe Community Hospital</u>, 4 F.3d at 144-145, which Centerview also cites, the court held that the plaintiff was not entitled to receive back pay during the time that she was disabled.

While Centerview relies upon <u>Meschino v. Intl. Tel. & Tel. Corp.</u>, 661 F. Supp. 254, 256 (S.D.N.Y. 1987) for the proposition that Shiber's claim for damages is too speculative, that case involved a post-trial hearing on damages in which the fact finder was able to review and evaluate plaintiff's evidence on damages. In other words, <u>Meschino</u> shows that the fact finder can, and did, consider the kinds of evidence Centerview argues should be precluded here.

## POINT V

### CENTERVIEW'S REVENUES ARE ADMISSIBLE AND NOT PREJUDICIAL

Should the jury determine that Centerview's conduct warrants punitive damages, evidence of its revenues and profits are necessary to determine such an award. In <u>Txo Prod. Corp. v. All. Res. Corp.</u>, 509 U.S. 443, 462 (1993), the Supreme Court declined to strike an award of punitive damages that was substantially larger than the actual damages, taking into account, among other things, "the bad faith of petitioner" and "petitioner's wealth." <u>See also</u> <u>Pacific Mut. Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 21-22 (1991) (recognizing that a finding of punitive damages includes "the financial position of the defendant.") (<u>cited by</u> <u>Hannah v. Wal-Mart Stores, Inc.</u>, 2017 U.S. Dist. LEXIS 23681, at *12 (D. Conn. Feb. 21, 2017) (denying a motion in limine to exclude defendants' size, wealth and overall financial condition and noting, "Evidence of Defendants' financial resources is relevant to the determination of potential punitive damages in this case."); <u>see also</u> <u>Rivera v. United Parcel Serv., Inc.</u>, 148 A.D.3d 574, 575 (1st Dept. 2017) (upholding a

punitive damages award while noting the "defendant's substantial income.") (citing McIntyre v. Manhattan Ford, 256 A.D.2d 269, 271 (1st Dept. 1998) ("The wealth of a defendant is material to the assessment of punitive damages.").

The cases that Centerview cites actually affirm this principle. For example, Centerview cites Arista Records LLC v. Lime Group LLC, 2011 U.S. Dist. LEXIS 43716, at *8 (S.D.N.Y. Apr. 21, 2011), where the defendant conceded that the defendant's net worth was relevant to plaintiff's claim for punitive damages. Centerview also cites Kaufman LLC v. Estate of Feinberg, 2022 U.S. Dist. LEXIS 192988, at *21 (D.Conn. Oct. 24, 2022), where the court noted, "Evidence of wealth is generally admissible *in trials not involving punitive damages*." (Emphasis added). In Loussier v. Universal Music Grp., Inc., 2005 U.S. Dist. LEXIS 37545, at *7 (S.D.N.Y. July 14, 2005), which Centerview cites, the court similarly acknowledged that defendants' wealth "may become necessary during the *damage* phase of the trial." (Emphasis in original).

Any concerns that Centerview has about prejudice resulting from disclosure of its revenues can be resolved with a limiting instruction.

## CONCLUSION

For the foregoing reasons, Shiber respectfully requests that Centerview's motion *in limine* be denied in its entirety and for such further relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*
By: _____
      BRIAN HELLER
      DAVIDA S. PERRY
      3 Park Avenue, Suite 2700
      New York, NY 10016
      (212) 889-6565
      bheller@sphlegal.com

**CLAYMAN ROSENBERG KIRSHNER & LINDER LLP**
*Attorneys for Plaintiff*
By: *James Valentino*
      JAMES F. VALENTINO
      305 Madison Avenue, Suite 650
      New York, NY 10165
      (212) 922-1080
      valentino@clayro.com