UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHRYN SHIBER,<br><br>      Plaintiff,<br><br>   v.<br><br>CENTERVIEW PARTNERS LLC,<br><br>      Defendant. | Case No. 1:21-cv-03649 |

**CENTERVIEW PARTNERS LLC'S OBJECTIONS
TO KATHRYN SHIBER'S PROPOSED
VOIR DIRE**

Jennifer J. Barrett
Hope D. Skibitsky
Charles H. Sangree
Janice Yoon

QUINN EMANUEL
URQUHART & SULLIVAN LLP
295 5th Ave, New York, NY 10016
Tel: 212-849-7000
Fax: 212-849-7100
jenniferbarrett@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
charlessangree@quinnemanuel.com
janiceyoon@quinnemanuel.com

*Attorneys for Centerview Partners LLC*

In accordance with Rule 4.C of the Court's Individual Practices, Defendant Centerview Partners LLC ("Centerview" or "Defendant") respectfully submits the following objections to Plaintiff's Proposed Voir Dire Questions (ECF No. 156). Defendant requests that the Court adopt its Proposed Voir Dire Questions (ECF No. 168) in full. Defendant reserves the right to assert additional objections to Plaintiff's voir dire and to modify, withdraw, or add any proposed questions under Federal Rule of Civil Procedure 47(a).

## OBJECTIONS TO PLAINTIFF'S PROPOSED VOIR DIRE

### I.   GENERAL OBJECTION

Defendant respectfully objects to certain questions in Plaintiff's Proposed Voir Dire. Many of Plaintiff's proposed voir dire questions are not designed to identify bias (as intended by the voir dire exercise) but rather to educate, prime, and seek commitments from prospective jurors favorable to Plaintiff's case. Such questions violate the fundamental principle that voir dire's purpose is not to indoctrinate the jury. *United States v. Fell*, 531 F.3d 197, 210 (2d Cir. 2008) (affirming prohibition of "stake-out" questions requiring jurors to speculate or precommit); *United States v. Wilson*, 493 F. Supp. 2d 402, 404 (E.D.N.Y. 2006) (excluding questions that attempt to commit jurors to a particular position). Instead, these questions improperly: (1) use legal terms of art—such as "reasonable accommodation," "interactive process," and "cooperative dialogue"—before the Court instructs the jury on their legal meaning, risking confusion and prejudice (Questions 37, 38-43); (2) seek commitments on damages amounts and appropriateness before hearing evidence (Questions 50, 51, 52-53, 57); (3) use loaded, argumentative language potentially designed to create sympathy rather than identify bias (Questions 35, 44, 59, 60); and (4) present one-sided factual scenarios that imply Plaintiff will prevail (Questions 7, 41, 57). Individually and taken together, these questions demonstrate an attempt to secure a jury favorable to Plaintiff rather than one that is fair and impartial. The Court should adopt Defendant's voir dire questions or,

alternatively, sustain Defendant's objections and require neutral reformulation or strike Plaintiff's problematic questions entirely.

## II. SPECIFIC OBJECTIONS

Defendant objects to the specific questions below.

7. Would you be able to make a decision in this case even if you were not absolutely certain that one side had won as long as you believed it was more likely that the position of one side was more believable than the other?

**Objection:** Defendant objects to Question 7 because it misstates the burden of proof by suggesting a symmetrical standard when, under all applicable law, Plaintiff bears the burden on all elements of her claims. The question's phrasing—"one side . . . more believable than the other"—improperly implies both parties bear equal burdens, when the correct standard is that Plaintiff must prove each element by a preponderance of the evidence. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64 (2d Cir. 2016) (plaintiff bears initial burdens of production and persuasion as to existence of facially reasonable accommodation, then burden shifts to defendant to show undue hardship). The question fails to clarify that Plaintiff—not Defendant—must make the scales tip in her favor, and that if the evidence is evenly balanced, Plaintiff loses. This misstatement risks confusing jurors about who bears what burden throughout the trial. The Court should thus strike this question and allow a proper burden instruction to inform the jury on the issue.

28. Are you or is any member of your family acquainted with any of the following persons who may be called as witnesses or mentioned at the trial of this case? These individuals include:

      (1)    Jeanne Vicari

      (2)    Cheryl Robinson

      (3)    Timothy Ernst

  (4)  Anthony Kim

  (5)  Robert Pruzan

  (6)  Matthew Gallea

  (7)  Kylee Mueggenberg, M.A.

  (8)  Marylee Verdi FNP-C, PMHNP-BC

  (9)  Heather Nelson, Psy.D.

  (10)  Alexander Bardey, M.D.

  (11)  Richard Case

  (12)  Da-Shih Hu, M.D.

**Objection:** Defendant objects to Plaintiff's Question 28 to the extent it fails to include Dr. Jonathan Lichtenstein in the list of potential witnesses. Centerview has identified Dr. Lichtenstein as a trial witness, and, although Plaintiff has moved *in limine* to preclude Dr. Lichtenstein's testimony, that motion is pending and Centerview adds Dr. Lichtenstein here in an abundance of caution. *United States v. Whitten*, 610 F.3d 168, 185 (2d Cir. 2010) ("Fundamental unfairness arises if *voir dire* is not adequate . . . to identify unqualified jurors" (internal quotation omitted)).

  32.  Do you have any opinions about what it is like to work at an investment bank?

**Objection:** Defendant objects to Question 32 to the extent it invites speculation not based in fact about investment banking work before hearing evidence, which could prime jurors' views regarding "what it is like to work at an investment bank." *See United States v. Fell*, 531 F.3d 197, 210 (2d Cir. 2008) (affirming prohibition of questions requiring speculation); *United States v. Treacy*, 639 F.3d 32, 47 (2d Cir. 2011) (questioning about tangential corporate biases might do more harm than good by planting notions in jurors' minds).

  33.  Do you have any knowledge about typical working hours at investment banks?

**Objection:** Defendant objects to Question 33 to the extent it invites speculation about investment banking hours before hearing evidence, which could prime jurors' expectation on "typical working hours at investment banks." *See United States v. Fell*, 531 F.3d 197, 210 (2d Cir. 2008) (affirming prohibition of questions requiring speculation); *see also United States v. Treacy*, 639 F.3d 32, 47 (2d Cir. 2011). Defendant does not object to this question to the extent prospective jurors are instructed to answer only "yes" or "no."

  35. How many of you think of disabilities as only visible or physical?

**Objection:** Defendant objects to Question 35 as designed to educate rather than identify bias. *United States v. Fell*, 531 F.3d 197, 210 (2d Cir. 2008) (prohibiting "stake-out" questions requiring jurors to speculate or precommit); *United States v. Fell*, 372 F. Supp. 2d 766, 773 (D. Vt. 2005) (prohibiting questions "framed solely to educate the jury")

  37. The law requires employers to provide reasonable accommodations for employees with disabilities unless it is an undue burden for the employer. How do you feel about that legal requirement?

**Objection:** Defendant objects to Question 37 as it misstates the legal framework governing disability discrimination claims and, even if it was correct, improperly instructs the jury on the law before the Court's charge. Specifically, the question skips the threshold "qualified individual" requirement—that a plaintiff must first prove she can perform the essential functions of the job. *Violette v. Int'l Bus. Mach. Corp.*, 962 F. Supp. 446 (D. Vt. 1996), *aff'd*, 116 F.3d 466 (2d Cir. 1997) (no discussion of undue burden when prima facie case fails because plaintiff cannot perform essential functions even with accommodation); *Hernandez v. City of New York*, 2015 WL 321830, at *16 (S.D.N.Y. Jan. 23, 2015) (plaintiff who cannot perform essential functions even with reasonable accommodation cannot prevail on claim). If an employee cannot perform essential

5

functions even with reasonable accommodation, generally the employer need not reach the undue hardship inquiry at all. *See Jenkins v. Northwood Rehab. & Extended Care Facility*, 267 F. Supp. 2d 282, 284 (N.D.N.Y. 2003). By focusing almost exclusively on accommodation and undue hardship, the question misleads jurors about the actual legal standards they will be asked to apply and improperly primes them to believe employers have an absolute duty to accommodate. The question is also deficient because it fails to define what accommodations are "reasonable." The Court should strike this question.

38. Have you or any members of your family ever sought a reasonable accommodation from an employer?

**Objection:** Defendant objects to Question 38 because the repeated use of the legal term of art "reasonable accommodation" before the Court instructs on its meaning is confusing and prejudicial. Courts have recognized that terms like "reasonable" are notoriously confusing to a jury when used without proper legal context. *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d 453, 458 (S.D.N.Y. 2014) (an expert's repeated references to "reasonableness" likely to confuse jury on proper legal standard); *Fleming v. Vill. of Rockville Ctr.*, 801 F. Supp. 3d 113, 125 (E.D.N.Y. 2025) (testimony on legal conclusions raises the risk of confusing the jury with a potentially incorrect legal standard). The use of the phrase "reasonable accommodation" also risks priming the jury on the issue of whether Plaintiff's accommodation request was in fact reasonable. This question should be replaced with Defendant's proposed voir dire question #10 ("Have you or someone close to you ever requested an accommodation at your/their job because of a disability?") or reformulated to use neutral, non-legal terms like "accommodation" or "workplace adjustment."

39. Have you ever had a colleague request or receive a reasonable accommodation?

6

**Objection:** Defendant objects to Question 39 because the repeated use of the legal term of art "reasonable accommodation" before the Court instructs on its meaning is confusing and prejudicial. Courts have recognized that terms like "reasonable" are notoriously confusing to a jury when used without proper legal context. *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d 453, 458 (S.D.N.Y. 2014) (expert's repeated references to "reasonableness" likely to confuse jury on proper legal standard); *Fleming v. Vill. of Rockville Ctr.*, 801 F. Supp. 3d 113, 125 (E.D.N.Y. 2025) (testimony on legal conclusions raises the risk of confusing the jury with a potentially incorrect legal standard). The use of the phrase "reasonable accommodation" also risks priming the jury on the issue of whether Plaintiff's accommodation request was in fact reasonable. This question (and question #38 above) should be replaced with Defendant's proposed voir dire question #10 ("Have you or someone close to you ever requested an accommodation at your/their job because of a disability?") or reformulated to use neutral, non-legal terms like "accommodation" or "workplace adjustment."

40. Do you have any thoughts about individuals who request a reasonable accommodation for a mental disability?

**Objection:** Defendant objects to Question 40 because the repeated use of the legal term of art "reasonable accommodation" before the Court instructs on its meaning is confusing and prejudicial. Courts have recognized that terms like "reasonable" are notoriously confusing to a jury when used without proper legal context. *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d 453, 458 (S.D.N.Y. 2014) (expert's repeated references to "reasonableness" likely to confuse jury on proper legal standard); *Fleming v. Vill. of Rockville Ctr.*, 801 F. Supp. 3d 113, 125 (E.D.N.Y. 2025) (testimony on legal conclusions raises the risk of confusing the jury with a potentially incorrect legal standard). The use of the phrase "reasonable accommodation" also risks

priming the jury on the issue of whether Plaintiff's accommodation request was in fact reasonable. This question should be reformulated to use neutral, non-legal terms like "accommodation" or "workplace adjustment."

42.     Is anyone familiar with the concept of an interactive process when an employee requests a reasonable accommodation?

**Objection:** Defendant objects to Question 42 because it improperly uses legal terms of art—"interactive process" and "reasonable accommodation"—before the Court instructs on their meaning, which is confusing and prejudicial. Courts have recognized that terms like "reasonable" are notoriously confusing to a jury when used without proper legal context. *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d 453, 458 (S.D.N.Y. 2014) (barring expert's use of legal standards like "reasonable" because such terminology constitutes "the ultimate legal conclusion for the jury" and risks confusion about applicable legal standards); *Fleming v. Vill. of Rockville Ctr.*, 801 F. Supp. 3d 113, 125 (E.D.N.Y. 2025) (excluding testimony using legal conclusions because such terminology impermissibly "tell[s] the jury whether [defendants] had sufficient factual justification to support a finding" under applicable law and "raises the risk of confusing the jury with a potentially incorrect legal standard"). The use of the phrase "reasonable accommodation" also risks priming the jury on the issue of whether Plaintiff's accommodation request was in fact reasonable. This question should either be reformulated to avoid legal terminology or struck entirely.

43.     Is anyone familiar with the concept of a cooperative dialogue when an employee requests a reasonable accommodation?

**Objection:** Defendant objects to Question 43 because it improperly uses legal terms of art—"cooperative dialogue" and "reasonable accommodation"—before the Court instructs on their

meaning, which is confusing and prejudicial. Courts have recognized that terms like "reasonable" are notoriously confusing to a jury when used without proper legal context. *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d 453, 458 (S.D.N.Y. 2014) (barring expert's use of legal standards like "reasonable" because such terminology constitutes "the ultimate legal conclusion for the jury" and risks confusion about applicable legal standards); *Fleming v. Vill. of Rockville Ctr.*, 801 F. Supp. 3d 113, 125 (E.D.N.Y. 2025) (excluding testimony using legal conclusions because such terminology impermissibly "tell[s] the jury whether [defendants] had sufficient factual justification to support a finding" under applicable law and "raises the risk of confusing the jury with a potentially incorrect legal standard"). The use of the phrase "reasonable accommodation" also risks priming the jury on the issue of whether Plaintiff's accommodation request was in fact reasonable. This question should either be reformulated to avoid legal terminology or struck entirely.

44.     What are your thoughts about the laws against discrimination?

**Objection:** Defendant objects to Question 44 as overbroad, unfocused, and inviting speeches rather than identifying specific bias. The question produces "unmanageable data" and does not target any particularized concern relevant to this case. *United States v. Tsarnaev*, 595 U.S. 302, 309 (2022) (proposed question was unfocused and risked producing unmanageable responses); *United States v. Wilson*, 493 F. Supp. 2d 402, 404 (E.D.N.Y. 2006) (excluding open-ended jury questionnaire questions that "will not unearth [impermissible] biases" but only "provide a starting point" for an inquiry into juror opinions).

45.     Do you have any thoughts about lawsuits involving employment discrimination or people who bring lawsuits for employment discrimination?

**Objection:** Defendant objects to Question 45 as a classic "stake-out" question seeking improper precommitment on legal policy rather than identifying case-specific bias. *United States v. Fell*, 531 F.3d 197, 210 (2d Cir. 2008) (acknowledging the district court's prohibition on posing "stake-out" questions that might require a juror to speculate or precommit as to how, given certain facts, that juror would react); *United States v. Wilson*, 493 F. Supp. 2d 402, 404 (E.D.N.Y. 2006) (quoting district court holding that "any questions that attempt to commit the juror to a particular position will be struck"). Defendant further objects to Question 45 as priming the juror in favor of Plaintiff insofar as it suggests that this action "involv[es] employment discrimination" rather than involves an *allegation* of employment discrimination.

47.     Do you think there are too many lawsuits accusing employers of discrimination?

**Objection:** Defendant objects to Question 47 as a classic "stake-out" question seeking improper precommitment on legal policy rather than identifying case-specific bias. *United States v. Fell*, 531 F.3d 197, 210 (2d Cir. 2008) (acknowledging the district court's prohibition on posing "stake-out" questions that might require a juror to speculate or precommit as to how, given certain facts, that juror would react); *United States v. Wilson*, 493 F. Supp. 2d 402, 404 (E.D.N.Y. 2006) (quoting district court holding that "any questions that attempt to commit the juror to a particular position will be struck").

48.     Do you think today's employment laws make it too easy for an employee to sue an employer for discrimination?

**Objection:** Defendant objects to Question 48 as a classic "stake-out" question seeking improper precommitment on legal policy rather than identifying case-specific bias. *United States v. Fell*, 531 F.3d 197, 210 (2d Cir. 2008) (acknowledging the district court's prohibition on posing "stake-out" questions that might require a juror to speculate or precommit as to how, given certain facts,

10

that juror would react); *United States v. Wilson*, 493 F. Supp. 2d 402, 404 (E.D.N.Y. 2006) (quoting district court holding that "any questions that attempt to commit the juror to a particular position will be struck").

50. Do you think it is appropriate to give people who have been subject to unlawful discrimination money damages for mental anguish, humiliation, or pain and suffering?

**Objection:** Defendant objects to Question 50 as it improperly seeks juror commitment on damages before any evidence is heard and presupposes Plaintiff will prevail. The question asks jurors to opine on the "appropriateness" of emotional distress damages for victims of "unlawful discrimination"—thereby assuming facts not in evidence (that discrimination occurred and was unlawful). *Smith v. Fricke*, 635 F. Supp. 3d 152, 172–73 (N.D.N.Y. 2022) (sustaining objection to question presupposing plaintiff will be compensated); *United States v. Wilson*, 493 F. Supp. 2d 402, 404 (E.D.N.Y. 2006) (excluding questions attempting to commit juror to particular position). Even if reformulated to remove the presumption of liability, the question improperly seeks advance commitment on a damages award before jurors hear evidence about whether such damages are warranted. *United States v. Fell*, 531 F.3d 197, 210 (2d Cir. 2008) (affirming the lower court's prohibition on "counsel from posing 'stake-out' questions that might require a juror to speculate or precommit as to how, given certain facts, that juror would react"). The question should be struck in its entirety. The Court's damages instructions will adequately address when and how emotional distress damages may be awarded if liability is established.

51. Are you at all uncomfortable about awarding money to a party in a lawsuit?

**Objection:** Defendant objects to Question 51 to the extent the phrase "at all" is overly broad and may eliminate jurors with minimal hesitation about damages rather than those with genuine bias. The question should be reformulated to ask whether jurors could fairly consider damages if

liability is proven, rather than asking about any discomfort "at all." Plaintiff is not entitled to a jury predisposed to award damages; Plaintiff is entitled only to an impartial jury able to set aside any biases it might have.

52. Do you believe there should be a cap on the amount of an award? Is there a limit beyond which you would not go?

**Objection:** Defendant objects to Question 52 as it improperly seeks commitment on damages amounts before hearing any evidence and invites arbitrary personal limits untethered to the law or facts. Courts have consistently struck questions that seek advance commitments about damages. *United States v. Wilson*, 493 F. Supp. 2d 402, 404 (E.D.N.Y. 2006); *Smith v. Fricke*, 635 F. Supp. 3d 152, 172–73 (N.D.N.Y. 2022). The question's framing—"is there a limit beyond which you would not go"—improperly invites jurors to state personal financial caps divorced from evidence and any instruction under the law, which risks either (1) extracting commitments to award unlimited amounts, or (2) revealing arbitrary limits that have no relationship to the evidence introduced at trial. The Court's instructions on damages will properly guide jurors to award amounts supported by evidence; this question merely confuses that process and should be struck.

53. Are there any reasons why you could not grant a substantial money award if you believe that it is justified?

**Objection:** Defendant objects to Question 53 because it presupposes Plaintiff will prevail and seeks commitment to award "substantial" damages—a loaded, undefined term that improperly anchors jurors to large awards before hearing any evidence. *Smith v. Fricke*, 635 F. Supp. 3d 152, 172–73 (N.D.N.Y. 2022) (sustaining objection where question presupposed plaintiff would be compensated); *United States v. Wilson*, 493 F. Supp. 2d 402, 404 (E.D.N.Y. 2006) (prohibiting a "stake-out" question that would invite a juror's precommitment). The term "substantial" is

inherently vague—what qualifies as "substantial" to one juror may differ dramatically from another—and using it in voir dire improperly primes jurors to think in terms of large awards rather than compensatory awards commensurate with proven harm. Moreover, asking whether jurors "could" award such amounts seeks to eliminate anyone with reservations, which is improper. *Smith v. Fricke*, 635 F. Supp. 3d 152, 172–73 (N.D.N.Y. 2022) (sustaining objection to voir dire question that presupposed plaintiff would be compensated and implied the jury would award damages regardless of liability). The Court should strike this question as argumentative and commitment-seeking.

54.     Do you have any opinion about awards for emotional distress in lawsuits?

**Objection**: Defendant objects to Questions 54-55, 57-61 in their entirety and requests they be struck as irrelevant to this case if Defendant prevails on its pending Motions in Limine to exclude emotional distress damages. *See* ECF Nos. 155, 157. As detailed in the Motions, Plaintiff cannot recover emotional distress damages as a matter of law because she fails to satisfy the requirements for such damages under the applicable statutes. Voir dire questions must be relevant to issues that will actually be decided at trial. Fed. R. Evid. 401; Fed. R. Civ. P. 47(a). Questions about damages categories that are legally unavailable waste judicial resources, confuse the prospective juror, and risk prejudicing Defendant by suggesting Plaintiff may recover damages she cannot legally obtain. If the Court grants Defendant's motions to exclude purported emotional distress damages, Questions 54-55, 57-61 serve no purpose in identifying juror bias and should be struck.

55.     How do you feel about awarding money damages to a person who proves that he or she suffered emotional distress as a result of discrimination?

**Objection**: Defendant repeats its objection to Question 54 to Plaintiff's Proposed Question 55.

57. Do you think that someone can suffer emotional damage from multiple sources? If so, would you be able to award damages for one specific source of emotional distress?

**Objection:** In addition to the objection above (striking Questions 54-55, 57-61 if emotional distress damages are excluded), Defendant objects to Question 57 as confusing, argumentative, and designed to prime jurors on apportionment of emotional distress damages before hearing evidence. The question tees up Plaintiff's anticipated argument that her distress came from Defendant's conduct rather than other life events, and the phrase "multiple sources" is vague—it is unclear whether this refers to multiple workplace incidents, multiple life stressors, pre-existing conditions, or something else. *James v. Melendez*, 567 F. Supp. 2d 480, 487 (S.D.N.Y. 2008) (court has broad discretion to limit argument in voir dire); *United States v. Dervishaj*, 2015 WL 3794803, at *2 (E.D.N.Y. June 17, 2015) (questionnaire questions must be "balanced to aid in the selection of a fair and impartial jury").

58. Do you think that someone who already has emotional harm can still suffer additional emotional harm from something new?

**Objection**: Defendant incorporates its objection above (striking Questions 54-55, 57-61 if emotional distress damages are excluded). In addition, Defendant separately objects to Question 58 as improperly designed to prime jurors to accept Plaintiff's theory that Defendant's conduct caused her additional emotional harm on top of pre-existing conditions. The question is also so vague as to be unhelpful — "emotional harm" and "something new" are undefined, and any prospective juror would likely answer "yes" as a matter of common sense, rendering the response meaningless for purposes of identifying bias. A question that yields no useful data for jury selection serves no legitimate voir dire purpose and should be struck. *See United States v. Wilson*, 493 F. Supp. 2d 402, 405 (E.D.N.Y. 2006) (excluding open-ended voir dire questions that did not serve

the goal of uncovering impermissible bias); *United States v. Dervishaj*, 2015 WL 3794803, at *2 (E.D.N.Y. June 17, 2015) (questionnaire questions must be "balanced to aid in the selection of a fair and impartial jury").

59. Have you ever suffered emotional distress as a result of something that occurred in the workplace? If so, how did that feel?

**Objection**: In addition to the objection above (striking Questions 54-55, 57-61 if emotional distress damages are excluded), Defendant separately objects to Question 59, particularly the "how did that feel?" component of the compound question, as designed to create emotional bonds with Plaintiff's experience. If asked in open court, individual jurors' descriptions of their own workplace emotional distress will be heard by every other member of the venire panel — effectively placing before the prospective jury a series of sympathetic personal narratives that are not evidence in this case but that risk priming the entire panel to credit Plaintiff's claims. While experiential questions may sometimes be appropriate, asking jurors to publicly relive and describe their emotional experiences risks generating improper sympathy and coloring the panel's views on the very issues they will be asked to decide. If the Court is inclined to permit this question, Defendant respectfully requests that responses be taken at sidebar to prevent individual jurors' accounts from influencing the rest of the panel.

60. Do you feel that pain and suffering from emotional injuries is of any less importance than pain and suffering from physical injuries such as a fractured leg or arm?

**Objection:** Defendant incorporates its objection above (striking Questions 54-55, 57-61 if emotional distress damages are excluded).

61. Do you have any opinion about therapists, psychiatrists, psychologists and, if you do, what is your opinion?

15

**Objection:** Defendant incorporates its objection above (striking Questions 54-55, 57-61 if emotional distress damages are excluded).

63. What is your understanding of the burden of proof in a civil case, as opposed to a criminal case?

**Objection:** Defendant objects to Question 63 because jurors should receive legal instructions from the Court, not through voir dire questioning. Courts provide empaneled jurors with legal overviews "at the outset of the trial," not during jury selection. *United States v. Calk*, 2021 WL 2887691, at *2–3 (S.D.N.Y. July 9, 2021).

64. Have you ever heard the term "circumstantial evidence" before? If so, what is your understanding of the meaning of that term?

**Objection:** Defendant objects to Question 64 because jurors should receive legal instructions from the Court, not through voir dire questioning. Courts provide empaneled jurors with legal overviews "at the outset of the trial," not during jury selection. *United States v. Calk*, 2021 WL 2887691, at *2–3 (S.D.N.Y. July 9, 2021).

65. Are you able to make a decision based on the evidence you hear, rather than finding in favor of the person who presents the most witnesses?

**Objection:** Defendant objects to Question 65 because jurors should receive legal instructions from the Court, not through voir dire questioning. Courts provide empaneled jurors with legal overviews "at the outset of the trial," not during jury selection. *United States v. Calk*, 2021 WL 2887691, at *2–3 (S.D.N.Y. July 9, 2021).

66. Would you give more weight to the testimony of a supervisor over a junior employee?

**Objection**:  Defendant objects to Question 66 as a classic "stake-out" question seeking improper precommitment on evidentiary issues in a vacuum rather than identifying case-specific bias which a juror is not able to put aside.  *United States v. Wilson*, 493 F. Supp. 2d 402, 404 (E.D.N.Y. 2006) (excluding questions that attempt to commit jurors to a particular position).

Dated: February 10, 2026

                                                 Respectfully submitted,

By:   */s      Hope D. Skibitsky*
      Jennifer J. Barrett
      Hope D. Skibitsky
      Charles Sangree
      Janice Yoon

      QUINN EMANUEL
      URQUHART & SULLIVAN LLP
      295 5th Ave, New York, NY 10016
      Tel: 212-849-7000
      Fax: 212-849-7100
      jenniferbarrett@quinnemanuel.com
      hopeskibitsky@quinnemanuel.com
      charlessangree@quinnemanuel.com
      janiceyoon@quinnemanuel.com
      *Attorneys for Centerview Partners LLC*

## CERTIFICATE OF SERVICE

  I hereby certify that on February 10, 2026, I electronically filed the foregoing Objections to Plaintiff's Proposed Voir Dire with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

SCHWARTZ PERRY & HELLER LLP
Brian Heller
Davida S. Perry

CLAYMAN ROSENBERG KIRSHNER & LINDER LLP
James F. Valentino

              /s/ *Hope D. Skibitsky*
              Hope D. Skibitsky